**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW KUZMESKAS and BRETT MESSIEH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>QUANTSTAMP, INC., RICHARD MA, and STEVEN STEWART,<br><br>                 Defendants. | No. 1:20-cv-02813-LAP<br><br>Honorable Loretta A. Preska<br><br>**JURY DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................................1

II.   Parties...............................................................................................................6

      A.    Plaintiff .................................................................................................6

      B.    Defendants ...........................................................................................7

III.  JURISDICTION AND VENUE ......................................................................7

IV.   FACTUAL ALLEGATIONS ...........................................................................8

      A.    The First Cryptocurrency: Bitcoin .....................................................8

      B.    Ethereum .............................................................................................10

      C.    ERC-20 Tokens...................................................................................12

      D.    The Advent Of The "ICO"..................................................................12

      E.    Quantstamp Solicited And Sold The QSP Token Through Both An ICO
            And Subsequent Sales On Crypto-Asset Exchanges ................................15

      F.    Because of Defendants' Efforts, Investors Would Not Reasonably Have
            Understood Prior To April 3, 2019, At The Earliest, That QSP Was A
            Security ...............................................................................................20

      G.    The QSP Tokens Are Securities .........................................................23

            a.    QSP Token Purchasers Invested Money...................................25

            b.    QSP Token Investors Participated In A Common Enterprise...................26

            c.    QSP Token Investors Purchased The Tokens With A Reasonable
                  Expectation Of Profit From Owning Them ...............................27

            d.    Investors Expected Profits From The QSP Tokens To Be Derived
                  From The Managerial Efforts Of Issuers ...................................33

      H.    The SEC Has Concluded That Tokens Such As QSP Are Securities...................38

      I.    The Class Has Suffered Significant Damages From Defendants' Actions...........39

V.      DEFENDANTS' CONCEALMENT OF THEIR MISCONDUCT PREVENTED
        PLAINTIFFS AND MEMBERS OF THE CLASS FROM BRINGING A CLAIM
        AT THE TIME THE EVENTS OCCURRED ................................................................ 40

VI.     CLASS ALLEGATIONS ................................................................................................ 42

VII.    CAUSES OF ACTION ................................................................................................... 44

FIRST CAUSE OF ACTION
        (SECURITIES ACT – PRIMARY LIABILITY) ............................................................ 44

SECOND CAUSE OF ACTION
        (SECURITIES ACT – PRIMARY LIABILITY) ............................................................ 46

THIRD CAUSE OF ACTION
        (SECURITIES ACT – ADDITIONAL LIABILITY) ...................................................... 49

FOURTH CAUSE OF ACTION
        (ALABAMA STATE LAW – PRIMARY LIABILITY) .................................................. 50

FIFTH CAUSE OF ACTION
        (ALABAMA STATE LAW – ADDITIONAL LIABILITY) ........................................... 51

SIXTH CAUSE OF ACTION
        (ALASKA STATE LAW – PRIMARY LIABILITY) ...................................................... 52

SEVENTH CAUSE OF ACTION
        (ALASKA STATE LAW – ADDITIONAL LIABILITY) ............................................... 54

EIGHTH CAUSE OF ACTION
        (ARIZONA STATE LAW – PRIMARY LIABILITY) .................................................... 55

NINTH CAUSE OF ACTION
        (ARIZONA STATE LAW – ADDITIONAL LIABILITY) .............................................. 56

TENTH CAUSE OF ACTION
        (ARKANSAS STATE LAW – PRIMARY LIABILITY) ................................................ 58

ELEVENTH CAUSE OF ACTION
        (ARKANSAS STATE LAW – ADDITIONAL LIABILITY) .......................................... 59

TWELFTH CAUSE OF ACTION
        (CALIFORNIA STATE LAW – PRIMARY LIABILITY) ............................................. 60

THIRTEENTH CAUSE OF ACTION
        (CALIFORNIA STATE LAW – ADDITIONAL LIABILITY) ....................................... 62

FOURTEENTH CAUSE OF ACTION
        (COLORADO STATE LAW – PRIMARY LIABILITY) ................................................ 63

FIFTEENTH CAUSE OF ACTION
    (COLORADO STATE LAW – ADDITIONAL LIABILITY) .........................................64

SIXTEENTH CAUSE OF ACTION
    (CONNECTICUT STATE LAW – PRIMARY LIABILITY) ..........................................66

SEVENTEENTH CAUSE OF ACTION
    (CONNECTICUT STATE LAW – ADDITIONAL LIABILITY) ..................................67

EIGHTEENTH CAUSE OF ACTION
    (DISTRICT OF COLUMBIA LAW – PRIMARY LIABILITY) ....................................69

NINETEENTH CAUSE OF ACTION
    (DISTRICT OF COLUMBIA LAW – ADDITIONAL LIABILITY).............................70

TWENTIETH CAUSE OF ACTION
    (FLORIDA STATE LAW – PRIMARY LIABILITY)....................................................71

TWENTY-FIRST CAUSE OF ACTION
    (FLORIDA STATE LAW – ADDITIONAL LIABILITY) ..............................................73

TWENTY-SECOND CAUSE OF ACTION
    (GEORGIA STATE LAW – PRIMARY LIABILITY) ...................................................74

TWENTY-THIRD CAUSE OF ACTION
    (GEORGIA STATE LAW – ADDITIONAL LIABILITY)............................................75

TWENTY-FOURTH CAUSE OF ACTION
    (HAWAII STATE LAW – PRIMARY LIABILITY) .....................................................77

TWENTY-FIFTH CAUSE OF ACTION
    (HAWAII STATE LAW – ADDITIONAL LIABILITY).................................................78

TWENTY-SIXTH CAUSE OF ACTION
    (IDAHO STATE LAW – PRIMARY LIABILITY) ........................................................79

TWENTY-SEVENTH CAUSE OF ACTION
    (IDAHO STATE LAW – ADDITIONAL LIABILITY)...................................................80

TWENTY-EIGHTH CAUSE OF ACTION
    (ILLINOIS STATE LAW – PRIMARY LIABILITY) ...................................................82

TWENTY-NINTH CAUSE OF ACTION
    (ILLINOIS STATE LAW – ADDITIONAL LIABILITY)..............................................84

THIRTIETH CAUSE OF ACTION
    (INDIANA STATE LAW – PRIMARY LIABILITY) ....................................................86

THIRTY-FIRST CAUSE OF ACTION
    (INDIANA STATE LAW – ADDITIONAL LIABILITY)...............................................87

THIRTY-SECOND CAUSE OF ACTION
    (IOWA STATE LAW – PRIMARY LIABILITY) ............................................................88

THIRTY-THIRD CAUSE OF ACTION
    (IOWA STATE LAW – ADDITIONAL LIABILITY)......................................................89

THIRTY-FOURTH CAUSE OF ACTION
    (KANSAS STATE LAW – PRIMARY LIABILITY) .....................................................91

THIRTY-FIFTH CAUSE OF ACTION
    (KANSAS STATE LAW – ADDITIONAL LIABILITY).............................................92

THIRTY-SIXTH CAUSE OF ACTION
    (KENTUCKY STATE LAW – PRIMARY LIABILITY) .................................................93

THIRTY-SEVENTH CAUSE OF ACTION
    (KENTUCKY STATE LAW – ADDITIONAL LIABILITY)..........................................94

THIRTY-EIGHTH CAUSE OF ACTION
    (LOUISIANA STATE LAW – PRIMARY LIABILITY)................................................96

THIRTY-NINTH CAUSE OF ACTION
    (LOUISIANA STATE LAW – ADDITIONAL LIABILITY)..........................................97

FORTIETH CAUSE OF ACTION
    (MAINE STATE LAW – PRIMARY LIABILITY) ........................................................99

FORTY-FIRST CAUSE OF ACTION
    (MAINE STATE LAW – ADDITIONAL LIABILITY)..................................................100

FORTY-SECOND CAUSE OF ACTION
    (MARYLAND STATE LAW – PRIMARY LIABILITY) .............................................102

FORTY-THIRD CAUSE OF ACTION
    (MARYLAND STATE LAW – ADDITIONAL LIABILITY)......................................103

FORTY-FOURTH CAUSE OF ACTION
    (MASSACHUSETTS STATE LAW – PRIMARY LIABILITY) .................................105

FORTY-FIFTH CAUSE OF ACTION
    (MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY)...........................106

FORTY-SIXTH CAUSE OF ACTION
    (MICHIGAN STATE LAW – PRIMARY LIABILITY)................................................107

FORTY-SEVENTH CAUSE OF ACTION
    (MICHIGAN STATE LAW – ADDITIONAL LIABILITY) ........................................109

FORTY-EIGHTH CAUSE OF ACTION
    (MINNESOTA STATE LAW – PRIMARY LIABILITY)............................................110

FORTY-NINTH CAUSE OF ACTION
    (MINNESOTA STATE LAW – ADDITIONAL LIABILITY) ....................................111

FIFTIETH CAUSE OF ACTION
    (MISSISSIPPI STATE LAW – PRIMARY LIABILITY) .............................................113

FIFTY-FIRST CAUSE OF ACTION
    (MISSISSIPPI STATE LAW – ADDITIONAL LIABILITY) ......................................114

FIFTY-SECOND CAUSE OF ACTION
    (MISSOURI STATE LAW – PRIMARY LIABILITY) ..................................................115

FIFTY-THIRD CAUSE OF ACTION
    (MISSOURI STATE LAW – ADDITIONAL LIABILITY)...........................................117

FIFTY-FOURTH CAUSE OF ACTION
    (MONTANA STATE LAW – PRIMARY LIABILITY)................................................118

FIFTY-FIFTH CAUSE OF ACTION
    (MONTANA STATE LAW – ADDITIONAL LIABILITY) ........................................119

FIFTY-SIXTH CAUSE OF ACTION
    (NEBRASKA STATE LAW – PRIMARY LIABILITY)..............................................121

FIFTY-SEVENTH CAUSE OF ACTION
    (NEBRASKA STATE LAW – ADDITIONAL LIABILITY) .......................................122

FIFTY-EIGHTH CAUSE OF ACTION
    (NEVADA STATE LAW – PRIMARY LIABILITY) ..................................................124

FIFTY-NINTH CAUSE OF ACTION
    (NEVADA STATE LAW – ADDITIONAL LIABILITY)............................................125

SIXTIETH CAUSE OF ACTION
    (NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY) ..................................126

SIXTY-FIRST CAUSE OF ACTION
    (NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY) ...........................128

SIXTY-SECOND CAUSE OF ACTION
    (NEW JERSEY STATE LAW – PRIMARY LIABILITY)............................................129

SIXTY-THIRD CAUSE OF ACTION
(NEW JERSEY STATE LAW – ADDITIONAL LIABILITY) ....................................130

SIXTY-FOURTH CAUSE OF ACTION
(NEW MEXICO STATE LAW – PRIMARY LIABILITY) ..........................................132

SIXTY-FIFTH CAUSE OF ACTION
(NEW MEXICO STATE LAW – ADDITIONAL LIABILITY)...................................133

SIXTY-SIXTH CAUSE OF ACTION
(NORTH CAROLINA STATE LAW – PRIMARY LIABILITY)................................135

SIXTY-SEVENTH CAUSE OF ACTION
(NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY) .........................136

SIXTY-EIGHTH CAUSE OF ACTION
(NORTH DAKOTA STATE LAW – PRIMARY LIABILITY)....................................137

SIXTY-NINTH CAUSE OF ACTION
(NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)..............................139

SEVENTIETH CAUSE OF ACTION
(OHIO STATE LAW – PRIMARY LIABILITY) .........................................................140

SEVENTY-FIRST CAUSE OF ACTION
(OHIO STATE LAW – ADDITIONAL LIABILITY)....................................................141

SEVENTY-SECOND CAUSE OF ACTION
(OKLAHOMA STATE LAW – PRIMARY LIABILITY)............................................142

SEVENTY-THIRD CAUSE OF ACTION
(OKLAHOMA STATE LAW – ADDITIONAL LIABILITY) ......................................144

SEVENTY-FOURTH CAUSE OF ACTION
(OREGON STATE LAW – PRIMARY LIABILITY)....................................................145

SEVENTY-FIFTH CAUSE OF ACTION
(OREGON STATE LAW – ADDITIONAL LIABILITY)..............................................146

SEVENTY-SIXTH CAUSE OF ACTION
(PENNSYLVANIA STATE LAW – PRIMARY LIABILITY) .....................................148

SEVENTY-SEVENTH CAUSE OF ACTION
(PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY)...............................149

SEVENTY-EIGHTH CAUSE OF ACTION
(PUERTO RICO STATE LAW – PRIMARY LIABILITY) ..........................................150

SEVENTY-NINTH CAUSE OF ACTION
    (PUERTO RICO STATE LAW – ADDITIONAL LIABILITY)....................................152

EIGHTIETH CAUSE OF ACTION
    (RHODE ISLAND STATE LAW – PRIMARY LIABILITY).......................................153

EIGHTY-FIRST CAUSE OF ACTION
    (RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY) ...............................154

EIGHTY-SECOND CAUSE OF ACTION
    (SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY) ................................156

EIGHTY-THIRD CAUSE OF ACTION
    (SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)..........................157

EIGHTY-FOURTH CAUSE OF ACTION
    (SOUTH DAKOTA STATE LAW – PRIMARY LIABILITY)....................................159

EIGHTY-FIFTH CAUSE OF ACTION
    (SOUTH DAKOTA STATE LAW – ADDITIONAL LIABILITY) ..............................160

EIGHTY-SIXTH CAUSE OF ACTION
    (TENNESSEE STATE LAW – PRIMARY LIABILITY)............................................161

EIGHTY-SEVENTH CAUSE OF ACTION
    (TENNESSEE STATE LAW – ADDITIONAL LIABILITY) ......................................162

EIGHTY-EIGHTH CAUSE OF ACTION
    (TEXAS STATE LAW – PRIMARY LIABILITY) .....................................................164

EIGHTY-NINTH CAUSE OF ACTION
    (TEXAS STATE LAW – ADDITIONAL LIABILITY).................................................165

NINETIETH CAUSE OF ACTION
    (UTAH STATE LAW – PRIMARY LIABILITY) ........................................................167

NINETY-FIRST CAUSE OF ACTION
    (UTAH STATE LAW – ADDITIONAL LIABILITY)..................................................168

NINETY-SECOND CAUSE OF ACTION
    (VERMONT STATE LAW – PRIMARY LIABILITY).................................................169

NINETY-THIRD CAUSE OF ACTION
    (VERMONT STATE LAW – ADDITIONAL LIABILITY)..........................................170

NINETY-FOURTH CAUSE OF ACTION
    (VIRGINIA STATE LAW – PRIMARY LIABILITY) .................................................172

NINETY-FIFTH CAUSE OF ACTION
    (VIRGINIA STATE LAW – ADDITIONAL LIABILITY) ...........................................173

NINETY-SIXTH CAUSE OF ACTION
    (WASHINGTON STATE LAW – PRIMARY LIABILITY) .........................................174

NINETY-SEVENTH CAUSE OF ACTION
    (WASHINGTON STATE LAW – ADDITIONAL LIABILITY).................................176

NINETY-EIGHTH CAUSE OF ACTION
    (WISCONSIN STATE LAW – PRIMARY LIABILITY) .............................................177

NINETY-NINTH CAUSE OF ACTION
    (WISCONSIN STATE LAW – ADDITIONAL LIABILITY) ......................................178

ONE HUNDREDTH CAUSE OF ACTION
    (WEST VIRGINIA STATE LAW – PRIMARY LIABILITY) ....................................180

ONE HUNDRED AND FIRST CAUSE OF ACTION
    (WEST VIRGINIA STATE LAW – ADDITIONAL LIABILITY)..............................181

ONE HUNDRED AND SECOND CAUSE OF ACTION
    (WYOMING STATE LAW – PRIMARY LIABILITY) ................................................183

ONE HUNDRED AND THIRD CAUSE OF ACTION
    (WYOMING STATE LAW – ADDITIONAL LIABILITY) ........................................184

PRAYER FOR RELIEF ............................................................................................................185

JURY TRIAL..............................................................................................................................186

Plaintiffs Matthew Kuzmeskas and Brett Messieh, individually and on behalf of all others similarly situated, bring this action against Defendants Quantstamp, Inc. ("Quantstamp"), Richard Ma, and Steven Stewart (the "Individual Defendants"). Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of relevant whitepapers, press releases, media reports, and other publicly disclosed reports and information about Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery. Plaintiffs hereby allege as follows:

## I.    INTRODUCTION

1.      Within the Class Period, which is from November 17, 2017 through the present, Defendants promoted, offered, and sold Quantstamp's securities, called QSP tokens, in violation of federal and state securities laws. Plaintiffs, individually and on behalf of investors who purchased QSP in domestic U.S. transactions (the "Class"), bring claims to recover the consideration paid for the QSP tokens, together with interest thereon, as well as attorneys' fees and costs.

2.      A digital token is a type of digital asset that exists on a "blockchain," which is essentially a decentralized digital ledger that records transactions; these blockchain-dependent assets are sometimes referred to as "crypto-assets." Various types of crypto-assets can reside on blockchains, including crypto-assets such as Bitcoin and Ethereum, which are decentralized digital commodities. There are also so called "smart contracts" that operate under a set of predetermined conditions agreed to by users. With smart contracts, the terms of the contract are automatically

carried out by the software underlying the digital tokens (which, as relevant here, are referred to as "ERC-20 tokens" and exist on the Ethereum blockchain) when the agreed conditions are met.

3.      Certain of these digital tokens are classified as "utility tokens" and are associated with particular projects. Their primary purpose is to allow the holder to use or access the associated project. For example, one private-jet company has adopted a business model based on issuing utility tokens to participants in its membership program, who can then use them to charter flights on the company's planes. A utility token presumes a functional network on which the token can be used.

4.      Other tokens are more speculative, are referred to as "security tokens," and like a traditional security essentially represent one's investment in a project that is to be undertaken with the funds raised through the sale of the tokens. Although these tokens derive their value from the startup behind the project, they are unlike traditional securities in that they do not give the holder ownership in any corporate entity. Rather, investors purchase these tokens with the hope that their value will increase in the future as the network in which the token can be used is expanded based upon the managerial efforts of the issuer and those developing the project. Because such "security tokens" are properly classified as securities under federal and state law, the issuers of these tokens, including Quantstamp, were required to file registration statements with the U.S. Securities and Exchange Commission ("SEC"). Quantstamp, however, failed to do so. By selling these unregistered tokens to investors, Quantstamp reaped millions of dollars in profits.

5.      The scheme worked as follows: First, on October 9, 2017, Quantstamp announced its presale process via a blog post, where it launched its "Proof of Caring" campaign to incentivize the "exceptional individuals who care about the long term goals of [Quantstamp] and have been spreading the gospel far and wide." Ma asserted that they were "solving a very important security

problem with Ethereum smart contracts," and that "people should know about this." While the Quantstamp presale had purportedly "received overwhelming demand," in an effort to "help get the word out," Ma asked fans to "[s]how the love by writing a blog post, reaching out to different corners or the internet, reviewing our project, making a quick youtube video or podcast, reviewing the pros and cons of our whitepaper, or by inviting people to join us on telegram and help us build a genuine community." Fans were asked to fill out a Google form and were advised that Quantstamp would start adding tiers to the pre-sale process, which was to continue with a deadline of November 9, 2017. On October 12, 2017, Ma laid out what he represented were the terms of the QSP token sale in another blog post.

6.     Second, Quantstamp issued a "whitepaper" to investors that described in highly technical terms the supposed utility to which QSP would be placed. The whitepaper explicitly stated that QSP tokens were not being offered as securities, and thus omitted the disclosures that securities laws and the SEC have long deemed essential to investor protections in initial public offerings, including use of "plain English" to describe the offering; a list of key risk factors; a description of key information and incentives concerning management; an explanation of how the proceeds from the offering would be used; and a standardized format that investors could readily follow. Without these critical disclosures in Quantstamp's whitepaper, investors in QSP tokens were thus left to fend for themselves—precisely the opposite of what the securities laws require.

7.     Although QSP was a security, Quantstamp did not register it as a security with the SEC and did not qualify for an exemption from registration requirements.

8.     Quantstamp first sold the QSP tokens to investors through an "initial coin offering" (or "ICO"). Quantstamp kept 35 percent of the QSP tokens for itself and solicited online exchanges

3

of digital assets (known as "cryptocurrency or crypto-asset exchanges") to list QSP tokens on their platforms and encourage purchases by a wide universe of investors.

9.    Quantstamp's solicitation did not stop at the ICO. Instead, in order to maximize the value of the QSP it maintained and to further its financial position generally, Quantstamp continued to promote QSP tokens both on its website and on social media. These promotions included marketing tactics specifically designed to appeal to less sophisticated consumers, such as social media meme contests.

10.    Quantstamp then sold the QSP tokens it had retained directly to customers through these crypto-asset exchanges, allowing it to profit from the artificially high prices induced by its misrepresentations.

11.    Quantstamp promoted, offered, and sold QSP tokens through generalized solicitations using statements posted on the Internet and distributed throughout the United States and worldwide, such that Quantstamp offered and sold the securities to Plaintiffs and the general public in domestic U.S. transactions.

12.    During the ICO and throughout Quantstamp's subsequent solicitation of QSP tokens, Quantstamp did not disclose that QSP was a security. In fact, the QSP whitepaper *explicitly stated* that the QSP tokens that were to be offered at the Quantstamp token Pre-Sale and the Public Sale were "not intended to constitute securities in any jurisdiction" and that the whitepaper was not "intended to constitute an offer of securities or solicitation for investment in securities in any jurisdiction." Investors were thus led reasonably to believe that QSP was not subject to U.S. securities laws, since Quantstamp was offering these tokens in the United States at the time of its ICO. Defendants reinforced this impression by comparing QSP to crypto-assets like Bitcoin that are appropriately considered commodities rather than securities. In addition, Quantstamp further

4

conveyed to investors at issuance that QSP was not a security by failing to file a registration statement for it with the SEC.

13.    It was not clear to a reasonable investor at purchase that QSP tokens were, contrary to Quantstamp' misrepresentations, securities. That the QSP tokens were securities would not have been reasonably apparent until, at the earliest, April 3, 2019, when the SEC released a detailed "Framework" to analyze digital assets, indicating that QSP and other similar digital tokens are "investment contracts" and therefore securities under Section 2 of the Securities Act. of 1933 (the "Securities Act"), 15 U.S.C. § 77b(a)(1).[1] Prior to that time, based on statements of Quantstamp and the SEC, a reasonable investor would not have concluded that such tokens were securities under federal and state law. But QSP *was* a security under the applicable SEC Framework. Quantstamp thus engaged in transactions that consisted of the solicitation, offer, and sale of securities without registering them as federal and state laws require for the protection of investors.

14.    QSP's status as a security has been confirmed by recent regulatory action by the SEC. On September 30, 2019, nearly six months after releasing its Framework, the SEC found that another major issuer of digital tokens, Block one, which had issued a token called EOS between June 2017 and June 2018, had likewise violated the Securities Act by selling unregistered securities to the public. The EOS token was functionally identical to QSP—both tokens were not described as securities to investors but are securities under the SEC's April 2019 Framework. As a result of

---

[1] *Framework for "Investment Contract" Analysis of Digital Assets*, SEC, (Apr. 3, 2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_ednref1.

an SEC enforcement action, Block one was required to pay a $24 million fine.[2] The SEC's determination that EOS is a security applies with equal force to QSP.

15.    Plaintiffs and the Class are entitled to recover the consideration they paid for QSP tokens with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase.

16.    In addition, numerous Class members resided, and were present when they traded in QSP tokens, in States or territories with their own "Blue Sky" protections for investors.[3] Under these laws, investors in these jurisdictions who purchased unregistered QSP securities are entitled to rescission, and generally interest thereon, attorneys' fees, and costs.

17.    Accordingly, individually and on behalf of the Class, Plaintiffs bring claims to recover the consideration paid for the QSP tokens, together with interest thereon, as well as attorneys' fees and costs.

## II.    PARTIES

### A.    Plaintiff

18.    Plaintiff Matthew Kuzmeskas is a resident of Connecticut. Kuzmeskas and members of the Class purchased QSP, an unregistered security, from Connecticut during the Class Period. A true and correct copy of Kuzmeskas's QSP transactions is included in Exhibit A.

---

[2] Press Release, *SEC Orders Blockchain Company to Pay $24 Million Penalty for Unregistered ICO* (Sept. 30, 2019), https://www.sec.gov/news/press-release/2019-202; Block.one, Exchange Act Release No. 10714, 2019 WL 4793292 (Sept. 30, 2019).

[3] These "Blue Sky" statutes are so named because they are designed to protect investors from "speculative schemes which have no more basis than so many feet of blue sky." *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550 (1917) (internal citations omitted). Blue sky statutes typically define "securities" to include "investment contracts," which has been interpreted by State courts commensurate with the standard set forth by the Supreme Court in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946).

19.     Plaintiff Brett Messieh is a resident of Tampa, Florida. During the Class Period, Messieh and members of the Class purchased QSP, an unregistered security, from Florida during the Class period. A true and correct copy Messieh's QSP transactions is included in Exhibit B.

**B.      Defendants**

20.     Defendant Quantstamp is a corporation organized under the laws of Delaware with offices in San Francisco, Toronto, Taipei, and Tokyo. Quantstamp is a blockchain-focused software-development company that develops blockchain security solutions and is developing and promoting the Quantstamp blockchain protocol.

21.     Defendant Richard Ma is a co-founder and the Chief Executive Officer ("CEO") of Quantstamp, Inc. He resides in San Francisco, California.

22.     Defendant Steven Stewart is the co-founder, former Chief Technology Officer ("CTO"), and current "technical fellow" of Quantstamp. On information and belief, he resides in Toronto, Canada.

**III.    JURISDICTION AND VENUE**

23.     Jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

24.     Jurisdiction of this Court is further founded upon 28 U.S.C. § 1331 because the Amended Complaint asserts claims under Sections 5, 12(a)(1), 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77e, 77*l*(a)(1), 77*l*(a)(2), 77o. This Court further has jurisdiction over the Securities Act claims pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

25.     This Court has jurisdiction over violations of state Blue Sky statutes pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

26.     This Court has personal jurisdiction over Defendants. Quantstamp was formed under the laws of Delaware, operates an office in California, and has purposefully availed themselves of the privilege of the United States legal system though Quantstamp's membership in the Blockchain Advocacy Coalition—a group that "aims to educate California legislators about blockchain technology, encourage ongoing conversation, share knowledge, and help pass informed laws," and through participation as an executive member of the Chamber of Digital Commerce, which meets with congressional lawmakers to educate them on new technologies. Defendants also transacted business within New York pursuant to N.Y. C.P.L.R. 302(a)(1).

27.     Venue is proper pursuant to 15 U.S.C. § 77v(a) in that this is a district wherein one or more defendants is found or transacts business or where the offer or sale of QSP tokens took place. Quantstamp representatives attended, hosted, and assisted events at the Blockchain Week NYC conference within this District in both May 2018 and May 2019.

## IV.    FACTUAL ALLEGATIONS

### A.    The First Cryptocurrency: Bitcoin

28.     A crypto-asset is a digital asset designed to work as a medium of exchange or a store of value or both. Crypto-assets leverage a variety of cryptographic principles to secure transactions, control the creation of additional units, and verify the transfer of the underlying digital assets.

29.     Bitcoin was the world's first decentralized crypto-asset. It is also the largest and most popular crypto-asset, with a market capitalization of approximately $190 billion. Bitcoin spawned a market of other crypto-assets that, together with Bitcoin, have a current market capitalization of $334 billion. (The term "bitcoin" can refer to both a computer protocol and a unit

of exchange. Accepted practice is to use the term "Bitcoin" to label the protocol and software, and the term "bitcoin" to label the units of exchange.)

30.     At its core, Bitcoin is a ledger that tracks the ownership and transfer of every bitcoin in existence. This ledger is called the blockchain.

31.     Blockchains act as the central technical commonality across most crypto-assets. While each blockchain may be subject to different technical rules and permissions based on the preferences of its creators, they are typically designed to achieve the similar goal of decentralization.

32.     Accordingly, blockchains are generally designed as a framework of incentives that encourages some people to do the work of validating transactions while allowing others to take advantage of the network. In order to ensure successful validation, those completing the validation are also required to solve a "Proof of Work" problem by expending computational resources which has the effect of making the blockchain more accurate and secure. For Bitcoin, those who validate the blockchain transactions and solve the "Proof of Work" program are rewarded with newly minted bitcoin. This process is colloquially referred to as "mining."

33.     Mining is one method by which an individual can acquire crypto-assets like Bitcoin. A second and more common manner is to obtain crypto-assets from someone else. This is often accomplished by acquiring it through an online "crypto-asset exchange."

34.     Online crypto-asset exchanges are one place to purchase Bitcoin and other crypto-assets. These exchanges are similar to traditional exchanges in that they provide a convenient marketplace to match buyers and sellers of virtual currencies.

35.     In April 2013, there were only seven crypto-assets listed on coinmartketcap.com, a popular website that tracks the crypto-asset markets. As of this filing, the site monitors more than 6,900 crypto-assets.

36.     For a time, Bitcoin was the only crypto-asset available on exchanges. As crypto-assets grew in popularity, exchanges began listing other crypto-assets as well and trading volumes expanded. In early 2013, daily Bitcoin trading volumes hovered between $1 million and $25 million. By the end of 2017, daily Bitcoin trading volumes ranged between $200 million and $3.8 billion.

37.     Bitcoin is a commodity, rather than a security, because it allows for quick and secure transactions, can serve as a long-term store of value, and is decentralized from any government or private control. There is no "Bitcoin Inc." that has the ability to cause the price of bitcoin to rise through careful management or fall through mismanagement or deception. Instead, Bitcoin's value is purely a response to market-wide forces, and a customer buying a bitcoin is not investing in a common enterprise. Both the CFTC and courts have accordingly recognized that Bitcoin is appropriately classified as a commodity.

**B.     Ethereum**

38.     Ethereum is the second-most popular crypto-asset, with a market capitalization of approximately $41 billion. The Ethereum blockchain functions similarly to the Bitcoin blockchain insofar as its miners act as the validators of the network. Miners of the Ethereum blockchain are paid for their services in the form of newly minted ether. (The term "Ethereum" refers to the open software platform built on top of the Ethereum blockchain, while the term "ether" is the unit of account used to exchange value within the Ethereum "ecosystem" that is, the overall network of individuals using Ethereum or participating in the development of its network.) Ethereum, like Bitcoin, is a commodity rather than a security.

39.     Unlike Bitcoin's blockchain, Ethereum was designed to enable "smart contract" functionality. A smart contract is a program that verifies and enforces the negotiation or performance of a contract. Smart contracts can be self-executing and self-enforcing, which theoretically reduces the transaction costs associated with traditional contracting.

40.     As an example of how a smart contract works, consider a situation where two people want to execute a hedging contract. They each put up $1,000 worth of ether. They agree that, after a month, one of them will receive back $1,000 worth of ether at the dollar exchange rate at that time, while the other receives the rest of the ether. The rest of the ether may or may not be worth more than it was at the beginning of the month.

41.     A smart contract enables these two people to submit the ether to a secure destination and automatically distribute the ether at the end of the month without any third-party action. The smart contract self-executes with instructions written in its code which get executed when the specified conditions are met.

42.     In order to enable widespread adoption and standardized protocols for smart contracts, the Ethereum community has created certain out-of-the box smart contracts called Ethereum Request for Comments ("ERCs").

43.     An ERC is an application standard for a smart contract. Anyone can create an ERC and then seek support for that standard. Once an ERC is accepted by the Ethereum community, it benefits Ethereum users because it provides for uniform transactions, reduced risk, and efficient processes. The most widespread use of ERCs is to allow individuals to easily launch and create new digital tokens.

C.    **ERC-20 Tokens**

44.    ERC-20 is an application standard that the creator of Ethereum, Vitalik Buterin, first proposed in 2015. ERC-20 is a standard that allows for the creation of smart-contract tokens on the Ethereum blockchain, known as "ERC-20 tokens."

45.    ERC-20 tokens are built on the Ethereum blockchain, and therefore they must be exchanged on it. Accordingly, ERC-20 tokens are functionally different than crypto-assets like Bitcoin and Ethereum because they do not operate on an independent blockchain.

46.    ERC-20 tokens all function similarly by design—that is, they are compliant with the ERC-20 application standard. Some properties related to ERC-20 tokens are customizable, such as the total supply of tokens, the token's ticker symbol, and the token's name. All ERC-20 token transactions, however, occur over the Ethereum blockchain; none of them operates over its own blockchain.

47.    ERC-20 tokens are simple and easy to deploy. Anyone with a basic understanding of Ethereum can use the ERC-20 protocol to create her own ERC-20 tokens, which she can then distribute and make available for purchase. Even people without any technical expertise can have their own ERC-20 token created for them, which can then be marketed to investors.

D.    **The Advent Of The "ICO"**

48.    Between 2014 and 2016, Bitcoin's price fluctuated between $200 and $800. During this same time frame, ether's price fluctuated between roughly $1 and $10.

49.    By the end of 2016, interest in crypto-assets began to accelerate, with prices growing at a rate historically unprecedented for any asset class. Over the course of 2017 alone, bitcoin's price increased from approximately $1,000 to approximately $20,000. Ethereum's growth was even more dramatic. On January 1, 2017, Ethereum was trading at approximately $8

per ether. Approximately one year later, it was trading at over $1,400 per ether—a return of approximately 17,000 percent over that period.

50.    Seeking to capitalize on the growing enthusiasm for crypto-assets, many entrepreneurs sought to raise funds through initial coin offerings, or ICOs, including ICOs for newly created ERC-20 tokens, such as the QSP tokens. Many of these issuers improperly chose not to register their securities offerings with the SEC in order to save money and not "open their books" to the SEC, even though investors thereby were denied access to critical information they would have received from an SEC-registered offering. As a result, investors, including investors in QSP, were denied access to important information before making their investment decision.

51.    In the case of QSP, the initial offering occurred over a three-day period with 650 million (or 65 percent of the total supply) of QSP tokens sold, raising approximately $31 million. Investors would explore the various crypto-asset exchanges and social media sites that published active and upcoming ICOs. Many of these postings encouraged trading in QSP for profit. As one poster explained in an October 24, 2017, post regarding "how can token value appreciate" with QSP, "the more usage the protocol has, the more valuable QSP tokens should be" – ultimately recommending that she "like[d] its long term potential." As another poster put it, "[t]here is a very large potential for Richard [Ma] to lead the product to a 9 or 10 figure value in a very short time frame…. The ICO valuation offers outstanding value given the massive and probable growth they have planned."

52.    Between 2017 and 2018, nearly $20 billion was raised through ICOs. None of these ICOs was registered with the SEC. Of the approximately 800 ICOs launched between 2017 and 2018, the vast majority were issued using the ERC-20 protocol. In the months leading up to

Quantstamp's ICO, for example, issuers such as Block.one, Bancor, and Status had *each* raised at least *one hundred million dollars* from selling their ERC-20 tokens through ICOs.

53.    Like most ICOs, ERC-20 ICOs were typically announced and promoted through public online channels. Issuers, including Quantstamp, typically released a "whitepaper" describing the project and terms of the ICO. These whitepapers advertised the sale of tokens or coins through the ICO. They typically advertised the creation of a "new blockchain architecture."

54.    The whitepapers typically contained vastly less information than a registration statement filed with the SEC would have included. For example, whitepapers did not include a "plain English" description of the offering; a required list of key risk factors; a description of important information and incentives concerning management; an explanation of how the proceeds from the offering would be used; or a standardized format that investors could readily follow.

55.    When tokens were sold through an ERC-20 ICO, the issuer usually asserted that such tokens entitled their holders to certain rights related to a venture underlying the ICO, such as the right to use certain services provided by the issuer. In almost all cases, these tokens could also be traded, thereby giving investors a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others (that is, the people operating the issuer whose efforts will impact the value of those tokens on the secondary market).

56.    These tokens were frequently listed on crypto-asset exchanges, where they were bought and sold using other crypto-assets (such as Bitcoin or Ethereum) or traditional currencies such as the U.S. dollar.

57.    Even after an ICO, an issuer could receive a direct financial benefit from high prices in their token tokens by selling them to customers on these exchanges. These subsequent offerings were not registered or flagged to customers; instead, they most often relied on the same

14

whitepapers that had accompanied the sale of the tokens in the ICO, as well as continuing marketing efforts from the issuers seeking to increase the price of the tokens in order to increase the value to the issuers and their founders.

### E. Quantstamp Solicited And Sold The QSP Token Through Both An ICO And Subsequent Sales On Crypto-Asset Exchanges

58.     Prior to its November 2017 ICO, Quantstamp published a whitepaper. Casting the Quantstamp protocol as a solution to the "smart contract security problem," the whitepaper described the Quantstamp protocol as "the first smart contract security-auditing protocol." The whitepaper asserted that Quantstamp would create a "scalable cost-effective system to audit all smart contracts on the Ethereum network" and that over time they expected "every Ethereum smart contract to use the Quantstamp protocol to perform a security audit because security is essential." The whitepaper touted its team of software testing experts who "collectively have over 500 Google Scholar citations."

59.     Quantstamp launched the QSP token by creating 100 billion tokens at launch through the use of the ERC-20 protocol.

60.     Quantstamp retained approximately 35 percent of those tokens. Quantstamp sold the remaining 65 percent of the tokens during QSP's ICO, which Quantstamp organized and ran. Over its three-day ICO, from November 17 to November 19, 2017, Quantstamp raised approximately $31 million in proceeds.

61.     The Quantstamp ICO was promoted on unregistered crypto-asset exchanges. For example, crypto-asset exchange Huobi touted that it would be the first exchange to list QSP:



62.    QSP was also listed and promoted on Binance:



**Binance Lists QSP**

Binance
2017-11-20 21:07

**Fellow Binancians,**

QSP/BNB, QSP/BTC and QSP/ETH trading pairs are now available on Binance. You can start depositing and trading QSP now.

Details:

1. About Quantstamp (QSP)
2. Fees
3. Rules

63.    Quantstamp specifically directed its promotion and advertising of QSP tokens to and in the United States, as well as worldwide. For example, in 2018 Quantstamp's VP of strategy, Olga Mack, spoke at TedX in San Francisco, and Defendant Stewart spoke at Stanford University in California, both events promoted by Quantstamp on social media. In 2018, Quantstamp also joined the Blockchain Advocacy Coalition—a group that "aims to educate California legislators

about blockchain technology, encourage ongoing conversation, share knowledge, and help pass informed laws." According to Quantstamp's website, "thanks to the lobbying efforts of this group and particularly Quantstamp's VP of Strategy, Olga Mack" Quantstamp assisted in facilitating "the passage of two blockchain bills into law." Ma also gave interviews to the *New York Times* and *Forbes* regarding social media and crypto-assets. Moreover, Quantstamp representatives attended, hosted, and assisted events at the Blockchain Week NYC conference in this judicial district, and promoted their attendance on social media.



64.      Defendants also engaged in steps necessary to the distribution of QSP throughout the Class Period by promoting QSP on social media. The below are examples of some of the instances where Quantstamp promoted and solicited QSP, including ones that attempted to entice customers through contests on Twitter.

17





65.     Quantstamp's website served as a continuous form of solicitation, throughout the Class Period, that both promoted and enabled sales of QSP. Beginning in November 2018, Quantstamp's website has prominently included links to various blog posts focusing on QSP and otherwise touting the success of Quantstamp and QSP. For example: " 2018 was an incredible year for Quantstamp. In our continued work towards the mainstream adoption of smart contracts, we've definitely hit a number of exciting milestones along the way. Further development of the protocol, numerous audits being completed, writing a book on smart contract security, and forming invaluable partnerships in the blockchain space…our team has been busy. As we head into 2019, we're proud to reflect on everything that happened over the past year."

66.     Throughout the Class Period, QSP has been available for sale on at least ten different crypto-asset exchanges. This includes exchanges that were incorporated or headquartered in the United States and which targeted and welcomed U.S. traders. And throughout the Class Period, Quantstamp and the Individual Defendants solicited the sale of QSP throughout the United States and abroad in order to serve their own financial interests. Because Defendants continued to possess many QSP tokens themselves and because they did not comply with any rules and regulations prohibiting their subsequent sale of those tokens, Defendants could profit directly from high QSP prices by selling the QSP they held on crypto-asset exchanges. They achieved these high

prices through continuous systematic marketing of the QSP tokens, including the publication of information designed to make the QSP tokens appear to be favorable investments.

**F.      Because of Defendants' Efforts, Investors Would Not Reasonably Have Understood Prior To April 3, 2019, At The Earliest, That QSP Was A Security**

67.      Quantstamp and its promoters made numerous false statements that omitted key information in order to lead reasonable investors to conclude that the QSP tokens it sold in were not securities. Defendants touted false technical details about the supposed utility its crypto-asset and its utility, compared QSP to Bitcoin and Ethereum (which are not securities), and then explicitly told investors that QSP was not a security. Defendants made and repeated these statements in its whitepaper published prior to the ICO, which is a prospectus not only for the ICO but also for all of Quantstamp's subsequent sales of QSP tokens.

68.      As an initial matter, Quantstamp's whitepaper stated *prospectively* that QSP tokens "to be offered at the Quantstamp Token Pre-Sale and the Public Sale … are not intended to constitute securities in any jurisdiction" and that the whitepaper "does not constitute a prospectus or offer document of any sort and is not intended to constitute an offer of securities or a solicitation for investment in securities in any jurisdiction." The whitepaper also stated that readers "acknowledge that the QSP Tokens do not constitute securities in any form in any jurisdiction" and "acknowledge that this White Paper does not constitute a prospectus or offer document of any sort and is not intended to constitute an offer of securities in any jurisdiction or a solicitation for investment in securities" amongst other things. Further, Quantstamp failed to register its offering of QSP with the SEC, thus further conveying to investors that QSP was not a security.

69.      Misleadingly, Quantstamp also promoted itself as being similar to Ethereum and Bitcoin, which are not securities nor required to be registered with the SEC. Quantstamp's stated "goal is to create a permissionless and decentralized network much like Ethereum and Bitcoin."

20

And Quantstamp's co-founder Steven Stewart has expressly compared QSP tokens to those crypto-assets: "Ether is used for fueling token transfers and other state changes. We are committed to exclusively using QSP to fuel our protocol." Indeed, in the QSP whitepaper, Quantstamp represented to investors that "we are extending Ethereum with technology designed to ensure the security of smart contracts." The whitepaper claimed Quantstamp protocol would one day "become part of the Ethereum protocol" itself.

70.     Beyond these express statements, Quantstamp took advantage of two key informational asymmetries in order to mislead the market into believing that QSP was not a security. First, the market lacked understanding and awareness concerning how QSP would differ from other crypto-assets like Bitcoin and Ethereum, which were commodities rather than securities. Second, Quantstamp took advantage of the excitement generated by the hundreds of millions of dollars flooding into various crypto-asset projects by marketing their token as the next Bitcoin. The high-profile success of each successive ICO lent temporary credibility to ICOs as a whole.

71.     In the face of promises that the Quantstamp protocol would one day "become part of the Ethereum protocol" able to "audit all smart contract projects on Ethereum," and considering the new technology at issue and Quantstamp's other statements, many investors were understandably unaware that QSP tokens had fundamentally different features than crypto-assets, which the SEC has determined are not securities. Moreover, the Quantstamp whitepaper was ambiguous about how it would use the proceeds of the QSP ICO, stating only that "all proceeds received by Quantstamp may be spent freely by Quantstamp absent any conditions, save as set out herein."

72.    Although it is unclear when, Quantstamp later added an additional, retrospective disclaimer to its publicly available whitepaper, stating that the QSP tokens "previously offered in 2017 at the Quantstamp Token Pre-Sale and the Public Sale … are not intended to constitute securities in any jurisdiction" and reiterated that the whitepaper "does not constitute a prospectus or offer document of any sort and is not intended to constitute an offer of securities or a solicitation for investment in securities in any jurisdiction."

73.    In its whitepaper, Quantstamp also sought to emphasize the utility rather than security token characteristics of QSP tokens. Quantstamp stated that "Quantstamp tokens are sold as a functional good" and that "[a]s of the date of publication of this paper, the Tokens have no known potential uses outside of the Quantstamp ecosystem and are not permitted to be sold or otherwise traded on third-party exchanges." Of course, Quantstamp *did* list QSP tokens on third-party exchanges within days after its ICO, and then repeated its instruction that QSP tokens were "not permitted to be sold or otherwise traded on third-party exchanges" in its retrospective legal disclaimer, at which point those statements were apparently false.

74.    Defendants' attempts to link QSP to immediately useful crypto-assets like Bitcoin and Ethereum was in sharp contrast to the fact that, as Defendants were well aware, QSP had no utility at the launch of its ICO.

75.    Prior to April 3, 2019, when the SEC released its Framework, it was therefore unclear to a reasonable investor that QSP was a security. In March 2018, for example, investors sought clarification from Quantstamp on reddit to "help us investors to get this more clear" regarding how the SEC might impact QSP tokens. Quantstamp responded evasively, saying that "Quantstamp has retained top legal counsel from the beginning and conservatively followed and will continue to follow the regulatory guidance at every step" without further elaboration.

76.     On June 14, 2018, as a further example, the Director of the Corporation Finance Division, William H. Hinman, explained that "the ICOs I am seeing, strictly speaking, the token—or coin or whatever the digital information packet is called—all by itself is not a security." On May 2, 2018, Commissioner Hester Peirce similarly opined that not "all ICOs must be deemed securities offerings." Commissioner Peirce identified numerous open questions that issuers like Quantstamp emphasized when arguing that ERC-20 tokens are not securities, such as the utility of the QSP token in an incomplete or partially complete network.

77.     Other thought leaders in the space, such as the lawfully registered broker-dealer Coinbase, opined in late 2016 that "we have considered the question of whether issuance of a Blockchain Token prior to the existence of a system would constitute a security. We have not found conclusive law on the subject, but believe that the better view is that a non-security Blockchain Token does not become a security merely because the system as to which it has rights has not yet been created or completed."

78.     As the statements above indicate, before the SEC issued its Framework on April 3, 2019, a reasonable investor would not have concluded that ERC-20 tokens like the QSP token were generally subject to the securities laws. On the contrary, they were confronted with representations both from token issuers and from crypto-asset discussions that would have led them reasonably to believe they were not investing in securities.

**G.      The QSP Tokens Are Securities**

79.     QSP tokens are securities because they constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. At issuance, as described above, it was not clear to a reasonable purchaser that the QSP tokens were securities as defined under federal and state securities laws. Quantstamp acted as if the QSP tokens were *not* securities, for example, by not ensuring that a registration statement was filed with

the SEC, which would have provided important disclosures to investors of the risks inherent in these investments, including their speculative nature.

80.     Moreover, as discussed above, Quantstamp misleadingly compared QSP to Bitcoin and Ethereum in its whitepaper. The distinction between Bitcoin and Ethereum, on the one hand, and digital tokens, such as QSP, on the other, was material to investors, including in evaluating whether QSP is a security. When the Bitcoin and Ethereum systems were created, only a tiny fraction of the underlying crypto-asset units was in existence. As a result, increases in bitcoin and ether could occur at a fixed rate over time, such as from mining. The growth of Bitcoin and Ethereum thus occurs through a decentralized process as numerous users engage in mining and other efforts to build the ecosystem.

81.     By contrast, Quantstamp issued a substantial portion of the total stock of QSP tokens at issuance, at very little economic cost to Quantstamp's founders. The creation of QSP tokens thus occurred through a centralized process, in contrast to Bitcoin and Ethereum. This would not have been apparent at issuance, however, to a reasonable investor. Rather, it was only after the passage of time and disclosure of additional information about the issuer's intent, process of management, and success in allowing decentralization to arise that a reasonable purchaser could know that he or she had acquired a security. Purchasers were thereby misled into believing that QSP was something other than a security when it *was* a security.

82.     Within the last year prior to the filing of the initial Complaint, however, the SEC has clarified, pursuant to its statutorily delegated authority, and with the benefit of labor-intensive research and investigations, that many ERC-20 tokens, including QSP, were securities. On April 3, 2019, as noted, the SEC published a "Framework for 'Investment Contract' Analysis of Digital Assets," in which it "provided a framework for analyzing whether a digital asset is an investment

contract and whether offers and sales of a digital asset are securities transactions." Among the most significant statements therein is the SEC's description of how to analyze the various facts surrounding ICOs in determining whether a given digital asset, like QSP, is a security. Under application of the Framework, the QSP tokens were securities at issuance.

83.    In the Framework, the SEC cautioned potential issuers: "If you are considering an Initial Coin Offering, sometimes referred to as an 'ICO,' or otherwise engaging in the offer, sale, or distribution of a digital asset, you need to consider whether the U.S. federal securities laws apply." The SEC explained the basics of the *Howey* test.

> The U.S. Supreme Court's *Howey* case and subsequent case law have found that an "investment contract" exists when there is the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. The so-called "*Howey* test" applies to any contract, scheme, or transaction, regardless of whether it has any of the characteristics of typical securities. The focus of the *Howey* analysis is not only on the form and terms of the instrument itself (in this case, the digital asset) but also on the circumstances surrounding the digital asset and the manner in which it is offered, sold, or resold (which includes secondary market sales). Therefore, issuers and other persons and entities engaged in the marketing, offer, sale, resale, or distribution of any digital asset will need to analyze the relevant transactions to determine if the federal securities laws apply.

Investors who bought QSP tokens invested money or other valuable consideration, such as bitcoin and ether, in a common enterprise—Quantstamp. Investors had a reasonable expectation of profit based upon Quantstamp's efforts, including, among other things, Quantstamp obtaining listing of QSP tokens on various crypto-asset exchanges.

### a.    QSP Token Purchasers Invested Money

84.    Investors in QSP tokens made an investment of money or other valuable consideration for purposes of *Howey*. The SEC Framework states: "The first prong of the *Howey* test is typically satisfied in an offer and sale of a digital asset because the digital asset is purchased

or otherwise acquired in exchange for value, whether in the form of traditional (or fiat) currency, another digital asset, or other type of consideration."

85.     Investors invested traditional and other digital currencies, such as bitcoin and ether, to purchase the QSP tokens. QSP tokens were listed on many crypto-asset exchanges, and those crypto-asset exchanges permitted investors to purchase QSP with bitcoin and ether.

**b.     QSP Token Investors Participated In A Common Enterprise**

86.     The SEC Framework states: "In evaluating digital assets, we have found that a 'common enterprise' typically exists." This is "because the fortunes of digital asset purchasers have been linked to each other or to the success of the promoter's efforts."

87.     The QSP tokens are no different. Investors were passive participants in the QSP token ICO and the profits of each investor were intertwined with those of both Quantstamp and of other investors. Quantstamp was responsible for supporting QSP, pooled investors' assets, and controlled those assets. Quantstamp also retained a significant stake in QSP, thus sharing in the profits and risk of the venture.

88.     To this effect, Quantstamp conveyed in its whitepaper that at the time of the ICO in November 2017, the underlying technological success of the project and the corresponding value of QSP tokens were in the hands of Quantstamp's development team:

| November | • Complete 3rd semi-automated audit with another company<br>• QSP token launch<br>• Begin university partnerships with the University of Waterloo |
|---|---|
| December | • Build the Quantstamp validation/payment smart contract on Ethereum<br>• Complete the 4th semi-automated audit |
| **2018** | |
| January | • Build the Quantstamp validation node (an augmented Ethereum node) |
| February | • Add analysis software v1 to the validation node that returns the proof-of-audit hash and raw output<br>• Complete the 5th semi-automated audit using analysis software v1 |
| March | • Begin testing phase and improvement of crypto-economic incentives<br>• Implement token holder governance system for the upgradeable protocol |
| April | • Deploy to test network after testing and validating system<br>• Begin academic review of the system |
| May | • Hold first Quantstamp hackathon |
| June | • Begin work on smart contract insurance with partners |
| July | • Hold token holder vote for mainnet after months of testing/incentive adjustment |
| August | • Release mainnet v1 |
| September | • Begin work on distributed SAT consensus with BFT for Mainnet v2 |
| October | • Add smart contract insurance alpha product on Mainnet smart contracts |

89.    As Stewart put it in June 2018 when publicly responding to dissatisfied QSP token purchasers, "the protocol itself is a long-term endeavor" and Quantstamp is "going through numerous cycles of learning, building, testing and iterating." Accordingly, investors in QSP participated in a common enterprise by purchasing the token.

### c.    QSP Token Investors Purchased The Tokens With A Reasonable Expectation Of Profit From Owning Them

90.    As to "reasonable expectation of profits," the SEC Framework states: "A purchaser may expect to realize a return through participating in distributions or through other methods of realizing appreciation on the asset, such as selling at a gain in a secondary market."

91.    Investors in the QSP tokens, including Plaintiffs and the Class, made their investment with a reasonable expectation of profits. The QSP token was sold to investors prior to

a network or "ecosystem" on which it could be used being fully developed. For pre-functional tokens, such as QSP, the primary purpose for purchasing the token was to make a profit, rather than to utilize the token itself for a task.

92.     Alluding to the "AP" (the "Active Participant"), which is the promoter, sponsor, or other third party that "provides essential managerial efforts that affect the success of the enterprise," the Framework identifies a series of factually intense questions underscoring both the time the SEC had spent considering these issues and the challenges a layperson would face in analyzing whether a digital asset constitutes a security. In particular, the Framework lays out a number of characteristics to assess whether the "reasonable expectation of profits" element is met with respect to whether digital assets (such as QSP) thereby satisfy the *Howey* test:

93.     The more the following characteristics are present, the more likely it is that there is a reasonable expectation of profit:

- The digital asset gives the holder rights to share in the enterprise's income or profits or to realize gain from capital appreciation of the digital asset.

     o   The opportunity may result from appreciation in the value of the digital asset that comes, at least in part, from the operation, promotion, improvement, or other positive developments in the network, particularly if there is a secondary trading market that enables digital asset holders to resell their digital assets and realize gains.

     o   This also can be the case where the digital asset gives the holder rights to dividends or distributions.

- The digital asset is transferable or traded on or through a secondary market or platform or is expected to be in the future.

- Purchasers reasonably would expect that an AP's efforts will result in capital appreciation of the digital asset and therefore be able to earn a return on their purchase.

- The digital asset is offered broadly to potential purchasers as compared to being targeted to expected users of the goods or services or those who have a need for the functionality of the network.

- o   The digital asset is offered and purchased in quantities indicative of investment intent instead of quantities indicative of a user of the network. For example, it is offered and purchased in quantities significantly greater than any likely user would reasonably need, or so small as to make actual use of the asset in the network impractical.

- There is little apparent correlation between the purchase/offering price of the digital asset and the market price of the particular goods or services that can be acquired in exchange for the digital asset.

- There is little apparent correlation between quantities the digital asset typically trades in (or the amounts that purchasers typically purchase) and the amount of the underlying goods or services a typical consumer would purchase for use or consumption.

- The AP has raised an amount of funds in excess of what may be needed to establish a functional network or digital asset.

- The AP is able to benefit from its efforts as a result of holding the same class of digital assets as those being distributed to the public.

- The AP continues to expend funds from proceeds or operations to enhance the functionality or value of the network or digital asset.

- The digital asset is marketed, directly or indirectly, using any of the following:

  - o   The expertise of an AP or its ability to build or grow the value of the network or digital asset.

  - o   The digital asset is marketed in terms that indicate it is an investment or that the solicited holders are investors.

  - o   The intended use of the proceeds from the sale of the digital asset is to develop the network or digital asset.

  - o   The future (and not present) functionality of the network or digital asset, and the prospect that an AP will deliver that functionality.

  - o   The promise (implied or explicit) to build a business or operation as opposed to delivering currently available goods or services for use on an existing network.

  - o   The ready transferability of the digital asset is a key selling feature.

  - o   The potential profitability of the operations of the network, or the potential appreciation in the value of the digital asset, is emphasized in marketing or other promotional materials.

29

o    The availability of a market for the trading of the digital asset,
particularly where the AP implicitly or explicitly promises to create
or otherwise support a trading market for the digital asset.

94.    The SEC Framework clarifies that investors purchased the QSP tokens with a

reasonable expectation of profits.

95.    According to icodrops.com screenshots of the Quantstamp ICO, Quanstamp's

Team & Advisors were personally allocated 20 percent of the QSP tokens, thus benefitting from

holding the same digital asset as the purchasers:



96.    The token allocation also makes clear that Quantstamp intended to expend funds

from the proceeds to build the functionality of its protocol through "product development." Indeed,

another screenshot indicated that should the ICO raise $30 million (which it did), Quantstamp

would "fund 27 engineers to work full-time for 5 years" following the ICO and "ramp up" the

release schedule of its protocol:



97.     Investment analysis of QSP tokens shows that tokens were viewed as intended to provide a return on investment: analysts were "bullish" on QSP tokens because of factors such as "growth potential," the "strong team," the "constrained supply" and the likelihood of the tokens being listed on additional exchanges in the future.

98.     And the expectation of a return on investment, as well as that the managerial efforts of Quantstamp were key to that return on investment, were also shown in reports following the ICO that the Quantstamp "team has been undermining the value of the token it used to raise millions" by accepting fiat currency rather than only QSP tokens to access its protocol. QSP purchasers were

concerned about that conduct, because "as a token holder, we only benefit from those willing to hold and find value in the token. If the use case is unclear, this will not translate to increased ROI."

99.    Indeed, Quantstamp emphasized the transferability of QSP tokens on the secondary market of crypto-asset exchanges, for example retweeting when major exchanges announced the listing of QSP tokens just a day after the end of the QSP ICO:



100.    And Quantstamp emphasized in its whitepaper that the future functionality of its protocol would exponentially increase demand for QSP tokens, since contract creators would "pay QSP tokens to get their smart contract verified" and as "the number of smart contracts grows exponentially, we expect demand from Contract Creators to grow commensurately." Indeed, Quantstamp represented that "[o]ver time, we expect every Ethereum smart contract to use the

32

Quantstamp protocol to perform a security audit because security is essential." Accordingly, investors in the Quantstamp tokens made their investment with a reasonable expectation of profits.

### d.    Investors Expected Profits From The QSP Tokens To Be Derived From The Managerial Efforts Of Issuers

101.    The SEC Framework provides that the "inquiry into whether a purchaser is relying on the efforts of others focuses on two key issues: Does the purchaser reasonably expect to rely on the efforts of an [Active Participant]? Are those efforts 'the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise,' as opposed to efforts that are more ministerial in nature?"

102.    The SEC explained in its Framework, further underlining the depth of study the agency had devoted to the matter over the years and the complexity of such legal analysis from the perspective of a reasonable investor, that the more of the following characteristics that are present, "the more likely it is that a purchaser of a digital asset is relying on the 'efforts of others'":

- An ["Active Participant" or "AP"] is responsible for the development, improvement (or enhancement), operation, or promotion of the network, particularly if purchasers of the digital asset expect an AP to be performing or overseeing tasks that are necessary for the network or digital asset to achieve or retain its intended purpose or functionality.

  o    Where the network or the digital asset is still in development and the network or digital asset is not fully functional at the time of the offer or sale, purchasers would reasonably expect an AP to further develop the functionality of the network or digital asset (directly or indirectly). This particularly would be the case where an AP promises further developmental efforts in order for the digital asset to attain or grow in value.

- There are essential tasks or responsibilities performed and expected to be performed by an AP, rather than an unaffiliated, dispersed community of network users (commonly known as a "decentralized" network).

- An AP creates or supports a market for, or the price of, the digital asset. This can include, for example, an AP that: (1) controls the creation and issuance of the digital asset; or (2) takes other actions to support a market price of the digital asset, such as by limiting supply or ensuring scarcity, through, for example, buybacks, "burning," or other activities.

33

- An AP has a lead or central role in the direction of the ongoing development of the network or the digital asset. In particular, an AP plays a lead or central role in deciding governance issues, code updates, or how third parties participate in the validation of transactions that occur with respect to the digital asset.

- An AP has a continuing managerial role in making decisions about or exercising judgment concerning the network or the characteristics or rights the digital asset represents including, for example:

  o Determining whether and how to compensate persons providing services to the network or to the entity or entities charged with oversight of the network.

  o Determining whether and where the digital asset will trade. For example, purchasers may reasonably rely on an AP for liquidity, such as where the AP has arranged, or promised to arrange for, the trading of the digital asset on a secondary market or platform.

  o Determining who will receive additional digital assets and under what conditions.

  o Making or contributing to managerial level business decisions, such as how to deploy funds raised from sales of the digital asset.

  o Playing a leading role in the validation or confirmation of transactions on the network, or in some other way having responsibility for the ongoing security of the network.

  o Making other managerial judgements or decisions that will directly or indirectly impact the success of the network or the value of the digital asset generally.

- Purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset, such as where:

  o The AP has the ability to realize capital appreciation from the value of the digital asset. This can be demonstrated, for example, if the AP retains a stake or interest in the digital asset. In these instances, purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset.

  o The AP distributes the digital asset as compensation to management or the AP's compensation is tied to the price of the digital asset in the secondary market. To the extent these facts are present, the compensated individuals can be expected to take steps to build the value of the digital asset.

  o The AP owns or controls ownership of intellectual property rights of the network or digital asset, directly or indirectly.

34

> o    The AP monetizes the value of the digital asset, especially where the digital asset has limited functionality.

103.    Shifting its focus to the numerous facts bearing on the nature of the digital asset at issue, the SEC explained still further:

> Although no one of the following characteristics of use or consumption is necessarily determinative, the stronger their presence, the less likely the *Howey* test is met:

- The distributed ledger network and digital asset are fully developed and operational.

- Holders of the digital asset are immediately able to use it for its intended functionality on the network, particularly where there are built-in incentives to encourage such use.

- The digital assets' creation and structure is designed and implemented to meet the needs of its users, rather than to feed speculation as to its value or development of its network. For example, the digital asset can only be used on the network and generally can be held or transferred only in amounts that correspond to a purchaser's expected use.

- Prospects for appreciation in the value of the digital asset are limited. For example, the design of the digital asset provides that its value will remain constant or even degrade over time, and, therefore, a reasonable purchaser would not be expected to hold the digital asset for extended periods as an investment.

- With respect to a digital asset referred to as a virtual currency, it can immediately be used to make payments in a wide variety of contexts, or acts as a substitute for real (or fiat) currency.

  > o    This means that it is possible to pay for goods or services with the digital asset without first having to convert it to another digital asset or real currency.

  > o    If it is characterized as a virtual currency, the digital asset actually operates as a store of value that can be saved, retrieved, and exchanged for something of value at a later time.

- With respect to a digital asset that represents rights to a good or service, it currently can be redeemed within a developed network or platform to acquire or otherwise use those goods or services. Relevant factors may include:

    o    There is a correlation between the purchase price of the digital asset and a market price of the particular good or service for which it may be redeemed or exchanged.

    o    The digital asset is available in increments that correlate with a consumptive intent versus an investment or speculative purpose.

    o    An intent to consume the digital asset may also be more evident if the good or service underlying the digital asset can only be acquired, or more efficiently acquired, through the use of the digital asset on the network.

- Any economic benefit that may be derived from appreciation in the value of the digital asset is incidental to obtaining the right to use it for its intended functionality.

- The digital asset is marketed in a manner that emphasizes the functionality of the digital asset, and not the potential for the increase in market value of the digital asset.

- Potential purchasers have the ability to use the network and use (or have used) the digital asset for its intended functionality.

- Restrictions on the transferability of the digital asset are consistent with the asset's use and not facilitating a speculative market.

- If the AP facilitates the creation of a secondary market, transfers of the digital asset may only be made by and among users of the platform.

104. Purchasers of pre-functional tokens, such as QSP, necessarily rely on the managerial efforts of others to realize value from their investments. The success of these managerial efforts in developing the networks on which these tokens will operate is the primary factor in their price, that is, until such tokens transition into being functional utility tokens. The QSP token was a security at issuance because profits from QSP would be derived primarily from the managerial efforts of Quantstamp in developing the associated network on which QSP would function, rather than having its profit derived from market forces of supply and demand, such as might affect the price of a commodity such as gold (or Bitcoin).

105. This dependency, however, on the managerial efforts of Quantstamp was not apparent at issuance to a reasonable investor. Considering the limited available information about

how QSP was designed and intended to operate, if such an investor were even able to interpret the relevant law at the time, a reasonable investor lacked sufficient bases to conclude whether QSP was a security until the platform at issue, and its relevant "ecosystem," had been given time to develop. In the interim, the investor lacked the facts necessary to conclude—let alone formally allege in court—that the token she had acquired was a security. It was only after the passage of some significant amount of time, and only with more information about Quantstamp's intent, process of management, and lack of success in allowing decentralization to arise, that an investor could reasonably determine that a token that was advertised as something other than a security was a security all along.

106.    Investors' profits in QSP tokens were to be derived from the managerial efforts of others, specifically Quantstamp and its co-founders and development teams. QSP token investors relied on the managerial and entrepreneurial efforts of Quantstamp and their executive and development teams to manage and develop the projects funded by the QSP ICO.

107.    Indeed, one of the few statements on the cover page of the QSP whitepaper is that "[o]ur team is made of up of software testing experts who collectively have over 500 Google Scholar citations."

108.    Both Stewart and Ma's biographies were featured in the QSP whitepaper and were held out to be integral parts of the success of QSP. In the whitepaper, Stewart's expertise and credentials in cryptological projects are highlighted, including spending "nearly 5 years as part of Canada's cryptologic agency in the Department of National Defense." Similarly, the whitepaper touts Ma's credentials, highlighting his experience as an "Algorithmic Portfolio Manager at Bitcoin HFT Fund" and his record of "zero notable incidents in nearly a decade of reliably handling millions of dollars of investor capital."

109.    Quantstamp touts their broader team as well, stating "[w]e are a diverse and talented team of PhDs and security professionals with a wealth of experience. We come from companies like Google, Facebook, Apple, Goldman Sachs, BMW, Visa, and MathWorks. Together, we are here to do some of the best work of our careers, driving smart contract security while defining a new standard in blockchain security."

110.    One self-described token holder, explaining how "value is accrued to the QSP token," stated that "Quantstamp isn't shy about the caliber of their team, and rightfully so. Their team is filled with security PHD's (with a huge amount of publications behind them combined) and software engineers/business team with impressive experience in the industry."

111.    Under the Framework, notwithstanding the complexity of the issue to a reasonable investor, QSP satisfies most if not all of the factors described as relevant to its determination that a digital asset is a security. Quantstamp created QSP tokens from thin air. Quantstamp represented that it would develop a "Quantstamp ecosystem" (*i.e.,* the overall network of individuals using QSP or participating in the development of its network) that would increase the value of QSP tokens. Plaintiffs and the Class reasonably expected Quantstamp to provide significant managerial efforts, to develop and improve the QSP ecosystem, to develop and sustain a supportive network, and to secure listings at exchanges through which QSP tokens could be traded or liquidated. And Quantstamp represented that it would provide significant managerial efforts to achieve these objectives and make QSP a success.

### H.    The SEC Has Concluded That Tokens Such As QSP Are Securities

112.    On September 30, 2019, the SEC found that another issuer of a similar digital token, Block.one, had violated the Securities Act through its unregistered sale to U.S. investors of a token called EOS. EOS, like QSP, was a digital token that was not marketed to investors as a security, but—by application of the SEC's Framework—*was* a security in that it constituted an investment

of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. Notably, the SEC enforcement action occurred over two years after Block.one began selling EOS to the public, further underscoring the complexity of these issues for lay investors.

113.    In arriving at its determination that the EOS token was a security, the SEC reached the following conclusions:

- "Companies that offer or sell securities to US investors must comply with the securities laws, irrespective of the industry they operate in or the labels they place on the investment products they offer."

- "Block.one did not provide ICO investors the information they were entitled to as participants in a securities offering."

- "[EOS] Tokens were securities under the federal securities laws"

- "A purchaser in the offering of [EOS] Tokens would have had a reasonable expectation of obtaining a future profit based upon Block.one's efforts, including its development of the EOSIO software and its promotion of the adoption and success of EOSIO and the launch of the anticipated EOSIO blockchains."

- "Block.one violated Sections 5(a) and 5(c) of the Securities Act by offering and selling these securities without having a registration statement filed or in effect with the Commission or qualifying for an exemption from registration."

As a result of the SEC's enforcement action, Block.one consented to a settlement whereby it would pay $24 million to the SEC. The SEC's recent conclusion that EOS was a security applies with equal force to QSP.

## I.    The Class Has Suffered Significant Damages From Defendants' Actions

114.    The QSP tokens today are worth far less than the price Plaintiffs and the Class paid for them. Indeed, QSP is now down more than 95 percent from its 2018 high. As a direct result of Defendants' issuance, promotion, and sale of unregistered securities, Plaintiffs and the Class— many of whom are retail investors who lack the technical and financial sophistication necessary to

have evaluated the risks associated with their investments in the QSP token and were denied the information that would have been contained in the materials required for the registration of QSP —have suffered significant damages in an amount to be proven at trial.

115.    To the extent Plaintiffs and the Class still hold any QSP tokens, they hereby demand rescission and make any necessary tender of the QSP tokens.

## V.    DEFENDANTS' CONCEALMENT OF THEIR MISCONDUCT PREVENTED PLAINTIFFS AND MEMBERS OF THE CLASS FROM BRINGING A CLAIM AT THE TIME THE EVENTS OCCURRED

116.    Consistent with the perspective of a reasonable investor, neither Plaintiffs nor members of the Class were in a position to appreciate their ability to bring claims based on Defendants' misconduct until April 3, 2019, at the earliest. Plaintiffs make the following allegations regarding Defendants' intentional or reckless statements and conduct solely for purposes of alleging the timeliness of all of Plaintiffs' and the Class's claims, which do not sound in fraud.

117.    In the whitepapers describing the QSP tokens, as well as in their other marketing, as described above, Defendants deliberately created the impression that QSP was not a security. This included explicit statements that QSP "are not intended to constitute securities in any jurisdiction," as well as misleading comparisons to Bitcoin and other crypto-assets that are not securities. Because of these representations and omissions, Plaintiffs and members of the Class reasonably believed they were purchasing a decentralized asset that had functionality at issuance. In fact, however, they were investing in Defendants' efforts, not knowing that Defendants had no plan for QSP.

118.    In its whitepapers, Defendants described how they improved the software developer's process for producing better code. The whitepapers described how the "current way developers test code [is] manually via open source code reviews and unit tests."

40

119.    The whitepapers described how "the Quantstamp protocol" addresses this problem of manual code review. It described how a developer would "submit his code for a security audit via the Quantstamp Ethereum smart contract directly from his wallet, with the source code in the data field, and by sending QSP tokens." This "smart contract" would receive the request and then perform a security check in a decentralized manner. Through a process it described as "proof-of-audit," the smart contract would report the severity of issues identified in the audit on a scale of 1-10 and add that data to the Ethereum blockchain.

120.    But the Quantstamp Protocol was not, and is still not, capable of performing decentralized security audits. Instead, since raising funds through its ICO, Defendants have used those funds to build a business that performs manual security audits. Investors in the QSP token do not receive any benefit from such manual security audits, as those services do not require a QSP ecosystem.

121.    Under the misimpressions that QSP was not a security and that the Quantstamp protocol was capable of decentralized security audits, as a result of Defendants' fraudulent statements and omissions, Plaintiffs reasonably did not realize that they were in a position to bring claims under federal or state law regulating securities. Defendants' misrepresentation would not have been apparent until, at the earliest, April 3, 2019, when the SEC clarified the legal paradigm for assessing the security status of crypto-assets like QSP.

122.    Indeed, independent of Defendants' state of mind in making the materially misleading misstatements and omissions described above, these misstatements and omissions—which reflected the massive asymmetry in information available to Defendants and unavailable to Plaintiffs and the Class—prevented Plaintiffs and the Class from realizing that they were in a

position to bring claims under Federal or state law regulating securities until April 3, 2019, at the earliest.

## VI.    CLASS ALLEGATIONS

123.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 and seek certification of the following Class:  All persons who purchased QSP tokens, which were first sold on or about November 17, 2017, in a domestic U.S. transaction and were injured thereby. The Class Period is thus November 17, 2017 through the present.

124.    Plaintiffs also seek to represent a subclass (the "Subclass") defined as follows:  All persons who purchased QSP tokens, which were first sold on or about November 17, 2017, in a domestic U.S. transaction directly from Defendants and were injured thereby.

125.    The Class and Subclass exclude individuals subject to any enforceable arbitration clause contained in any of the purchase agreements executed in connection with their purchase of QSP. Subject to the below, the Class includes all other individuals who purchased QSP tokens, including those individuals who purchased QSP tokens in sales made through online crypto-asset exchanges.

126.    Excluded from the Class and Subclass are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. The Class also excludes individuals subject to any enforceable arbitration clause contained in any of the purchase agreements executed in connection with the QSP ICO.

127.    Plaintiffs reserve the right to amend the Class and Subclass definitions if investigation or discovery indicates that the definitions should be narrowed, expanded, or otherwise modified.

128.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class and Subclass members is unknown to Plaintiffs at this time, but it is believed to be in the tens of thousands.

129.    Members of the Class and Subclass are readily ascertainable and identifiable. Members of the Class and Subclass may be identified by publicly accessible blockchain ledger information and records maintained by Defendants or its agents. They may be notified of the pendency of this action by electronic mail using a form of notice customarily used in securities class actions.

130.    Plaintiffs' claims are typical of the claims of the Class and Subclass members as all Class and Subclass members are similarly affected by Defendants' respective wrongful conduct in violation of the laws complained of herein. Plaintiffs do not have any interest that is in conflict with the interests of the members of the Class or the Subclass.

131.    Plaintiffs and members of the Class and Subclass sustained damages from Defendants' common course of unlawful conduct based upon the loss in market value of QSP.

132.    Plaintiffs have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the members of the Class and Subclass and have retained counsel competent and experienced in class actions and securities litigation. Plaintiffs have no interests antagonistic to those of the Class or the Subclass.

133.    Common questions and answers of law and fact exist as to all Class and Subclass members and predominate over any questions solely affecting individual members of the Class and Subclass, including but not limited to the following:

- Whether QSP is a security under federal and state law;

- Whether Quantstamp failed to register QSP as a security under applicable federal and state law;

- Whether Quantstamp offered or sold QSP to members of the Class;

- Whether the members of the Class and Subclass suffered damages as a result of Defendants' conduct in violation of federal and state law; and

- Whether the Class and Subclass members are entitled to recover the monies they paid thereunder.

134.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by some of the individual Class and Subclass members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class and Subclass to individually redress the wrongs done to them.

135.    There will be no difficulty in the management of this action as a class action.

## VII.    <u>CAUSES OF ACTION</u>

**FIRST CAUSE OF ACTION**
**(SECURITIES ACT – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Sections 5 and 12(a)(1) of the Securities Act**
**(Quantstamp)**

136.    Plaintiffs reallege the allegations above.

137.    Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of

transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

138.    Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." *Id.* § 77e(c).

139.    When issued, the QSP tokens were securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). Quantstamp promoted, solicited or sold QSP tokens from Plaintiffs and members of the Class. Quantstamp thus directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale. No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

140.    Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title … shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id.* § 77l(a)(1).

141.   Accordingly, Quantstamp has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, *id*. §§ 77e(a), 77e(c), and 77*l*(a)(1).

142.   Plaintiffs and Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest. *Id*. § 77m.

143.   Plaintiffs and Class members who no longer own QSP tokens seek damages for QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest. *Id.*

## SECOND CAUSE OF ACTION
### (SECURITIES ACT – PRIMARY LIABILITY)
**Sale of Securities By Means of a Prospectus Containing Untrue Statements and Omissions of Material Facts
Sections 5 and 12(a)(2) of the Securities Act
(Quantstamp)**

144.   Plaintiffs reallege the allegations above.

145.   Section 12(a)(2) of the Securities Act provides in relevant part: "Any person who offers or sells a security … by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon,

less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security" *Id.* § 77*l*(a)(2).

146.    When issued, the QSP tokens were securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). Quantstamp offered, promoted, solicited or sold purchases of QSP tokens from the Subclass by means of a prospectus. The prospectus consists of Quantstamp's whitepapers issued prior to its ICO.

147.    The statement in the whitepapers that the "Quantstamp protocol" enabled a developer to "submit his code for a security audit via the Quantstamp Ethereum smart contract directly from his wallet, with the source code in the data field, and by sending QSP tokens" was false. The Quantstamp protocol enabled no such decentralized security audit functionality.

148.    In stating that QSP tokens "are not intended to constitute securities in any jurisdiction," Quantstamp failed to disclose that the Individual Defendants would individually profit from the proceeds of the QSP offerings. This omission was material to the assessment of purchasers' legal rights and claims based on QSP's status as a security

149.    In stating that QSP tokens "are not intended to constitute securities in any jurisdiction," Quantstamp failed to disclose that the fortunes of QSP purchasers, with respect to the value and utility of QSP, was linked to the success of Quantstamp's efforts. This omission was material to the assessment of purchasers' legal rights and claims based on QSP's status as a security.

150.    Quantstamp also failed to disclose that the Individual Defendants intended to (and did) hold substantial quantities of QSP even after the initial offerings. This omission was material to the assessment of whether and the extent to which the fortunes of QSP's promoters were linked to the success of QSP.

151.    This Count does not allege fraud. For the purposes of asserting this claim, Plaintiffs do not allege that Quantstamp acted with intentional, reckless, or otherwise fraudulent intent, except as to any statements of opinion or belief.

152.    Quantstamp directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

153.    Members of the Subclass acquired the QSP tokens pursuant to Quantstamp's offering and sale of QSP tokens. Members of the Subclass did not know, nor could they have known in the exercise of reasonable care, of the material misstatements and omissions in the prospectus before acquiring the QSP tokens or prior to April 3, 2019. Members of the Subclass sustained damages, including the substantial price decline of QSP tokens, because of the material misstatements and omissions.

154.    Accordingly, Quantstamp has violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2).

155.    Plaintiffs and Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest. *Id*. § 77m.

156.    Plaintiffs and Class members who no longer own QSP tokens seek damages for QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest. *Id.*

## THIRD CAUSE OF ACTION
## (SECURITIES ACT – ADDITIONAL LIABILITY)
### Control Person Liability for Violations of
### Sections 5, 12(a)(1), and 12(a)(2) of the Securities Act
### (Individual Defendants)

157.    Plaintiffs reallege the allegations above.

158.    This Count is asserted against the Individual Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o.

159.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful solicitation of purchases of QSP tokens and to cause the complained-of misrepresentations and omissions in the prospectus for the QSP tokens.

160.    The Individual Defendants had and have the power to direct or cause the direction of the management and policies of Quantstamp.

161.    The Individual Defendants, separately or together, have sufficient influence to have caused Quantstamp to solicit transactions of securities and to include misrepresentations and omissions in the QSP prospectus.

162.    The Individual Defendants, separately or together, jointly participated in, and/or aided and abetted, Quantstamp's solicitation of securities and inclusion of misrepresentations and omissions in the QSP prospectus.

163.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiffs and the Class for rescission and/or damages suffered for QSP tokens sold during the Class Period.

**FOURTH CAUSE OF ACTION**
**(ALABAMA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Ala. Code § 8-6-19**
**(Quantstamp)**

164.    Plaintiffs reallege the allegations above.

165.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Alabama.

166.    The Alabama Securities Act forbids the offer or sale of unregistered securities. Ala. Code § 8-6-4. Any person who offers or sells a security in violation of Section 8-6-4 is "liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition." *Id.* § 8-6-19(a).

167.    When issued, the QSP tokens were securities within the meaning of the Alabama Securities Act. *Id.* § 8-6-2. On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Alabama. The QSP tokens were neither registered under, nor subject to exemption from registration under the Alabama Securities Act. *Id.* § 8-6-10.

168.    On information and belief, the QSP tokens were offered or sold in Alabama, including without limitation through solicitations directed by Quantstamp to Alabama and received in Alabama.

169.    Accordingly, Quantstamp has violated the Alabama Securities Act through Quantstamp's sale of unregistered securities.

170.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

171.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTH CAUSE OF ACTION**
**(ALABAMA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Ala. Code § 8-6-19**
**(Individual Defendants)**

172.    Plaintiffs reallege the allegations above.

173.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Alabama.

174.    Every person who directly or indirectly controls an entity liable under the Alabama Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct" is jointly and severally liable "with and to the same extent" as the seller, unless the non-seller "is able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." Ala. Code § 8-6-19(c).

175.    When issued, the QSP tokens were securities within the meaning of the Alabama Securities Act. *Id.* § 8-6-19. On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Alabama. The QSP tokens were neither registered under, nor subject to exemption from registration under the Alabama Securities Act.

176.    On information and belief, Quantstamp offered and sold the QSP tokens in Alabama, including without limitation through solicitations directed by Quantstamp to Alabama and received in Alabama.

177.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

178.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Alabama Securities Act through Quantstamp's offer or sale of unregistered securities.

179.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

180.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTH CAUSE OF ACTION**
**(ALASKA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**AS § 45.56.710**
**(Quantstamp)**

181.    Plaintiffs reallege the allegations above.

182.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Alaska.

183.    The Alaska Securities Act forbids the sale of unregistered securities. AS §
45.56.100. Any person who sells a security in violation of Section 45.56.100 is "liable to the
purchaser," who "may maintain an action to recover the consideration paid for the security, less
the amount of any income received on the security, and interest at the legal rate of interest
under AS § 09.30.070, or eight percent a year, whichever is greater, from the date of the purchase,
costs, and attorney fees as determined by the court, upon the tender of the security, or for actual
damages," defined as "the amount that would be recoverable upon a tender less the value of the
security when the purchaser disposed of it, and interest at the legal rate of interest under
AS § 09.30.070, or eight percent a year, whichever is greater, from the date of the purchase, costs,
and attorney fees as determined by the court." *Id.* § 45.56.710.

184.    When issued, the QSP tokens were securities within the meaning of the Alaska
Securities Act. *Id.* § 45.56.900. On information and belief, Quantstamp sold the QSP tokens to
members of the Class in Alaska. The QSP tokens were neither registered under, nor subject to
exemption from registration under the Alaska Securities Act. *Id.* § 45.56.110.

185.    On information and belief, the QSP tokens were sold in Alaska, including without
limitation through solicitations directed by Quantstamp to Alaska and received in Alaska.

186.    Accordingly, Quantstamp has violated the Alaska Securities Act through
Quantstamp's sale of unregistered securities.

187.    Class members who own the QSP tokens have made or will make any necessary
tender and seek all remedies available at law or in equity for any QSP tokens purchased in the
Class Period, including any applicable costs, attorneys' fees, and interest.

188.    Class members who no longer own the QSP tokens seek damages for any QSP
tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTH CAUSE OF ACTION**
**(ALASKA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**AS § 45.56.710(g)**
**(Individual Defendants)**

189.    Plaintiffs reallege the allegations above.

190.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Alaska.

191.    Every person who "directly or indirectly controls a person liable under" the Alaska Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director of a person liable … including an individual having a similar status or performing similar functions," every "individual who is an employee of or associated with a person liable … and who materially aids the conduct giving rise to the liability," and every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability" is "jointly and severally with and to the same extent as" the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 45.56.710(g).

192.    When issued, the QSP tokens were securities within the meaning of the Alaska Securities Act. *Id.* § 45.56.900. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Alaska. The QSP tokens were neither registered under, nor subject to exemption from registration under the Alaska Securities Act.

193.    On information and belief, Quantstamp sold the QSP tokens in Alaska, including without limitation through solicitations directed by Quantstamp to Alaska and received in Alaska.

194.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

195.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Alaska Securities Act through Quantstamp's sale of unregistered securities.

196.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

197.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTH CAUSE OF ACTION
## (ARIZONA STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### A.R.S. § 44-2001
### (Quantstamp)

198.    Plaintiffs reallege the allegations above.

199.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Arizona.

200.    The Arizona Securities Act forbids the sale of unregistered securities. A.R.S. § 44-1841. Any purchase of a security in violation of Section 44-1841 is "voidable at the election of the purchaser," who "may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees,

less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities." *Id.* § 44-2001.

201.    When issued, the QSP tokens were securities within the meaning of the Arizona Securities Act. *Id.* § 1801. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Arizona. The QSP tokens were neither registered under, nor subject to exemption from registration under the Arizona Securities Act. *Id.* § 1843.

202.    On information and belief, the QSP tokens were sold in Arizona, including without limitation through solicitations directed by Quantstamp to Arizona and received in Arizona.

203.    Accordingly, Quantstamp has violated the Arizona Securities Act through Quantstamp's sale of unregistered securities.

204.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

205.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### NINTH CAUSE OF ACTION
### (ARIZONA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**A.R.S. § 44-2003**
**(Individual Defendants)**

206.    Plaintiffs reallege the allegations above.

207.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Arizona.

208.    Any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale of securities under the Arizona Securities Act "shall be jointly and

severally liable to the person who is entitled to maintain" an action under A.R.S. § 44-2001. A.R.S. § 44-2003.

209.    When issued, the QSP tokens were securities within the meaning of the Arizona Securities Act. *Id.* § 1801. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Arizona. The QSP tokens were neither registered under, nor subject to exemption from registration under the Arizona Securities Act.

210.    On information and belief, Quantstamp sold the QSP tokens in Arizona, including without limitation through solicitations directed by Quantstamp to Arizona and received in Arizona.

211.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

212.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Arizona Securities Act through Quantstamp's sale of unregistered securities.

213.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

214.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TENTH CAUSE OF ACTION
## (ARKANSAS STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer or Sale of Securities
### Ark. Stat. Ann. § 23-42-106(a)
### (Quantstamp)

215.   Plaintiffs reallege the allegations above.

216.   This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Arkansas.

217.   The Arkansas Securities Act forbids the offer or sale of unregistered securities. Ark. Code Ann. § 23-42-501. Any person who offers or sells a security in violation of Section 23-42-501 is liable to the person buying the security from him, who "may recover costs and reasonable attorney's fees plus: (A) [u]pon tender of the security, the consideration paid for the security and interest at six percent (6%) per year from the date of payment, less the amount of any income received from owning the security; or (B)(i) [d]amages if the buyer no longer owns the security." *Id.* § 23-42-106(a)(1) – (2)(B)(i). "Damages are the amount that would be recoverable upon a tender of the security less the value of the security when the buyer disposed of the security plus interest at six percent (6%) per year from the date of disposition of the security." *Id.* § 23-42-106(a)(2)(B)(ii).

218.   When issued, the QSP tokens were securities within the meaning of the Arkansas Securities Act. *Id.* § 23-42-102(17). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Arkansas. The QSP tokens were neither registered under, nor subject to exemption from registration under the Arkansas Securities Act. *Id.* § 23-42-503.

219.   On information and belief, the QSP tokens were offered or sold in Arkansas, including without limitation through solicitations directed by Quantstamp to Arkansas and received in Arkansas.

220.     Accordingly, Quantstamp has violated the Arkansas Securities Act through Quantstamp's sale of unregistered securities.

221.     Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

222.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ELEVENTH CAUSE OF ACTION**
**(ARKANSAS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Ark. Stat. Ann § 23-42-106**
**(Individual Defendants)**

223.     Plaintiffs reallege the allegations above.

224.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Arkansas.

225.     Every person who controls a person liable under the Arkansas Securities Act for unlawfully selling unregistered securities, as well as every partner, officer, or director of the seller and any other person occupying a similar status or performing a similar function with respect to the seller is jointly and severally liable for the actions of the seller, unless the non-seller satisfies the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of actions of the seller that give rise to the liability alleged to exist. *Id*. § 23-42-106(d).

226.     When issued, the QSP tokens were securities within the meaning of the Arkansas Securities Act. *Id.* § 23-42-102(17). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Arkansas. The QSP tokens were not registered under, nor subject to exemption from registration under the Arkansas Securities Act.

227.    On information and belief, Quantstamp offered and sold the QSP tokens in Arkansas, including without limitation through solicitations directed by Quantstamp to Arkansas and received in Arkansas.

228.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

229.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Arkansas Securities Act through Quantstamp's offer or sale of unregistered securities.

230.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

231.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWELFTH CAUSE OF ACTION**
**(CALIFORNIA STATE LAW – PRIMARY LIABILITY)**
**Unqualified Offer or Sale of Securities**
**Cal. Corp. Code § 25503**
**(Quantstamp)**

232.    Plaintiffs reallege the allegations above.

233.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in California.

234.    The California Corporate Securities Law of 1968 ("California Securities Act") forbids the offer or sale of unqualified securities. Cal Corp. Code §§ 25110, 25130. Any person who offers or sells a security in violation of Sections 25110 or 25130 are "liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned. Damages, if the plaintiff no longer owns the security, shall be equal to the difference between (a) his purchase price plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff." *Id.* § 25503.

235.    When issued, the QSP tokens were securities within the meaning of the California Securities Act. *Id.* § 25019. On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in California. The QSP tokens were neither qualified under, nor subject to exemption from qualification under the California Securities Act. *Id.* §§ 25110, 25130.

236.    On information and belief, the QSP tokens were offered or sold in California, including without limitation through solicitations directed by Quantstamp to California and received in California.

237.    Accordingly, Quantstamp has violated the California Securities Act through Quantstamp's sale of unqualified securities.

238.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

239.     Class members who no longer own the QSP tokens seek damages for any QSP

tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTEENTH CAUSE OF ACTION**
**(CALIFORNIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Cal. Corp. Code § 25504**
**(Individual Defendants)**

240.     Plaintiffs reallege the allegations above.

241.     This Cause of Action is brought on behalf of Class members to whom QSP tokens

were offered or sold in California.

242.     Every person who directly or indirectly controls an entity liable under the California

Securities Act for unlawfully selling unqualified securities as well as "every partner in a firm so

liable, every principal executive officer or director of a corporation so liable, every person

occupying a similar status or performing similar functions … are also liable jointly and severally

with and to the same extent as such person, unless the other person who is so liable had no

knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the

liability is alleged to exist." *Id.* § 25504.

243.     When issued, the QSP tokens were securities within the meaning of the California

Securities Act. *Id.* § 25019. On information and belief, Quantstamp offered and sold the QSP

tokens to members of the Class in California. The QSP tokens were neither qualified under, nor

subject to exemption from qualification under the California Securities Act.

244.     On information and belief, Quantstamp offered and sold the QSP tokens in

California, including without limitation through solicitations directed by Quantstamp to California

and received in California.

245.     Each of the Individual Defendants, by virtue of his offices, stock ownership,

agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unqualified securities.

246.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the California Securities Act through Quantstamp's offer or sale of unqualified securities.

247.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

248.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FOURTEENTH CAUSE OF ACTION**
**(COLORADO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Colo. Rev. Stat. § 11-51-604**
**(Quantstamp)**

249.    Plaintiffs reallege the allegations above.

250.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in the State of Colorado.

251.    The Colorado Securities Act forbids the sale of unregistered securities. Colo. Rev. Stat. § 11-51-301. Any person who sells a security in violation of Section 301 "is liable to the person buying the security from such seller for the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or is liable for damages if the buyer no longer owns the security. Damages are deemed to be the amount that

would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the statutory rate from the date of disposition." *Id.* § 11-51-604(1).

252.    When issued, QSP tokens were securities within the meaning of the Colorado Securities Act. *Id.* § 11-51-201(17). On information and belief, Quantstamp sold QSP tokens to members of the Class in the State of Colorado. The QSP tokens were neither registered under, nor subject to exemption from registration under the Colorado Securities Act. *Id.* § 11-51-301.

253.    On information and belief , QSP tokens were sold in the State of Colorado, including without limitation through solicitations directed by Quantstamp to the State of Colorado and received in the State of Colorado.

254.    Accordingly, Quantstamp has violated the Colorado Securities Act through Quantstamp's sale of unregistered securities.

255.    Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

256.    Class members who no longer own QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTEENTH CAUSE OF ACTION**
**(COLORADO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Colo. Rev. Stat. § 11-51-604**
**(Individual Defendants)**

257.    Plaintiffs reallege the allegations above.

258.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in the State of Colorado.

259.    Every person who directly or indirectly controls an entity liable under the Colorado Securities Act for unlawfully selling unregistered securities, "is liable jointly and severally with

64

and to the same extent as such controlled person, unless the controlling person sustains the burden of proof that such person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Colo. Rev. Stat. § 11-51-604(5).

260.    When issued, QSP tokens were securities within the meaning of the Colorado Securities Act. *Id.* § 11-51-201(17). On information and belief, Quantstamp sold QSP tokens to members of the Class in the State of Colorado. The QSP tokens were neither registered under, nor subject to exemption from registration under the Colorado Securities Act, and Quantstamp was not registered or exempt from registration under Colorado law. *Id.* §§ 11-51-301, 11-51-401(1).

261.    On information and belief, Quantstamp sold QSP tokens in the State of Colorado, including without limitation through solicitations directed by Quantstamp to the State of Colorado and received in the State of Colorado.

262.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

263.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Colorado Securities Act through Quantstamp's sale of unregistered securities.

264.    Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

265.    Class members who no longer own QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Conn. Gen. Stat. § 36b-29**
**(Quantstamp)**

266.    Plaintiffs reallege the allegations above.

267.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom QSP tokens were offered or sold in the State of Connecticut.

268.    The Connecticut Uniform Securities Act forbids the offer or sale of unregistered securities. Conn. Gen. Stat. § 36b-16. Any person who offers or sells a security in violation of Section 36b-16 "is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 36b-29(a).

269.    When issued, QSP tokens were securities within the meaning of the Connecticut Uniform Securities Act. *Id.* § 36b-3(19). Quantstamp offered or sold the QSP tokens to a Plaintiff and members of the Class in the State of Connecticut. The QSP tokens were neither registered under, nor subject to exemption from registration under the Connecticut Uniform Securities Act. *Id.* § 36b-16.

66

270.     The QSP tokens were offered or sold in the State of Connecticut, including without limitation through solicitations directed by Quantstamp to the State of Connecticut and received in the State of Connecticut.

271.     Accordingly, Quantstamp has violated the Connecticut Uniform Securities Act through Quantstamp's sale of unregistered securities.

272.     Plaintiffs and Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

273.     Class members who no longer own QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Conn. Gen. Stat. § 36b-29**
**(Individual Defendants)**

274.     Plaintiffs reallege the allegations above.

275.     This Cause of Action is brought on behalf of Plaintiffs and Class members to whom QSP tokens were offered or sold in the State of Connecticut.

276.     Every person who directly or indirectly controls an entity liable under the Connecticut Uniform Securities Act for unlawfully selling unregistered securities , as well as "every partner, officer or director of such a person, [and] every person occupying a similar status or performing similar functions," is jointly and severally liable "with and to the same extent" as the entity liable, unless "the person who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." Conn. Gen. Stat. § 36b-29(c).

277.    When issued, QSP tokens were securities within the meaning of the Connecticut Uniform Securities Act. *Id.* § 36b-3(19). Quantstamp offered or sold the QSP tokens to a Plaintiff and members of the Class in the State of Connecticut. The QSP tokens were neither registered under, nor subject to exemption from registration under the Connecticut Uniform Securities Act, and Quantstamp was not registered or exempt from registration under Connecticut law. *Id.* §§ 36b-16, 36b-6(a).

278.    Quantstamp offered and sold QSP tokens in the State of Connecticut, including without limitation through solicitations directed by Quantstamp to the State of Connecticut and received in the State of Connecticut.

279.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

280.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Connecticut Uniform Securities Act through Quantstamp's offer or sale of unregistered securities.

281.    Plaintiffs and Class members who own QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

282.    Class members who no longer own QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTEENTH CAUSE OF ACTION
### (DISTRICT OF COLUMBIA LAW – PRIMARY LIABILITY)
#### Unregistered Offer and Sale of Securities
#### D.C. Code Ann. § 31-5606.05
#### (Quantstamp)

283.    Plaintiffs reallege the allegations above.

284.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in the District of Columbia.

285.    The District of Columbia Securities and Investor Protection Act forbids the offer or sale of unregistered securities. D.C. Code Ann. § 31-5603.01. Any person who offers or sells a security in violation of Section 5603.01 is liable to the purchaser for "the consideration paid for the security, interest at the rate used in the Superior Court of the District of Columbia from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it" or for "damages if the buyer no longer owns the security" in the "amount that would be recoverable on a tender less the value of the security when the buyer disposed of it, plus interest at the rate used in the Superior Court of the District of Columbia from the date of disposition." *Id.* § 31.5606.05(b).

286.    When issued, the QSP tokens were securities within the meaning of the District of Columbia Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in District of Columbia. The QSP tokens were neither registered under, nor subject to exemption from registration under the District of Columbia Securities and Investor Protection Act. *Id.* § 31.5601.01(31).

287.    On information and belief, the QSP tokens were offered or sold in District of Columbia, including without limitation through solicitations directed by Quantstamp to District of Columbia and received in District of Columbia.

288.    Accordingly, Quantstamp has violated the District of Columbia Securities and Investor Protection Act through Quantstamp's sale of unregistered securities.

289.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

290.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETEENTH CAUSE OF ACTION**
**(DISTRICT OF COLUMBIA LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**D.C. Code Ann. § 31-5606.05**
**(Individual Defendants)**

291.    Plaintiffs reallege the allegations above.

292.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in District of Columbia.

293.    Every person who directly or indirectly controls an entity liable under the District of Columbia Securities Act for unlawfully selling unregistered securities, as well as "partner, officer, or director of the person liable" or "a person occupying a similar status or performing similar functions" is "liable jointly and severally with, and to the same extent as the person liable, unless her or she is able to sustain the burden of proof that he or she did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution among the several persons so liable." D.C. Code Ann. § 31-5606.05(c).

294.    When issued, the QSP tokens were securities within the meaning of the District of Columbia Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in District of Columbia. The

70

QSP tokens were neither registered under, nor subject to exemption from registration under the District of Columbia Securities and Investor Protection Act, and Quantstamp.

295.    On information and belief, Quantstamp offered and sold the QSP tokens in District of Columbia, including without limitation through solicitations directed by Quantstamp to District of Columbia and received in District of Columbia.

296.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

297.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the District of Columbia Securities and Investor Protection Act through Quantstamp's offer or sale of unregistered securities.

298.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

299.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTIETH CAUSE OF ACTION**
**(FLORIDA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Fla. Stat. § 517.211**
**(Quantstamp)**

300.    Plaintiffs reallege the allegations above.

301.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom QSP tokens were offered or sold in Florida.

302.    The Florida Securities and Investor Protection Act forbids the offer or sale of unregistered securities. Fla. Stat. § 517.07(1). Any person who offers or sells a security in violation of Section 517.07(1) is liable to the purchaser for "the consideration paid for the security or investment, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment," as well as reasonable attorneys' fees. *Id.* § 517.211.

303.    When issued, the QSP tokens were securities within the meaning of the Florida Securities and Investor Protection Act. *Id.* § 517.021(22). Quantstamp offered or sold the QSP tokens to a Plaintiff and members of the Class in Florida. The QSP tokens were neither registered under, nor subject to exemption from registration under the Florida Securities and Investor Protection Act. *Id.* §§ 517.051, 517.061.

304.    The QSP tokens were offered or sold in Florida, including without limitation through solicitations directed by Quantstamp to Florida and received in Florida.

305.    Accordingly, Quantstamp has violated the Florida Securities and Investor Protection Act through Quantstamp's sale of unregistered securities.

306.    Plaintiffs and Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

307.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FIRST CAUSE OF ACTION**
**(FLORIDA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Fla. Stat. § 517.211**
**(Individual Defendants)**

308.    Plaintiffs reallege the allegations above.

309.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom QSP tokens were offered or sold in Florida.

310.    Every person who directly or indirectly controls an entity liable under the Florida Securities and Investor Protection Act for unlawfully selling unregistered securities, as well as "every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security." *Id.* § 517.211(1).

311.    When issued, the QSP tokens were securities within the meaning of the Florida Securities and Investor Protection Act. *Id.* § 517.021(22). Quantstamp offered and sold the QSP tokens to a Plaintiff and members of the Class in Florida. The QSP tokens were neither registered under, nor subject to exemption from registration under the Florida Securities and Investor Protection Act, and Quantstamp.

312.    Quantstamp offered and sold the QSP tokens in Florida, including without limitation through solicitations directed by Quantstamp to Florida and received in Florida.

313.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

73

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

314.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Florida Securities and Investor Protection Act through Quantstamp's offer or sale of unregistered securities.

315.    Plaintiffs and Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

316.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-SECOND CAUSE OF ACTION**
**(GEORGIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ga. Code Ann. § 10-5-58**
**(Quantstamp)**

317.    Plaintiffs reallege the allegations above.

318.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Georgia.

319.    The Georgia Uniform Securities Act forbids the sale of unregistered securities. Ga. Code Ann. § 10-5-20. Any person who sells a security in violation of Section 10-5-20 is "liable to the purchaser," who may "maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorney fees determined by the Court upon the tender of the security or for actual damages." *Id.* § 10-5-58.

320.    When issued, the QSP tokens were securities within the meaning of the Georgia Uniform Securities Act. *Id.* § 10-5-2(31). On information and belief, Quantstamp sold the QSP

tokens to members of the Class in Georgia. The QSP tokens were neither registered under, nor subject to exemption from registration under the Georgia Uniform Securities Act. *Id.* § 10-5-10.

321.    On information and belief, the QSP tokens were sold in Georgia, including without limitation through solicitations directed by Quantstamp to Georgia and received in Georgia.

322.    Accordingly, Quantstamp has violated the Georgia Uniform Securities Act through Quantstamp's sale of unregistered securities.

323.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

324.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TWENTY-THIRD CAUSE OF ACTION
## (GEORGIA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### Ga. Code Ann. § 10-5-58
### (Individual Defendants)

325.    Plaintiffs reallege the allegations above.

326.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Georgia.

327.    Every person who directly or indirectly controls an entity liable under the Georgia Uniform Securities Act for unlawfully selling unregistered securities, as well as "[a]n individual who is a managing partner, executive officer, or director of a person liable" including "an individual having similar status or performing similar functions," "[a]n individual who is an employee of or associated with the person liable, and who materially aids the conduct giving rise to the liability," and "[a] person who is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and

severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." *Id.* §§ 10-5-58(g).

328. When issued, the QSP tokens were securities within the meaning of the Georgia Uniform Securities Act. *Id.* § 10-5-2(31). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Georgia. The QSP tokens were neither registered under, nor subject to exemption from registration under the Georgia Uniform Securities Act.

329. On information and belief, Quantstamp sold the QSP tokens in Georgia, including without limitation through solicitations directed by Quantstamp to Georgia and received in Georgia.

330. Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

331. Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Georgia Uniform Securities Act through Quantstamp's sale of unregistered securities.

332. Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

333.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FOURTH CAUSE OF ACTION**
**(HAWAII STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**HRS § 485A-509(d)**
**(Quantstamp)**

334.    Plaintiffs reallege the allegations above.

335.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Hawaii.

336.    The Hawaii Uniform Securities Act forbids the offer or sale of unregistered securities. HRS § 485A-301. Any person who sells a security in violation of Section 485A-301 is "liable to the purchaser … the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest, from the date of the purchase, costs, and reasonable attorney's fees determined by the court, upon the tender of the security, or for actual damages" if the purchaser no longer owns the security. *Id.* § 485A-509(b).

337.    When issued, the QSP tokens were securities within the meaning of the Hawaii Uniform Securities Act. *Id.* § 485A-102. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Hawaii. The QSP tokens were neither registered under, nor subject to exemption from registration under the Hawaii Uniform Securities Act. *Id.* § 485A-201.

338.    On information and belief, the QSP tokens were sold in Hawaii, including without limitation through solicitations directed by Quantstamp to Hawaii and received in Hawaii.

339.    Accordingly, Quantstamp has violated the Hawaii Uniform Securities Act through Quantstamp's sale of unregistered securities.

340.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

341.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FIFTH CAUSE OF ACTION**
**<u>(HAWAII STATE LAW – ADDITIONAL LIABILITY)</u>**
**Control Person Liability**
**HRS § 485A-509(g)**
**(Individual Defendants)**

342.    Plaintiffs reallege the allegations above.

343.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Hawaii.

344.    Every person who directly or indirectly controls an entity liable under the Hawaii Uniform Securities Act for unlawfully selling unregistered securities, as well as any "individual who is a managing partner, executive officer, or director of a person liable," is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. HRS § 485A-509(g).

345.    When issued, the QSP tokens were securities within the meaning of the Hawaii Uniform Securities Act. *Id.* § 485A-102. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Hawaii. The QSP tokens were neither registered under, nor subject to exemption from registration under the Hawaii Uniform Securities Act.

346.    On information and belief, Quantstamp sold the QSP tokens in Hawaii, including without limitation through solicitations directed by Quantstamp to Hawaii and received in Hawaii.

347.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

348.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Hawaii Uniform Securities Act through Quantstamp's sale of unregistered securities.

349.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

350.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### TWENTY-SIXTH CAUSE OF ACTION
### (IDAHO STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### I.C. § 30-14-509(b)
### (Quantstamp)

351.    Plaintiffs reallege the allegations above.

352.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Idaho.

353.    The Idaho Uniform Securities Act forbids the offer or sale of unregistered securities. I.C. § 30-14-301. Any person who sells a security in violation of Section 30-14-301 is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security, and interest at the annual rate of interest set forth in section 28-22-104(2),

Idaho Code, from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages as provided in subsection (b)(3) of this section. *Id.* § 30-14-509(b)(1). The annual rate of interest on judgments is "five percent (5%) plus the base rate in effect at the time of entry of the judgment. The base rate shall be determined on July 1 of each year by the Idaho state treasurer and shall be the weekly average yield on United States treasury securities as adjusted to a constant maturity of one (1) year and rounded up to the nearest one-eighth percent (1/8%)." *Id.* § 28-22-104.

354.    When issued, the QSP tokens were securities within the meaning of the Idaho Uniform Securities Act. *Id.* § 30-14-102 (28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Idaho. The QSP tokens were neither registered under, nor subject to exemption from registration under the Idaho Uniform Securities Act. *Id.* § 30-14-201.

355.    On information and belief, the QSP tokens were sold in Idaho, including without limitation through solicitations directed by Quantstamp to Idaho and received in Idaho.

356.    Accordingly, Quantstamp has violated the Idaho Uniform Securities Act through Quantstamp's sale of unregistered securities.

357.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

358.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-SEVENTH CAUSE OF ACTION**
**(IDAHO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**I.C. § 30-14-509(g)**
**(Individual Defendants)**

359.    Plaintiffs reallege the allegations above.

80

360.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Idaho.

361.    The Idaho Uniform Securities Act forbids the offer or sale of unregistered securities. I.C. § 30-14-301. Any person who sells a security in violation of Section 30-14-301 is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security, and interest at the annual rate of interest set forth in section 28-22-104(2), Idaho Code, from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages as provided in subsection (b)(3) of this section. *Id.* § 30-14-509(b)(1). The annual rate of interest on judgments is "five percent (5%) plus the base rate in effect at the time of entry of the judgment. The base rate shall be determined on July 1 of each year by the Idaho state treasurer and shall be the weekly average yield on United States treasury securities as adjusted to a constant maturity of one (1) year and rounded up to the nearest one-eighth percent (1/8%)." *Id.* § 28-22-104.

362.    When issued, the QSP tokens were securities within the meaning of the Idaho Uniform Securities Act. *Id.* § 30-14-102 (28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Idaho. The QSP tokens were neither registered under, nor subject to exemption from registration under the Idaho Uniform Securities Act. *Id.* § 30-14-201.

363.    On information and belief, the QSP tokens were sold in Idaho, including without limitation through solicitations directed by Quantstamp to Idaho and received in Idaho.

364.    Accordingly, Quantstamp has violated the Idaho Uniform Securities Act through Quantstamp's sale of unregistered securities.

365.     Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

366.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-EIGHTH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**815 Ill. Comp. Stat. Ann. 5/13**
**(Quantstamp)**

367.     Plaintiffs reallege the allegations above.

368.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Illinois.

369.     The Illinois Securities Law of 1953 forbids the sale of unregistered securities. 815 Ill. Comp. Stat. Ann. 5/5. Any person who sells a security in violation of Section 5/5 is "liable to the purchaser," who may recover "the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold," as well as "reasonable fees and expenses." *Id.* § 5/13.

370.     When issued, the QSP tokens were securities within the meaning of the Illinois Securities Law of 1953. *Id.* § 5/2.1. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Illinois. The QSP tokens were neither registered under, nor subject to exemption from registration under the Illinois Securities Law of 1953. *Id.* §§ 5/3, 5/4.

371.     On information and belief, the QSP tokens were sold in Illinois, including without limitation through solicitations directed by Quantstamp to Illinois and received in Illinois.

372.     Accordingly, Quantstamp has violated the Illinois Securities Law of 1953 through Quantstamp's sale of unregistered securities.

373.     Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Amended Complaint. Prior to filing this Amended Complaint, Plaintiffs have provided to Quantstamp, by registered or certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of the election to rescind, on behalf of the Class, the purchase of any QSP tokens held by the Class, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered or certified mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id.* 5/13(B).

374.     Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

375.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-NINTH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**815 Ill. Comp. Stat. Ann. 5/13**
**(Individual Defendants)**

376.     Plaintiffs reallege the allegations above.

377.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Illinois.

378.     Every person who directly or indirectly controls an entity liable under the Illinois Securities Law of 1953 for unlawfully selling unregistered securities, as well as every "issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser." *Id.* § 5/15(A).

379.     When issued, the QSP tokens were securities within the meaning of the Illinois Securities Law of 1953. *Id.* § 5/2.1. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Illinois. The QSP tokens were neither registered under, nor subject to exemption from registration under the Illinois Securities Law of 1953.

380.     On information and belief, Quantstamp sold the QSP tokens in Illinois, including without limitation through solicitations directed by Quantstamp to Illinois and received in Illinois.

381.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

382.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Illinois Securities Law of 1953 through Quantstamp's sale of unregistered securities.

383.    Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Amended Complaint. Prior to filing this Amended Complaint, Plaintiffs provided to the Individual Defendants, by registered or certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of the election to rescind, on behalf of the Class, the purchase of any QSP tokens held by the Class, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered or certified mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id.* 5/13(B).

384.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

385.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## THIRTIETH CAUSE OF ACTION
## (INDIANA STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### Ind. Code Ann. § 23-19-5-9
### (Quantstamp)

386. Plaintiffs reallege the allegations above.

387. This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Indiana.

388. The Indiana Uniform Securities Act forbids the offer or sale of unregistered securities. Indiana Code § 23-19-3-1. Any person who sells a security in violation of Section 23-19-3-1 is "liable to the purchaser" for "the consideration paid for the security, less the amount of any income received on the security, and interest at the greater of eight percent (8%) per annum or the rate provided for in the security from the date of the purchase, costs, and reasonable attorney's fees determined by the court or arbitrator, upon the tender of the security, or for actual damages …." *Id.* § 23-19-5-9(a).

389. When issued, the QSP tokens were securities within the meaning of the Indiana Securities Act. *Id.* § 23-19-1-2(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Indiana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Indiana Securities Act. *Id.* § 23-19-2-1

390. On information and belief, the QSP tokens were sold in Indiana, including without limitation through solicitations directed by Quantstamp to Indiana and received in Indiana.

391. Accordingly, Quantstamp has violated the Indiana Uniform Securities Act through Quantstamp's sale of unregistered securities.

392. Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

393.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-FIRST CAUSE OF ACTION**
**(INDIANA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Ind. Code Ann. § 23-19-5-9**
**(Individual Defendants)**

394.    Plaintiffs reallege the allegations above.

395.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Indiana.

396.    Every person who directly or indirectly controls an entity liable under the Indiana Uniform Securities Act for unlawfully selling unregistered securities, as well as "individual who is a managing partner, executive officer, or director of a person liable," is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist Indiana Code § 23-19-5-9(d).

397.    When issued, the QSP tokens were securities within the meaning of the Indiana Securities Act. *Id.* § 23-19-1-2(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Indiana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Indiana Securities Act.

398.    On information and belief, Quantstamp sold the QSP tokens in Indiana, including without limitation through solicitations directed by Quantstamp to Indiana and received in Indiana.

399.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

400.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Indiana Uniform Securities Act through Quantstamp's sale of unregistered securities.

401.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

402.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-SECOND CAUSE OF ACTION**
**(IOWA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**I.C.A. § 502.509(2)**
**(Quantstamp)**

403.    Plaintiffs reallege the allegations above.

404.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Iowa.

405.    The Iowa Uniform Securities Act forbids the offer or sale of unregistered securities. I.C.A. § 502.301. Any person who sells a security in violation of Section 502.301 is "liable to the purchaser" for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages…." *Id.* § 502.509(2).

406.    When issued, the QSP tokens were securities within the meaning of the Iowa Securities Act. *Id.* § 502.102(28). On information and belief, Quantstamp sold the QSP tokens to

members of the Class in Iowa. The QSP tokens were neither registered under, nor subject to exemption from registration under the Iowa Securities Act. *Id.* § 502.201.

407.    On information and belief, the QSP tokens were sold in Iowa, including without limitation through solicitations directed by Quantstamp to Iowa and received in Iowa.

408.    Accordingly, Quantstamp has violated the Iowa Uniform Securities Act through Quantstamp's sale of unregistered securities.

409.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

410.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### THIRTY-THIRD CAUSE OF ACTION
### (IOWA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### I.C.A. § 502.509(7)
### (Individual Defendants)

411.    Plaintiffs reallege the allegations above.

412.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Iowa.

413.    Every person who directly or indirectly controls an entity liable under the Iowa Uniform Securities Act for unlawfully selling unregistered securities, as well as "managing partner, executive officer, or director of a person liable … including an individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. I.C.A. § 502.509(7)

414.    When issued, the QSP tokens were securities within the meaning of the Iowa Securities Act. *Id.* § 502.102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Iowa. The QSP tokens were neither registered under, nor subject to exemption from registration under the Iowa Securities Act.

415.    On information and belief, Quantstamp sold the QSP tokens in Iowa, including without limitation through solicitations directed by Quantstamp to Iowa and received in Iowa.

416.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

417.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Iowa Uniform Securities Act through Quantstamp's sale of unregistered securities.

418.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

419.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-FOURTH CAUSE OF ACTION**
**(KANSAS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Kan. Stat. Ann. § 17-12a509**
**(Quantstamp)**

420.    Plaintiffs reallege the allegations above.

421.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Kansas.

422.    The Kansas Uniform Securities Act forbids the offer or sale of unregistered securities. Kan. Stat. Ann. § 17-12a301. Any person who sells a security in violation of Section 17-12a301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court, upon the tender of the security," or if the purchaser no longer owns the security, "[a]ctual damages" in "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court." *Id.* § 17-12a509(b).

423.    When issued, the QSP tokens were securities within the meaning of the Kansas Uniform Securities Act. *Id.* § 17-12a102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Kansas. The QSP tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act. *Id.* § 17-12a301.

424.    On information and belief, the QSP tokens were sold in Kansas, including without limitation through solicitations directed by Quantstamp to Kansas and received in Kansas.

425.    Accordingly, Quantstamp has violated the Kansas Uniform Securities Act through Quantstamp's sale of unregistered securities.

426.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

427.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-FIFTH CAUSE OF ACTION**
**(KANSAS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Kan. Stat. Ann. § 17-12a509**
**(Individual Defendants)**

428.    Plaintiffs reallege the allegations above.

429.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Kansas.

430.    Every person who directly or indirectly controls an entity liable under the Kansas Uniform Securities Act for unlawfully selling unregistered securities, as well as any "individual who is a managing partner, executive officer, or director" of such an entity, "including an individual having a similar status or performing similar functions," and any "individual who is an employee of or associated with" such an entity "and who materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless the individual "sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Kan. Stat. Ann. § 17-12a509(g).

431.    When issued, the QSP tokens were securities within the meaning of the Kansas Uniform Securities Act. *Id.* § 17-12a102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Kansas. The QSP tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act.

432.    On information and belief, Quantstamp sold the QSP tokens in Kansas, including without limitation through solicitations directed by Quantstamp to Kansas and received in Kansas.

433.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

434.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Kansas Uniform Securities Act through Quantstamp's sale of unregistered securities.

435.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

436.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-SIXTH CAUSE OF ACTION**
**(KENTUCKY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Ky. Rev. Stat. Ann. § 292.480**
**(Quantstamp)**

437.    Plaintiffs reallege the allegations above.

438.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Kentucky.

439.    The Securities Act of Kentucky forbids the offer or sale of unregistered securities. Ky. Rev. Stat. Ann. § 292.340. Any person who offers or sells a security in violation of Section

292.340 is "liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security," or if the purchaser no longer owns the security, for damages in the "amount that would be recoverable upon a tender less … [t]he value of the security when the buyer is disposed of it; and … [i]nterest at the legal rate per annum from the date of disposition." *Id.* § 292.480(1).

440.    When issued, the QSP tokens were securities within the meaning of the Securities Act of Kentucky. *Id.* § 292.310(19). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Kentucky. The QSP tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky. *Id.* § 292.340.

441.    On information and belief, the QSP tokens were offered or sold in Kentucky, including without limitation through solicitations directed by Quantstamp to Kentucky and received in Kentucky.

442.    Accordingly, Quantstamp has violated the Securities Act of Kentucky through Quantstamp's offer and sale of unregistered securities.

443.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

444.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-SEVENTH CAUSE OF ACTION**
**(KENTUCKY STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Ky. Rev. Stat. Ann. § 292.480**

**(Individual Defendants)**

445.    Plaintiffs reallege the allegations above.

446.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Kentucky.

447.    Every person who directly or indirectly controls an entity liable under the Securities Act of Kentucky for unlawfully offering or selling unregistered securities, as well as "every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Ky. Rev. Stat. Ann. § 292.480(4).

448.    When issued, the QSP tokens were securities within the meaning of the Securities Act of Kentucky. *Id.* § 292.310(19). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Kentucky. The QSP tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky.

449.    On information and belief, Quantstamp offered and sold the QSP tokens in Kentucky, including without limitation through solicitations directed by Quantstamp to Kentucky and received in Kentucky.

450.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

451.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Securities Act of Kentucky through Quantstamp's offer or sale of unregistered securities.

452.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

453.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-EIGHTH CAUSE OF ACTION**
**(LOUISIANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**La. Stat. Ann. § 51:714**
**(Quantstamp)**

454.    Plaintiffs reallege the allegations above.

455.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Louisiana.

456.    The Louisiana Securities Law forbids the offer or sale of unregistered securities. La. Stat. Ann. § 51:705. Any person who offers or sells a security in violation of Section 51:705 is "liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment … less the amount of any income received thereon, together with all taxable court costs and reasonable attorneys' fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security"

in the amount "which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment." *Id.* §§ 51:714(A); 51:712(A)(1).

457.    When issued, the QSP tokens were securities within the meaning of the Louisiana Securities Law. *Id.* § 51:702(15)(b). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Louisiana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law. *Id.* § 51:705.

458.    On information and belief, the QSP tokens were offered or sold in Louisiana, including without limitation through solicitations directed by Quantstamp to Louisiana and received in Louisiana.

459.    Accordingly, Quantstamp has violated the Louisiana Securities Law through Quantstamp's offer and sale of unregistered securities.

460.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

461.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### THIRTY-NINTH CAUSE OF ACTION
### (LOUISIANA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**La. Stat. Ann. § 51:714**
**(Individual Defendants)**

462.    Plaintiffs reallege the allegations above.

463.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Louisiana.

464.    Every person who directly or indirectly controls an entity liable under the Louisiana Securities Act for unlawfully offering or selling unregistered securities, as well as "every general partner, executive officer, or director of such [entity], every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the [entity] unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist." La. Stat. Ann. § 51:714(B).

465.    When issued, the QSP tokens were securities within the meaning of the Louisiana Securities Law. *Id.* § 51:702(15)(b). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Louisiana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law.

466.    On information and belief, Quantstamp offered and sold the QSP tokens in Louisiana, including without limitation through solicitations directed by Quantstamp to Louisiana and received in Louisiana.

467.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

468.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Louisiana Securities Law through Quantstamp's offer or sale of unregistered securities.

469.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

470.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTIETH CAUSE OF ACTION**
**(MAINE STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Me. Rev. Stat. tit. 32, § 16509**
**(Quantstamp)**

471.    Plaintiffs reallege the allegations above.

472.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Maine.

473.    The Maine Uniform Securities Act forbids the offer or sale of unregistered securities. Me. Rev. Stat. tit. 32, § 16301. Any person who sells a security in violation of Section 16301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and the interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and the interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court." *Id.* § 16509(2).

474.    When issued, the QSP tokens were securities within the meaning of the Maine Uniform Securities Act. *Id.* § 16102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Maine. The QSP tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act. *Id.* § 16301.

475.    On information and belief, the QSP tokens were sold in Maine, including without limitation through solicitations directed by Quantstamp to Maine and received in Maine.

476.    Accordingly, Quantstamp has violated the Maine Uniform Securities Act through Quantstamp's sale of unregistered securities.

477.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

478.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FORTY-FIRST CAUSE OF ACTION
### (MAINE STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Me. Rev. Stat. tit. 32, § 16509**
**(Individual Defendants)**

479.    Plaintiffs reallege the allegations above.

480.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Maine.

481.    Every person who directly or indirectly controls an entity liable under the Maine Uniform Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer or director" of such an entity, "including an individual having a similar status or performing similar functions," any "individual who is an employee of or associated with" such an entity "and who materially aids the conduct giving rise to the liability," and any "broker-

100

dealer, agent, investment adviser or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless the individual sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Me. Rev. Stat. tit. 32, § 16509(7).

482.    When issued, the QSP tokens were securities within the meaning of the Maine Uniform Securities Act. *Id.* § 16102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Maine. The QSP tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act.

483.    On information and belief, Quantstamp sold the QSP tokens in Maine, including without limitation through solicitations directed by Quantstamp to Maine and received in Maine.

484.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

485.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Maine Uniform Securities Act through Quantstamp's sale of unregistered securities

486.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

487.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-SECOND CAUSE OF ACTION**
**(MARYLAND STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Md. Code Ann., Corps. & Ass'ns § 11-703**
**(Quantstamp)**

488.    Plaintiffs reallege the allegations above.

489.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Maryland.

490.    The Maryland Securities Act forbids the offer or sale of unregistered securities. Md. Code Ann., Corps. & Ass'ns § 11-501. Any person who offers or sells a security in violation of Section 501 is "civilly liable to the person buying a security from him," who "may sue either at law or in equity … [o]n tender of the security, to recover the consideration paid for the security, together with interest at the rate provided for in § 11-107(a) of the [Maryland] Courts and Judicial Proceedings Article, as amended, from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security; or … [i]f he no longer owns the security, for damages" in "the amount that would be recoverable on a tender less the value of the security when the buyer disposed of it and interest at the rate provided for in § 11-107(a) of the Courts and Judicial Proceedings Article, as amended, from the date of disposition." *Id.* § 11-703(a)(1)(i), (b)(1), (b)(3).

491.    When issued, the QSP tokens were securities within the meaning of the Maryland Securities Act. *Id.* § 11-101(s)(1). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Maryland. The QSP tokens were neither registered under, nor subject to exemption from registration under the Maryland Securities Act. *Id.* § 11-501.

492.    On information and belief, the QSP tokens were offered or sold in Maryland, including without limitation through solicitations directed by Quantstamp to Maryland and received in Maryland.

493.    Accordingly, Quantstamp has violated the Maryland Securities Act through Quantstamp's offer and sale of unregistered securities.

494.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

495.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FORTY-THIRD CAUSE OF ACTION
### (MARYLAND STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### Md. Code Ann., Corps. & Ass'ns § 11-703
### (Individual Defendants)

496.    Plaintiffs reallege the allegations above.

497.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Maryland.

498.    Every person who directly or indirectly controls an entity liable under the Maryland Securities Act for unlawfully offering or selling unregistered securities, as well as "every person occupying a similar status or performing similar functions, every employee of the [entity] who materially aids in the conduct giving rise to the liability, and every broker-dealer or agent who materially aids in such conduct are also liable jointly and severally with and to the same extent as the [entity], unless able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 11-703(c)(1).

499.    When issued, the QSP tokens were securities within the meaning of the Maryland Securities Act. *Id.* § 11-101(s)(1). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Maryland. The QSP tokens were neither registered under, nor subject to exemption from registration under the Maryland Securities Act.

500.    On information and belief, Quantstamp offered and sold the QSP tokens in Maryland, including without limitation through solicitations directed by Quantstamp to Maryland and received in Maryland.

501.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

502.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Maryland Securities Act through Quantstamp's offer or sale of unregistered securities.

503.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

504.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-FOURTH CAUSE OF ACTION**
**(MASSACHUSETTS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Mass. Gen. Laws Ann. ch. 110A, § 410(a)**
**(Quantstamp)**

505.    Plaintiffs reallege the allegations above.

506.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Massachusetts.

507.    The Massachusetts Securities Act forbids the offer or sale of unregistered securities. Mass. Gen. Laws Ann. ch. 110A, § 301. Any person who offers or sells a security in violation of Section 301 is "is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 410(a).

508.    When issued, the QSP tokens were securities within the meaning of the Massachusetts Securities Act. *Id.* § 401(f). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Massachusetts. The QSP tokens were neither registered under, nor subject to exemption from registration under the Massachusetts Securities Act. *Id.* § 402.

509.    On information and belief, the QSP tokens were offered or sold in Massachusetts, including without limitation through solicitations directed by Quantstamp to Massachusetts and received in Massachusetts.

510.    Accordingly, Quantstamp has violated the Massachusetts Securities Act through Quantstamp's sale of unregistered securities.

511.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

512.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-FIFTH CAUSE OF ACTION**
**<u>(MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY)</u>**
**Control Person Liability**
**Mass. Gen. Laws Ann. ch. 110A, § 410(b)**
**(Individual Defendants)**

513.    Plaintiffs reallege the allegations above.

514.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Massachusetts.

515.    Every person who directly or indirectly controls an entity liable under the Massachusetts Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Mass. Gen. Laws Ann. ch. 110A, §410(b).

516.    When issued, the QSP tokens were securities within the meaning of the Massachusetts Securities Act. *Id.* § 401(f). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Massachusetts. The QSP tokens were not registered under, nor subject to exemption from registration under the Massachusetts Securities Act.

106

517.    On information and belief, Quantstamp offered and sold the QSP tokens in Massachusetts, including without limitation through solicitations directed by Quantstamp to Massachusetts and received in Massachusetts.

518.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

519.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Massachusetts Securities Act through Quantstamp's offer or sale of unregistered securities.

520.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

521.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FORTY-SIXTH CAUSE OF ACTION
### (MICHIGAN STATE LAW – PRIMARY LIABILITY)
#### Unregistered Sale of Securities
#### Mich. Comp. Laws Ann. § 451.2509
#### (Quantstamp)

522.    Plaintiffs reallege the allegations above.

523.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Michigan.

524.    The Michigan Securities Act forbids the offer or sale of unregistered securities. Mich. Comp. Laws Ann. § 451.2301. Any person who sells a security in violation of Section 451.2301 is "liable to the purchaser" who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at 6% per year from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security," or for "actual damages" if the purchaser no longer owns the security. *Id.* § 451.2509.

525.    When issued, the QSP tokens were securities within the meaning of the Michigan Securities Act. *Id.* § 451.2102c. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Michigan. The QSP tokens were neither registered under, nor subject to exemption from registration under the Michigan Securities Act. *Id.* § 451.2201.

526.    On information and belief, the QSP tokens were sold in Michigan, including without limitation through solicitations directed by Quantstamp to Michigan and received in Michigan.

527.    Accordingly, Quantstamp has violated the Michigan Securities Act through Quantstamp's sale of unregistered securities.

528.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

529.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-SEVENTH CAUSE OF ACTION**
**(MICHIGAN STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mich. Comp. Laws Ann. § 451.2509**
**(Individual Defendants)**

530.    Plaintiffs reallege the allegations above.

531.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Michigan.

532.    Every person who directly or indirectly controls an entity liable under the Michigan Securities Act for unlawfully selling unregistered securities, as well as an "individual who is a managing partner, executive officer, or director" of a person liable … including each individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Mich. Comp. Laws Ann. § 451.2509(7).

533.    When issued, the QSP tokens were securities within the meaning of the Michigan Securities Act. *Id.* § 451.2102c. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Michigan. The QSP tokens were neither registered under, nor subject to exemption from registration under the Michigan Securities Act, *id.* § 451.2201.

534.    On information and belief, Quantstamp sold the QSP tokens in Michigan, including without limitation through solicitations directed by Quantstamp to Michigan and received in Michigan.

535.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

536.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Michigan Securities Act through Quantstamp's sale of unregistered securities.

537.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

538.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-EIGHTH CAUSE OF ACTION**
**(MINNESOTA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Minnesota Statutes § 80A.76(b)**
**(Quantstamp)**

539.    Plaintiffs reallege the allegations above.

540.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Minnesota.

541.    The Minnesota Securities Act forbids the offer or sale of unregistered securities. Minnesota Statutes § 80A.49(c). Any person who sells a security in violation of Section 80A.49(c) is "liable to the purchaser" for "consideration paid for the security, less the amount of any income received on the security, and interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 80A.76(b).

542.    When issued, the QSP tokens were securities within the meaning of the Minnesota Securities Act. *Id.* § 80A.41(30). On information and belief, Quantstamp sold the QSP tokens to

members of the Class in Minnesota. The QSP tokens were neither registered under, nor subject to exemption from registration under the Minnesota Securities Act. *Id.* § 80A.45.

543.    On information and belief, the QSP tokens were sold in Minnesota, including without limitation through solicitations directed by Quantstamp to Minnesota and received in Minnesota.

544.    Accordingly, Quantstamp has violated the Minnesota Securities Act through Quantstamp's sale of unregistered securities.

545.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

546.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-NINTH CAUSE OF ACTION**
**(MINNESOTA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Minnesota Statutes § 80A.76(g)**
**(Individual Defendants)**

547.    Plaintiffs reallege the allegations above.

548.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Minnesota.

549.    Every person who directly or indirectly controls an entity liable under the Minnesota Securities Act for unlawfully selling unregistered securities, as well as "managing partner, executive officer, or director of a person liable … including an individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the

exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 80A.76(g).

550.    When issued, the QSP tokens were securities within the meaning of the Minnesota Securities Act. *Id.* § 80A.41(30). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Minnesota. The QSP tokens were neither registered under, nor subject to exemption from registration under the Minnesota Securities Act.

551.    On information and belief, Quantstamp sold the QSP tokens in Minnesota, including without limitation through solicitations directed by Quantstamp to Minnesota and received in Minnesota.

552.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

553.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Minnesota Securities Act through Quantstamp's sale of unregistered securities.

554.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

555.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTIETH CAUSE OF ACTION**
**(MISSISSIPPI STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Miss. Code Ann. § 75-71-509(b)**
**(Quantstamp)**

556. Plaintiffs reallege the allegations above.

557. This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Mississippi.

558. The Mississippi Securities Act forbids the offer or sale of unregistered securities. Miss. Code Ann. § 75-71-301. "A person is liable to the purchaser if the person sells a security in violation of Section 75-71-301." *Id.* § 75-71-509(b). Such purchaser "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney's fees determined by the court, upon the tender of the security, or," *id.* § 75-71-509(b)(1), "[a]ctual damages … [in] the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney's fees determined by the court," *id.* § 75-71-509(b)(3).

559. When issued, the QSP tokens were securities within the meaning of the Mississippi Securities Act. *Id.* § 75-71-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Mississippi. The QSP tokens were neither registered under, nor subject to exemption from registration under the Mississippi Securities Act. *Id.* § 75-71-301.

560. On information and belief, the QSP tokens were sold in Mississippi, including without limitation through solicitations directed by Quantstamp to Mississippi and received in Mississippi.

561. Accordingly, Quantstamp has violated the Mississippi Securities Act through Quantstamp's sale of unregistered securities.

562.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

563.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-FIRST CAUSE OF ACTION**
**(MISSISSIPPI STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Miss. Code Ann. § 75-71-509(g)**
**(Individual Defendants)**

564.    Plaintiffs reallege the allegations above.

565.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Mississippi.

566.    Every person who directly or indirectly controls an entity liable under the Mississippi Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer, or director of" such entity, and every person who was "an employee of or associated with" such entity "who materially aid[ed] the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. Miss. Code Ann. § 75-71-509(g).

567.    When issued, the QSP tokens were securities within the meaning of the Mississippi Securities Act. *Id.* § 75-71-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Mississippi. The QSP tokens were neither registered under, nor subject to exemption from registration under the Mississippi Securities Act.

568.     On information and belief, Quantstamp sold the QSP tokens in Mississippi, including without limitation through solicitations directed by Quantstamp to Mississippi and received in Mississippi.

569.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

570.     Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Mississippi Securities Act through Quantstamp's sale of unregistered securities.

571.     Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

572.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FIFTY-SECOND CAUSE OF ACTION
### (MISSISSIPPI STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### Mo. Rev. Stat. § 409.5-509(b)
### (Quantstamp)

573.     Plaintiffs reallege the allegations above.

574.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Missouri.

575.    The Missouri Securities Act forbids the offer or sale of unregistered securities. Mo. Rev. Stat. § 409.3-301. "A person is liable to the purchaser if the person sells a security in violation of section 409.3-301," and such purchaser "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the rate of eight percent per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or," *id.* § 409.5-509(b)(1), "[a]ctual damages … [in] the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the rate of eight percent per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court," *id.* § 409.5-509(b)(3).

576.    When issued, the QSP tokens were securities within the meaning of the Missouri Securities Act. *Id.* § 409.1-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Missouri. The QSP tokens were neither registered under, nor subject to exemption from registration under the Missouri Securities Act. *Id.* § 409.3-301.

577.    On information and belief, the QSP tokens were sold in Missouri, including without limitation through solicitations directed by Quantstamp to Missouri and received in Missouri.

578.    Accordingly, Quantstamp has violated the Missouri Securities Act through Quantstamp's sale of unregistered securities.

579.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

580.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-THIRD CAUSE OF ACTION**
**(MISSOURI STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mo. Rev. Stat. § 409.5-509(g)**
**(Individual Defendants)**

581.    Plaintiffs reallege the allegations above.

582.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Missouri.

583.    Every person who directly or indirectly controls an entity liable under the Missouri Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer, or director of" such entity, and every person who was "an employee of or associated with" such entity "who materially aid[ed] the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. Mo. Rev. Stat. § 409.5-509(g).

584.    When issued, the QSP tokens were securities within the meaning of the Missouri Securities Act. *Id.* § 409.1-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Missouri. The QSP tokens were neither registered under, nor subject to exemption from registration under the Missouri Securities Act.

585.    On information and belief, Quantstamp sold the QSP tokens in Missouri, including without limitation through solicitations directed by Quantstamp to Missouri and received in Missouri.

586.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

587.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Missouri Securities Act through Quantstamp's sale of unregistered securities.

588.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

589.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-FOURTH CAUSE OF ACTION**
**(MONTANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Mont. Code Ann. § 30-10-307(1)**
**(Quantstamp)**

590.    Plaintiffs reallege the allegations above.

591.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Montana.

592.    The Montana Securities Act forbids the offer or sale of unregistered securities. Mont. Code Ann. § 30-10-202. "Any person who offers or sells a security in violation of 30-10-202 … is liable to the person buying the security from the offeror or seller, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 10% a year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the buyer no longer owns the security" in "the amount that would be recoverable upon a tender less: (a) the value of

the security when the buyer disposed of it; and (b) interest at 10% a year from the date of disposition." *Id.* § 30-10-307(1).

593.    When issued, the QSP tokens were securities within the meaning of the Montana Securities Act. *Id.* § 30-10-103(24). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Montana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Montana Securities Act. *Id.* § 30-10-202.

594.    On information and belief, the QSP tokens were offered or sold in Montana, including without limitation through solicitations directed by Quantstamp to Montana and received in Montana.

595.    Accordingly, Quantstamp has violated the Montana Securities Act through Quantstamp's sale of unregistered securities.

596.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

597.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FIFTY-FIFTH CAUSE OF ACTION
### (MONTANA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Mont. Code Ann. § 30-10-307(2)**
**(Individual Defendants)**

598.    Plaintiffs reallege the allegations above.

599.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Montana.

600.    "Every person who directly or indirectly controls a seller liable under subsection (1), every partner, officer, or director (or person occupying a similar status or performing similar

119

functions) or employee of the seller, and every broker-dealer or salesperson who participates or materially aids in the sale is liable jointly and severally with and to the same extent as the seller if the nonseller knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which the liability is alleged to exist." Mont. Code Ann. § 30-10-307(2).

601.    When issued, the QSP tokens were securities within the meaning of the Montana Securities Act. *Id.* § 30-10-103(24). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Montana. The QSP tokens were neither registered under, nor subject to exemption from registration under the Montana Securities Act. *Id.* § 30-10-202.

602.    On information and belief, Quantstamp offered or sold the QSP tokens in Montana, including without limitation through solicitations directed by Quantstamp to Montana and received in Montana.

603.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers and sales of unregistered securities.

604.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Montana Securities Act through Quantstamp's offer and sale of unregistered securities.

605.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

606.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-SIXTH CAUSE OF ACTION**
**(NEBRASKA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Neb. Rev. Stat. § 8-1118(1)**
**(Quantstamp)**

607.    Plaintiffs reallege the allegations above.

608.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Nebraska.

609.    The Nebraska Securities Act forbids the offer or sale of unregistered securities. Neb. Rev. Stat. § 8-1104. Any person who offers or sells a security in violation of section 8-1104 … shall be liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per annum from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security" in "the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at six percent per annum from the date of disposition." *Id.* § 8-1118(1).

610.    When issued, the QSP tokens were securities within the meaning of the Nebraska Securities Act. *Id.* § 8-1101(15). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Nebraska. The QSP tokens were neither registered under, nor subject to exemption from registration under the Nebraska Securities Act. *Id.* § 8-1104.

611.    On information and belief, the QSP tokens were offered or sold in Nebraska, including without limitation through solicitations directed by Quantstamp to Nebraska and received in Nebraska.

612.    Accordingly, Quantstamp has violated the Nebraska Securities Act through Quantstamp's sale of unregistered securities.

613.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

614.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-SEVENTH CAUSE OF ACTION**
**(NEBRASKA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Neb. Rev. Stat. § 8-1118(3)**
**(Individual Defendants)**

615.    Plaintiffs reallege the allegations above.

616.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Nebraska.

617.    "Every person who directly or indirectly controls a person liable under subsections (1) … of this section, including every partner, limited liability company member, officer, director, or person occupying a similar status or performing similar functions of a partner, limited liability company member, officer, or director, or employee of such person who materially aids in the conduct giving rise to liability, and every broker-dealer, issuer-dealer, agent, investment adviser, or investment adviser representative who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Neb. Rev. Stat. § 8-1118(3).

618.    When issued, the QSP tokens were securities within the meaning of the Nebraska Securities Act. *Id.* § 8-1101(15). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Nebraska. The QSP tokens were neither registered under, nor subject to exemption from registration under the Nebraska Securities Act. *Id.* § 8-1104.

619.    On information and belief, Quantstamp offered or sold the QSP tokens in Nebraska, including without limitation through solicitations directed by Quantstamp to Nebraska and received in Nebraska.

620.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers and sales of unregistered securities.

621.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Nebraska Securities Act through Quantstamp's offer and sale of unregistered securities.

622.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

623.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-EIGHTH CAUSE OF ACTION**
**(NEVADA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Nev. Stat. § 90.660(1)(b)**
**(Quantstamp)**

624.     Plaintiffs reallege the allegations above.

625.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Nevada.

626.     The Nevada Securities Act forbids the offer or sale of unregistered securities. Nev. Stat. § 90.460. "A person who offers or sells a security in violation of" Neb. Rev. Stat. § 90.460 "is liable to the person purchasing the security." *Id.* § 90.660. "Upon tender of the security, the purchaser may recover the consideration paid for the security and interest at the legal rate of [Nevada] from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security. A purchaser who no longer owns the security may recover damages" in "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal rate of [Nevada] from the date of disposition of the security, costs and reasonable attorney's fees determined by the court." *Id.*

627.     When issued, the QSP tokens were securities within the meaning of the Nevada Securities Act. *Id.* § 90.295. Quantstamp offered or sold the QSP tokens to a Plaintiff and member of the Class in Nevada. The QSP tokens were neither registered under, nor subject to exemption from registration under the Nevada Securities Act. *Id.* § 90.460.

628.     The QSP tokens were offered or sold in Nevada, including without limitation through solicitations directed by Quantstamp to Nevada and received in Nevada.

629.     Accordingly, Quantstamp has violated the Nevada Securities Act through Quantstamp's sale of unregistered securities.

630.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

631.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## FIFTY-NINTH CAUSE OF ACTION
## (NEVADA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### Nev. Stat. § 90.660(4)
### (Individual Defendants)

632.    Plaintiffs reallege the allegations above.

633.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Nevada.

634.    Every person who directly or indirectly controls an entity liable under the Nevada Securities Act for unlawfully selling unregistered securities, as well as any "partner, officer or director of the [entity] liable, a person occupying a similar status or performing similar functions, any agent of the [entity] liable, an employee of the [entity] liable if the employee materially aids in the act, omission or transaction constituting the violation," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by which the liability is alleged to exist. Nev. Stat. § 90.660(4).

635.    When issued, the QSP tokens were securities within the meaning of the Nevada Securities Act. *Id.* § 90.295. Quantstamp offered or sold the QSP tokens to a Plaintiffs in Nevada. The QSP tokens were neither registered under, nor subject to exemption from registration under the Nevada Securities Act.

636.    Quantstamp offered or sold the QSP tokens in Nevada, including without limitation through solicitations directed by Quantstamp to Nevada and received in Nevada.

637.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

638.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Nevada Securities Act through Quantstamp's offer or sale of unregistered securities.

639.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

640.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTIETH CAUSE OF ACTION
### (NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### N.H. Rev. Stat. § 421-B:5-509(b)
### (Quantstamp)

641.    Plaintiffs reallege the allegations above.

642.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in New Hampshire.

643.    The New Hampshire Uniform Securities Act forbids the offer or sale of unregistered securities. N.H. Rev. Stat. § 421-B:3-301. Any person who sells a security in violation

of Section 421-B:3-301 is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages as provided in subsection (b)(3)." *Id.* § 421-B:5-509(b)(1). The annual rate of interest on judgments is "a rate determined by the state treasurer as the prevailing discount rate of interest on 26-week United States Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points, rounded to the nearest tenth of a percentage point." *Id.* § 336-1 II.

644.    When issued, the QSP tokens were securities within the meaning of the New Hampshire Uniform Securities Act. *Id.* § 421-B:1-102(53)(A). On information and belief, Quantstamp sold the QSP tokens to members of the Class in New Hampshire. The QSP tokens were neither registered under, nor subject to exemption from registration under the New Hampshire Uniform Securities Act. *Id.* § 421-B:2-201.

645.    On information and belief, the QSP tokens were sold in New Hampshire, including without limitation through solicitations directed by Quantstamp to New Hampshire and received in New Hampshire.

646.    Accordingly, Quantstamp has violated the New Hampshire Uniform Securities Act through Quantstamp's sale of unregistered securities.

647.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

648.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-FIRST CAUSE OF ACTION**
**(NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.H. Rev. Stat. § 421-B:5-509(g)**
**(Individual Defendants)**

649.    Plaintiffs reallege the allegations above.

650.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in New Hampshire.

651.    Every person who directly or indirectly controls an entity liable under the New Hampshire Uniform Securities Act for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer, or director of a person liable under subsections (b) through (f), including an individual having a similar status or performing similar functions" is liable jointly and severally with and to the same extent as the seller, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist. N.H. Rev. Stat. § 421-B:5-509(g).

652.    When issued, the QSP tokens were securities within the meaning of the New Hampshire Uniform Securities Act. *Id.* § 421-B:1-102(53)(A). On information and belief, Quantstamp sold the QSP tokens to members of the Class in New Hampshire. *Id.* §§ 421-B:1-102(3), 421-B:1-102(6). The QSP tokens were neither registered under, nor subject to exemption from registration under the New Hampshire Uniform Securities Act.

653.    On information and belief, Quantstamp sold the QSP tokens in New Hampshire, including without limitation through solicitations directed by Quantstamp to New Hampshire and received in New Hampshire.

654.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

655.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the New Hampshire Uniform Securities Act through Quantstamp's sale of unregistered securities.

656.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

657.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-SECOND CAUSE OF ACTION**
**(NEW JERSEY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**N.J. Stat. Ann. § 49:3-71(a)(c)**
**(Quantstamp)**

658.    Plaintiffs reallege the allegations above.

659.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in New Jersey.

660.    The New Jersey Uniform Securities Act forbids the offer or sale of unregistered securities. NJ Stat. Ann. § 49:3-60(e). Any person who offers or sells a security in violation of Section 49:3-60 is "liable for the consideration paid for the security or the investment advice and any loss due to the advice, together with interest set at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of payment of the consideration for the investment advice or security, and costs, less the amount of

any income received on the security, upon the tender of the security and any income received from the investment advice or on the security, or for damages if he no longer owns the security." *Id.* § 49:3-71(c).

661.    When issued, the QSP tokens were securities within the meaning of the New Jersey Securities Act. *Id.* § 49:3-49(m). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in New Jersey. The QSP tokens were neither registered under, nor subject to exemption from registration under the New Jersey Securities Act. *Id.* § 49:3-50.

662.    On information and belief, the QSP tokens were offered or sold in New Jersey, including without limitation through solicitations directed by Quantstamp to New Jersey and received in New Jersey.

663.    Accordingly, Quantstamp has violated the New Jersey Uniform Securities Act through Quantstamp's sale of unregistered securities.

664.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

665.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-THIRD CAUSE OF ACTION
### (NEW JERSEY STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**N.J. Stat. Ann. § 49:3-71**
**(Individual Defendants)**

666.    Plaintiffs reallege the allegations above.

667.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in New Jersey.

668.    Every person who directly or indirectly controls an entity liable under the New Jersey Uniform Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller, or investment adviser, every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 49:3-71(d).

669.    When issued, the QSP tokens were securities within the meaning of the New Jersey Securities Act. *Id.* § 49:3-49(m). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in New Jersey. The QSP tokens were neither registered under, nor subject to exemption from registration under the New Jersey Securities Act.

670.    On information and belief, Quantstamp offered and sold the QSP tokens in New Jersey, including without limitation through solicitations directed by Quantstamp to New Jersey and received in New Jersey.

671.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

672.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the New Jersey Uniform Securities Act through Quantstamp's offer or sale of unregistered securities.

673.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

674.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-FOURTH CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**N.M. Stat. Ann. § 58-13C-509**
**(Quantstamp)**

675.    Plaintiffs reallege the allegations above.

676.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in New Mexico.

677.    The New Mexico Uniform Securities Act forbids the sale of unregistered securities. N.M. Stat. Ann. § 58-13C-301. Any person who sells a security in violation of Section 58-13C-301 is "liable to the purchaser," who may "maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages," which are "the difference between the price at which the security was sold and the value the security would have had at the time of the sale in the absence of the purchaser's conduct causing liability, and interest at the legal rate of interest from the date of the sale of the security, costs and reasonable attorney fees determined by the court." *Id.* § 58-13C-509.

678.    When issued, the QSP tokens were securities within the meaning of the New Mexico Uniform Securities Act. *Id.* § 58-13C-102(DD). On information and belief, Quantstamp sold the QSP tokens to members of the Class in New Mexico. The QSP tokens were neither

registered under, nor subject to exemption from registration under the New Mexico Uniform Securities Act. *Id.* §§ 58-13C-201–202.

679.    On information and belief, the QSP tokens were sold in New Mexico, including without limitation through solicitations directed by Quantstamp to New Mexico and received in New Mexico.

680.    Accordingly, Quantstamp has violated the New Mexico Uniform Securities Act through Quantstamp's sale of unregistered securities.

681.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

682.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-FIFTH CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.M. Stat. Ann. § 58-13C-509**
**(Individual Defendants)**

683.    Plaintiffs reallege the allegations above.

684.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in New Mexico.

685.    Every person who directly or indirectly controls an entity liable under the New Mexico Uniform Securities Act for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer or director of a person liable" and every "individual who is an employee of or associated with a person liable" is jointly and severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that

the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist." *Id.* § 58-13C-509(G).

686.    When issued, the QSP tokens were securities within the meaning of the New Mexico Uniform Securities Act. *Id.* § 58-13C-102(DD). On information and belief, Quantstamp sold the QSP tokens to members of the Class in New Mexico. The QSP tokens were neither registered under, nor subject to exemption from registration under the New Mexico Uniform Securities Act.

687.    On information and belief, Quantstamp sold the QSP tokens in New Mexico, including without limitation through solicitations directed by Quantstamp to New Mexico and received in New Mexico.

688.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

689.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the New Mexico Uniform Securities Act through Quantstamp's sale of unregistered securities.

690.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

691.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-SIXTH CAUSE OF ACTION
### (NORTH CAROLINA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### N.C. Gen. Stat. Ann. § 78A-56(a)
### (Quantstamp)

692.    Plaintiffs reallege the allegations above.

693.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in North Carolina.

694.    The North Carolina Securities Act forbids the offer or sale of unregistered securities. N.C. Gen. Stat. Ann. § 78A-24. Any person who offers or sells a security in violation of Section 24 is "is liable to the person purchasing the security" who "may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the purchaser no longer owns the security." *Id.* §§ 78A-56(a)(1)–(2).

695.    When issued, the QSP tokens were securities within the meaning of the North Carolina Securities Act. *Id.* §78A-2(11). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in North Carolina. The QSP tokens were neither registered under, nor subject to exemption from registration under the North Carolina Securities Act. *Id.* § 78A-24.

696.    On information and belief, the QSP tokens were offered or sold in North Carolina, including without limitation through solicitations directed by Quantstamp to North Carolina and received in North Carolina.

135

697.    Accordingly, Quantstamp has violated the North Carolina Securities Act through Quantstamp's sale of unregistered securities.

698.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

699.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-SEVENTH CAUSE OF ACTION**
**(NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.C. Gen. Stat. Ann. § 78A-56(c)**
**(Individual Defendants)**

700.    Plaintiffs reallege the allegations above.

701.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in North Carolina.

702.    Every person who directly or indirectly controls an entity liable under the North Carolina Securities Act for unlawfully offering or selling unregistered securities, as well as every "partner, officer, or director of the person," "every person occupying a similar status or performing similar functions," as well as "every dealer or salesman who materially aids in the sale" is jointly and severally liable with and to the same extent as the person, unless "able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* §§ 78A-56(c)(1).

703.    When issued, the QSP tokens were securities within the meaning of the North Carolina Securities Act. *Id.* §78A-2 (11). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in North Carolina. The QSP tokens were neither registered under, nor subject to exemption from registration under the North Carolina Securities Act.

704.    On information and belief, Quantstamp offered and sold the QSP tokens in North Carolina, including without limitation through solicitations directed by Quantstamp to North Carolina and received in North Carolina.

705.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

706.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the North Carolina Securities Act through Quantstamp's offer or sale of unregistered securities.

707.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

708.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-EIGHTH CAUSE OF ACTION
### (NORTH DAKOTA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### N.D.C.C. §10-04-17
### (Quantstamp)

709.    Plaintiffs reallege the allegations above.

710.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in North Dakota.

711.    The North Dakota Securities Act forbids the offer or sale of unregistered securities. N.D.C.C. §10-04-04. Any person who unlawfully contracts to sell or sells an unregistered security is liable to "such purchaser" who "may sue either at law or in equity to recover the full amount paid," together with "all taxable court costs, interest as provided in this subsection, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender to the seller, in person or in open court, of the securities sold or of the contracts made, or for damages if the purchaser no longer owns the securities." *Id.* § 10-04-17(1).

712.    When issued, the QSP tokens were securities within the meaning of the North Dakota Securities Act. *Id.* §10-04-02 (19). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in North Dakota. The QSP tokens were neither registered under, nor subject to exemption from registration under the North Dakota Securities Act. *Id.* § 10-04-04.

713.    On information and belief, the QSP tokens were offered or sold in North Dakota, including without limitation through solicitations directed by Quantstamp to North Dakota and received in North Dakota.

714.    Accordingly, Quantstamp has violated the North Dakota Securities Act through Quantstamp's sale of unregistered securities.

715.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

716.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-NINTH CAUSE OF ACTION**
**(NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.D.C.C. §10-04-17**
**(Individual Defendants)**

717.    Plaintiffs reallege the allegations above.

718.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in North Dakota.

719.    Every person who directly or indirectly controls a seller liable under the North Dakota Securities Act for unlawfully selling unregistered securities, as well as well as any person who "supervises, or serves as an officer, director, or managing partner of a person liable under this section," an individual "who is an employee of or associated with a person liable under this section and who materially aids the conduct giving rise to the liability," as well as every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless that person or individual "did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." N.D.C.C. §10-04-17(6).

720.    When issued, the QSP tokens were securities within the meaning of the North Dakota Securities Act. *Id.* §10-04-02 (19). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in North Dakota. The QSP tokens were neither registered under, nor subject to exemption from registration under the North Dakota Securities Act.

721.    On information and belief, Quantstamp offered and sold the QSP tokens in North Dakota, including without limitation through solicitations directed by Quantstamp to North Dakota and received in North Dakota.

139

722.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

723.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the North Dakota Securities Act through Quantstamp's offer or sale of unregistered securities.

724.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

725.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTIETH CAUSE OF ACTION**
**(OHIO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ohio Rev. Code Ann. § 1707.43**
**(Quantstamp)**

726.    Plaintiffs reallege the allegations above.

727.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Ohio.

728.    The Ohio Securities Act forbids the sale of unregistered securities. Ohio Rev. Code Ann. § 1707.09 (A)(1). Any person who sells a security in violation of Section 9(A)(1) is liable to the purchaser "in an action at law in any court of competent jurisdiction" for "the full amount paid by the purchaser and for all taxable costs." *Id.* § 1707.43(A).

729.    When issued, the QSP tokens were securities within the meaning of the Ohio Securities Act. *Id.* § 1707.01(B). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Ohio. The QSP tokens were neither registered under, nor subject to exemption from registration under the Ohio Securities Act. *Id.* § 1707.09.

730.    On information and belief, the QSP tokens were sold in Ohio, including without limitation through solicitations directed by Quantstamp to Ohio and received in Ohio.

731.    Accordingly, Quantstamp has violated the Ohio Securities Act through Quantstamp's sale of unregistered securities.

732.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

733.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-FIRST CAUSE OF ACTION**
**(OHIO STATE LAW – ADDITIONAL LIABILITY)**
**Joint and Several Liability**
**Ohio Rev. Code Ann. § 1707.43**
**(Individual Defendants)**

734.    Plaintiffs reallege the allegations above.

735.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Ohio.

736.    Every person that has "participated in or aided the seller in any way in making" the sale or contract for sale, are "jointly and severally liable" to the purchaser. Ohio Rev. Code Ann. § 1707.43.

737.    When issued, the QSP tokens were securities within the meaning of the Ohio Securities Act. *Id.* § 1707.01(B). On information and belief, Quantstamp sold the QSP tokens to

141

members of the Class in Ohio. The QSP tokens were neither registered under, nor subject to exemption from registration under the Ohio Securities Act, and Quantstamp was not registered or exempt from registration as a dealer under Ohio law. *Id.* §§ 1707.09, 1707.14.

738.    On information and belief, Quantstamp sold the QSP tokens in Ohio, including without limitation through solicitations directed by Quantstamp to Ohio and received in Ohio.

739.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

740.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Ohio Securities Act through Quantstamp's sale of unregistered securities.

741.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

742.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SECOND CAUSE OF ACTION**
**(OKLAHOMA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Okla. Sta. Ann. tit. 71§ 1-509(C)**
**(Quantstamp)**

743.    Plaintiffs reallege the allegations above.

142

744.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Oklahoma.

745.    The Oklahoma Securities Act forbids the offer or sale of unregistered securities. Okla. Sta. Ann. tit. 71 § 1-301. Any person who offers or sells a security in violation of Section 301 is liable to the "purchaser may maintain an action at law or in equity to recover the consideration paid for the security, and interest at the legal rate of interest per year from the date of the purchase, less the amount of any income received on the security, plus costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages" *Id.* §1-509 (B)(1).

746.    When issued, the QSP tokens were securities within the meaning of the Oklahoma Securities Act. *Id.* §1-102 (32). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Oklahoma. The QSP tokens were neither registered under, nor subject to exemption from registration under the Oklahoma Securities Act. *Id.* § 1-301.

747.    On information and belief, the QSP tokens were offered or sold in Oklahoma, including without limitation through solicitations directed by Quantstamp to Oklahoma and received in Oklahoma.

748.    Accordingly, Quantstamp has violated the Oklahoma Securities Act through Quantstamp's sale of unregistered securities.

749.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

750.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-THIRD CAUSE OF ACTION**
**(OKLAHOMA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Okla. Sta. Ann. tit. 71§ 1-509 (G)**
**(Individual Defendants)**

751.    Plaintiffs reallege the allegations above.

752.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Oklahoma.

753.    Every person who directly or indirectly controls an entity liable under the Oklahoma Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director" of such seller, "including an individual having similar status or performing similar functions," every employee of or associated with such a seller who materially aids in the sale" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Okla. Sta. Ann. tit. 71§ 1-509(G).

754.    When issued, the QSP tokens were securities within the meaning of the Oklahoma Securities Act. *Id.* §1-102. On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Oklahoma. The QSP tokens were neither registered under, nor subject to exemption from registration under the Oklahoma Securities Act.

755.    On information and belief, Quantstamp offered and sold the QSP tokens in Oklahoma, including without limitation through solicitations directed by Quantstamp to Oklahoma and received in Oklahoma.

756.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

757.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Oklahoma Securities Act through Quantstamp's offer or sale of unregistered securities.

758.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

759.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-FOURTH CAUSE OF ACTION**
**(OREGON STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**O.R.S. § 59:115**
**(Quantstamp)**

760.    Plaintiffs reallege the allegations above.

761.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Oregon.

762.    The Oregon Securities Act forbids the offer or sale of unregistered securities. O.R.S. § 59:055. Any person who offers or sells a security in violation of Section 55 "is liable to the purchaser," who may recover "the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgements for the payment of money or the rate provided in the security if the security in an interest bearing obligation, less any amount received on the security, or if the purchaser no longer owns the security, damages." *Id.* §§ 59.115 (2)(a)-(b).

763.    When issued, the QSP tokens were securities within the meaning of the Oregon Securities Act. *Id.* §59.015 (19). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Oregon. The QSP tokens were neither registered under, nor subject to exemption from registration under the Oregon Securities Act. *Id.* § 59.055.

764.    On information and belief, the QSP tokens were offered or sold in Oregon, including without limitation through solicitations directed by Quantstamp to Oregon and received in Oregon.

765.    Accordingly, Quantstamp has violated the Oregon Securities Act through Quantstamp's sale of unregistered securities.

766.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

767.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-FIFTH CAUSE OF ACTION**
**(OREGON STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**O.R.S. § 59:115 (3)**
**(Individual Defendants)**

768.    Plaintiffs reallege the allegations above.

769.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Oregon.

770.    Every person who directly or indirectly controls an entity liable under the Oregon Securities Act for unlawfully selling unregistered securities, as well as every "partner, limited liability company manager, including a member who is a manager, officer or director of such seller", "every person occupying a similar status or performing similar functions," and "every

146

person who participated or materially aids in the sale" is liable for unlawfully selling unregistered securities, unless that nonseller "sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care could not have known, of the existence of facts on which the liability is based." O.R.S. § 59:115 (3).

771.    When issued, the QSP tokens were securities within the meaning of the Oregon Securities Act. *Id.* § O.R.S.§ 59.015 (19). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Oregon. The QSP tokens were neither registered under, nor subject to exemption from registration under the Oregon Securities Act.

772.    On information and belief, Quantstamp offered and sold the QSP tokens in Oregon, including without limitation through solicitations directed by Quantstamp to Oregon and received in Oregon.

773.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

774.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Oregon Securities Act through Quantstamp's offer or sale of unregistered securities.

775.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

776.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SIXTH CAUSE OF ACTION**
**(PENNSYLVANIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**70 Pa. Stat. Ann. § 1-502**
**(Quantstamp)**

777.     Plaintiffs reallege the allegations above.

778.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Pennsylvania.

779.     The Pennsylvania Securities Act forbids the offer or sale of unregistered securities. 70 Pa. Stat. Ann. § 1-201. Any person who offers or sells a security in violation of Section 1-201 is "liable to the person purchasing the security offered or sold in violation of section 201 from him who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 1-502.

780.     When issued, the QSP tokens were securities within the meaning of the Pennsylvania Securities Act. *Id.* § 1-102(t). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Pennsylvania. The QSP tokens were neither registered under, nor subject to exemption from registration under the Pennsylvania Securities Act. *Id.* § 1-202.

781.     On information and belief, the QSP tokens were offered or sold in Pennsylvania, including without limitation through solicitations directed by Quantstamp to Pennsylvania and received in Pennsylvania.

782.    Accordingly, Quantstamp has violated the Pennsylvania Securities Act through Quantstamp's sale of unregistered securities.

783.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

784.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SEVENTH CAUSE OF ACTION**
**(PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**70 Pa. Stat. Ann. § 1-503**
**(Individual Defendants)**

785.    Plaintiffs reallege the allegations above.

786.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Pennsylvania.

787.    Every affiliate of an entity liable under the Pennsylvania Securities Act for unlawfully selling unregistered securities, as well as every "partner, principal executive officer or director of such person" and "every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. 70 Pa. Stat. Ann. § 1-503(a).

788.    When issued, the QSP tokens were securities within the meaning of the Pennsylvania Securities Act. *Id.* § 1-102. On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Pennsylvania. The QSP tokens were neither registered

under, nor subject to exemption from registration under the Pennsylvania Securities Act, *id.* § 1-202.

789.    On information and belief, Quantstamp offered and sold the QSP tokens in Pennsylvania, including without limitation through solicitations directed by Quantstamp to Pennsylvania and received in Pennsylvania.

790.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

791.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Pennsylvania Securities Act through Quantstamp's offer or sale of unregistered securities.

792.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

793.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## SEVENTY-EIGHTH CAUSE OF ACTION
### (PUERTO RICO STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### 10 L.P.R.A. § 890
### (Quantstamp)

794.    Plaintiffs reallege the allegations above.

795.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Puerto Rico.

796.    The Puerto Rico Securities Act forbids the offer or sale of unregistered securities. 10 L.P.R.A. § 871. Any person who offers or sells a security in violation of Section 871 is "liable to the person who buys the security, who may file suit to recover the price paid for the security, in addition to the interest at the rate applicable to judicial awards … starting on the date in which the payment, costs and reasonable Attorney's fees were made less the sum of any income received on, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 890.

797.    When issued, the QSP tokens were securities within the meaning of the Puerto Rico Securities Act. *Id.* § 881. On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Puerto Rico. The QSP tokens were neither registered under, nor subject to exemption from registration under the Puerto Rico Securities Act. *Id.* § 882.

798.    On information and belief, the QSP tokens were offered or sold in Puerto Rico, including without limitation through solicitations directed by Quantstamp to Puerto Rico and received in Puerto Rico.

799.    Accordingly, Quantstamp has violated the Puerto Rico Securities Act through Quantstamp's sale of unregistered securities.

800.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

801.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-NINTH CAUSE OF ACTION**
**(PUERTO RICO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**10 L.P.R.A. § 890**
**(Individual Defendants)**

802.    Plaintiffs reallege the allegations above.

803.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Puerto Rico.

804.    Every person who directly or indirectly controls an entity liable under the Puerto Rico Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller," and "every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. 10 L.P.R.A. § 890(b).

805.    When issued, the QSP tokens were securities within the meaning of the Puerto Rico Securities Act. *Id.* § 881. On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Puerto Rico. The QSP tokens were neither registered under, nor subject to exemption from registration under the Puerto Rico Securities Act.

806.    On information and belief, Quantstamp offered and sold the QSP tokens in Puerto Rico, including without limitation through solicitations directed by Quantstamp to Puerto Rico and received in Puerto Rico.

807.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

152

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful

offers or sales of unregistered securities as described herein.

808.    Accordingly, the Individual Defendants, who directly or indirectly controlled

Quantstamp, have violated the Puerto Rico Securities Act through Quantstamp's offer or sale of

unregistered securities.

809.    Class members who own the QSP tokens have made or will make any necessary

tender and seek all remedies available at law or in equity for any QSP tokens purchased in the

Class Period, including any applicable costs, attorneys' fees, and interest.

810.    Class members who no longer own the QSP tokens seek damages for any QSP

tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTIETH CAUSE OF ACTION**
**(RHODE ISLAND STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**7 R.I. Gen. Laws Ann. § 7-11-605**
**(Quantstamp)**

811.    Plaintiffs reallege the allegations above.

812.    This Cause of Action is brought on behalf of Class members to whom QSP tokens

were offered or sold in Rhode Island.

813.    The Rhode Island Securities Act forbids the offer or sale of unregistered securities.

7 R.I. Gen. Laws Ann. § 7-11-301. Any person who offers or sells a security in violation of Section

7-11-301 is "liable to the purchaser of the security from that person" and "[u]pon tender of the

security, the purchaser may recover the consideration paid for the security and interest at the legal

rate of this state from the date of payment, costs, and reasonable attorney's fees as determined by

the court, less the amount of income received on the security," or if the "purchaser no longer owns

the security, the purchaser may recover damages" in the "amount that would be recoverable upon

a tender less the value of the security when the purchaser disposed of it, plus interest at the legal

rate of this state from the date of disposition of the security, costs and reasonable attorney's fees as determined by the court." *Id.* § 7-11-605.

814.    When issued, the QSP tokens were securities within the meaning of the Rhode Island Securities Act. *Id.* § 7-11-101(22). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Rhode Island. The QSP tokens were neither registered under, nor subject to exemption from registration under the Rhode Island Securities Act. *Id.* § 7-11-401.

815.    On information and belief, the QSP tokens were offered or sold in Rhode Island, including without limitation through solicitations directed by Quantstamp to Rhode Island and received in Rhode Island.

816.    Accordingly, Quantstamp has violated the Rhode Island Securities Act through Quantstamp's sale of unregistered securities.

817.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

818.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-FIRST CAUSE OF ACTION**
**(RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**R.I. Gen. Laws Ann. § 7-11-605(d)**
**(Individual Defendants)**

819.    Plaintiffs reallege the allegations above.

820.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Rhode Island.

821.    Every person who directly or indirectly controls an entity liable under the Rhode Island Securities Act for unlawfully selling unregistered securities, as well as "a partner, officer, or director of the person liable" and "a person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. R.I. Gen. Laws Ann. § 7-11-605(d).

822.    When issued, the QSP tokens were securities within the meaning of the Rhode Island Securities Act. *Id.* § 7-11-101(22). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Rhode Island. The QSP tokens were neither registered under, nor subject to exemption from registration under the Rhode Island Securities Act, *id.* § 7-11-401.

823.    On information and belief, Quantstamp offered and sold the QSP tokens in Rhode Island, including without limitation through solicitations directed by Quantstamp to Rhode Island and received in Rhode Island.

824.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

825.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Rhode Island Securities Act through Quantstamp's offer or sale of unregistered securities.

826.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

827.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-SECOND CAUSE OF ACTION**
**(SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**S.C. Code Ann. § 35-1-509**
**(Quantstamp)**

828.    Plaintiffs reallege the allegations above.

829.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in South Carolina.

830.    The South Carolina Securities Act forbids the offer or sale of unregistered securities. S.C. Code Ann. § 35-1-301. Any person who sells a security in violation of Section 35-1-301 is liable to the purchaser who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court" or for "actual damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court." *Id.* § 35-1-509(b).

831.    When issued, the QSP tokens were securities within the meaning of the South Carolina Securities Act. *Id.* § 35-1-102(29). On information and belief, Quantstamp sold the QSP tokens to members of the Class in South Carolina. The QSP tokens were neither registered under, nor subject to exemption from registration under the South Carolina Securities Act. *Id.* § 35-1-201.

832.    On information and belief, the QSP tokens were sold in South Carolina, including without limitation through solicitations directed by Quantstamp to South Carolina and received in South Carolina.

833.    Accordingly, Quantstamp has violated the South Carolina Securities Act through Quantstamp's sale of unregistered securities.

834.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

835.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-THIRD CAUSE OF ACTION**
**(SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**S.C. Code Ann. § 31-1-509**
**(Individual Defendants)**

836.    Plaintiffs reallege the allegations above.

837.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in South Carolina.

838.    Every person who directly or indirectly controls an entity liable under the South Carolina Securities Act for unlawfully selling unregistered securities, as well as an individual "who is a managing partner, executive officer, or director of a person liable, … including an individual having a similar status or performing similar functions" is jointly and severally liable with and to

157

the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. S.C. Code. Ann. § 31-1-509(g).

839.    When issued, the QSP tokens were securities within the meaning of the South Carolina Securities Act. *Id.* § 35-1-102(29). On information and belief, Quantstamp sold the QSP tokens to members of the Class in South Carolina. The QSP tokens were neither registered under, nor subject to exemption from registration under the South Carolina Securities Act, *id.* § 35-1-201.

840.    On information and belief, Quantstamp sold the QSP tokens in South Carolina, including without limitation through solicitations directed by Quantstamp to South Carolina and received in South Carolina.

841.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

842.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the South Carolina Securities Act through Quantstamp's sale of unregistered securities.

843.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

844.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-FOURTH CAUSE OF ACTION**
**(SOUTH DAKOTA STATE LAW – PRIMARY LIABILITY)**
**Sale of Unregistered Securities**
**S.D. Codified Laws § 47-31B-509(b)**
**(Quantstamp)**

845.    Plaintiffs reallege the allegations above.

846.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in South Dakota.

847.    The South Dakota Securities Act forbids the sale of unregistered securities. S.D. Codified Laws § 47-31B-301. Any person who sells a security in violation of Section 47-31B-301 is liable for "the consideration paid for the security, less the amount of any income received on the security, and interest at Category D, § 54-3-16 from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 47-31B-509(b).

848.    When issued, the QSP tokens were securities within the meaning of the South Dakota Securities Act. *Id.* § 47-31B-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in South Dakota. The QSP tokens were neither registered under, nor subject to exemption from registration under the South Dakota Securities Act. *Id.* §§ 47-31B-201-47-31B-203.

849.    On information and belief, the QSP tokens were sold in South Dakota, including without limitation through solicitations directed by Quantstamp to South Dakota and received in South Dakota.

850.    Accordingly, Quantstamp has violated the South Dakota Securities Act through Quantstamp's sale of unregistered securities.

851.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

852.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### EIGHTY-FIFTH CAUSE OF ACTION
### (SOUTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### S.D. Codified Laws § 47-31B-509
### (Individual Defendants)

853.    Plaintiffs reallege the allegations above.

854.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in South Dakota.

855.    Every person who directly or indirectly controls an entity liable under the South Dakota Securities Act for unlawfully selling unregistered securities, as well as an "individual who is a managing partner, executive officer, or director … employee of or associated with" an entity so liable is "liable jointly and severally with and to the same extent as" such a person. S.D. Codified Laws § 47-31B-509.

856.    When issued, the QSP tokens were securities within the meaning of the South Dakota Securities Act. *Id.* § 47-31B-102(28). On information and belief, Quantstamp sold the QSP tokens to members of the Class in South Dakota. The QSP tokens were not registered under, nor subject to exemption from registration under the South Dakota Securities Act. *Id.* §§ 47-31B-301, 47-31B-401(a).

857.    On information and belief, Quantstamp sold the QSP tokens in South Dakota, including without limitation through solicitations directed by Quantstamp to South Dakota and received in South Dakota.

858.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

859.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the South Dakota Securities Act through Quantstamp's sale of unregistered securities.

860.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

861.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-SIXTH CAUSE OF ACTION**
**(TENNESSEE STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Tenn. Code Ann. § 48-1-122**
**(Quantstamp)**

862.    Plaintiffs reallege the allegations above.

863.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Tennessee.

864.    The Tennessee Securities Act forbids the sale of unregistered securities. Tenn. Code Ann. § 48-1-104(a). Any person who sells a security in violation of Section 104(a) is "liable to the person purchasing the security from the seller to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income

161

received on the security, upon the tender of the security, or, if the purchaser no longer owns the security, the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition." *Id.* § 48-1-122(a).

865.    When issued, the QSP tokens were securities within the meaning of the Tennessee Securities Act. *Id.* § 48-1-102(20). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Tennessee. The QSP tokens were neither registered under, nor subject to exemption from registration under the Tennessee Securities Act. *Id.* § 48-1-103.

866.    On information and belief, the QSP tokens were sold in Tennessee, including without limitation through solicitations directed by Quantstamp to Tennessee and received in Tennessee.

867.    Accordingly, Quantstamp has violated the Tennessee Securities Act through Quantstamp's sale of unregistered securities.

868.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

869.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-SEVENTH CAUSE OF ACTION**
**(TENNESSEE STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Tenn. Code Ann. § 48-1-122(g)**
**(Individual Defendants)**

870.    Plaintiffs reallege the allegations above.

871.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Tennessee.

872.    Every person who directly or indirectly controls an entity liable under the Tennessee Securities Act for unlawfully selling unregistered securities, as well as "every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation" is "liable jointly and severally with and to the same extent as such person, unless the person who would be liable under this subsection (g) proves that the person who would be liable did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 48-1-122(g).

873.    When issued, the QSP tokens were securities within the meaning of the Tennessee Securities Act. *Id.* § 48-1-102(20). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Tennessee. The QSP tokens were neither registered under, nor subject to exemption from registration under the Tennessee Securities Act.

874.    On information and belief, Quantstamp sold the QSP tokens in Tennessee, including without limitation through solicitations directed by Quantstamp to Tennessee and received in Tennessee.

875.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

876.     Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Tennessee Securities Act through Quantstamp's sale of unregistered securities.

877.     Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

878.     Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-EIGHTH CAUSE OF ACTION**
**(TEXAS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Tex. Civ. St. Art. § 581-33 A**
**(Quantstamp)**

879.     Plaintiffs reallege the allegations above.

880.     This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Texas.

881.     The Texas Blue Sky Law – Securities forbids the offer or sale of unregistered securities. Texas Civ. St. Art. § 581-7. Any person who offers or sells a security in violation of Section 581-7 is "is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security." *Id.* § 581-33 A. Damages are defined as "(a) the consideration the buyer paid for the security plus interest thereon at the legal rate from the date of payment by the buyer, less (b) the greater of: (i) the value of the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security; or (ii) the actual consideration received for the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security." *Id.* § 581-33 D(3).

164

882.    When issued, the QSP tokens were securities within the meaning of the Texas Blue Sky Law – Securities. *Id.* § 581-4 A. Quantstamp offered or sold the QSP tokens to Plaintiffs and members of the Class in Texas. The QSP tokens were neither registered under, nor subject to exemption from registration under the Texas Blue Sky Law – Securities. *Id.* § 581-6.

883.    The QSP tokens were offered or sold in Texas, including without limitation through solicitations directed by Quantstamp to Texas and received in Texas.

884.    Accordingly, Quantstamp has violated the Texas Blue Sky Law – Securities through Quantstamp's sale of unregistered securities.

885.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

886.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-NINTH CAUSE OF ACTION**
**(TEXAS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Tex. Civ. St. Art. § 581-33 F**
**(Individual Defendants)**

887.    Plaintiffs reallege the allegations above.

888.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Texas.

889.    Every person who directly or indirectly controls an entity liable under the Texas Blue Sky Law – Securities for unlawfully selling unregistered securities is liable jointly and severally with and to the same extent as the seller, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have

known, of the existence of the facts by reason of which the liability is alleged to exist. Texas Civ. St. Art. § 581-33 F.

890.    When issued, the QSP tokens were securities within the meaning of the Texas Blue Sky Law – Securities. *Id.* § 581-4 A. Quantstamp offered and sold the QSP tokens to Plaintiffs and members of the Class in Texas. *Id.* §§ 581-4 C, 581-4 D. The QSP tokens were neither registered under, nor subject to exemption from registration under the Texas Blue Sky Law – Securities.

891.    Quantstamp offered and sold the QSP tokens in Texas, including without limitation through solicitations directed by Quantstamp to Texas and received in Texas.

892.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered as described herein.

893.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Texas Blue Sky Law – Securities through Quantstamp's offer or sale of unregistered securities.

894.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

895.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETIETH CAUSE OF ACTION**
**(UTAH STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Utah Code § 61-1-22**
**(Quantstamp)**

896.    Plaintiffs reallege the allegations above.

897.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Utah.

898.    The Utah Securities Act forbids the offer or sale of unregistered securities. Utah Code Ann. § 61-1-7. Any person who offers or sells a security in violation of Section 61-1-7 is liable to the buyer for "the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney fees, less the amount of income received on the security, upon the tender of the security or for damages if the person no longer owns the security." *Id.* § 61-1-22(b).

899.    When issued, the QSP tokens were securities within the meaning of the Utah Securities Act. *Id.* § 61-1-13(ee). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Utah. The QSP tokens were neither registered under, nor subject to exemption from registration under the Utah Securities Act. *Id.* § 61-14.

900.    On information and belief, the QSP tokens were offered or sold in Utah, including without limitation through solicitations directed by Quantstamp to Utah and received in Utah.

901.    Accordingly, Quantstamp has violated the Utah Securities Act through Quantstamp's sale of unregistered securities.

902.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

167

903.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-FIRST CAUSE OF ACTION**
**(UTAH STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Utah Code Ann. § 61-1-22**
**(Individual Defendants)**

904.    Plaintiffs reallege the allegations above.

905.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Utah.

906.    Every person who directly or indirectly controls an entity liable under the Utah Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase" are liable jointly and severally "with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Utah Code Ann. § 61-1-22.

907.    When issued, the QSP tokens were securities within the meaning of the Utah Securities Act. Id. § 61-1-13(ee). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Utah. The QSP tokens were neither registered under, nor subject to exemption from registration under the Utah Securities Act.

908.    On information and belief, Quantstamp offered and sold the QSP tokens in Utah, including without limitation through solicitations directed by Quantstamp to Utah and received in Utah.

909.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

910.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Utah Securities Act through Quantstamp's offer or sale of unregistered securities.

911.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

912.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-SECOND CAUSE OF ACTION**
**(VERMONT STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Vt. Stat. Ann. tit. 9, § 5509**
**(Quantstamp)**

913.    Plaintiffs reallege the allegations above.

914.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Vermont.

915.    The Vermont Securities Act forbids the offer or sale of unregistered securities. Vt. Stat. Ann. tit. 9, § 5309. Any person who offers or sells a security in violation of Section 5309 is liable for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable

attorney's fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 5509.

916.    When issued, the QSP tokens were securities within the meaning of the Vermont Securities Act. Id. § 5102(28). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Vermont. The QSP tokens were neither registered under, nor subject to exemption from registration under the Vermont Securities Act. *Id.* §§ 5201-5203.

917.    On information and belief, the QSP tokens were offered or sold in Vermont, including without limitation through solicitations directed by Quantstamp to Vermont and received in Vermont.

918.    Accordingly, Quantstamp has violated the Vermont Securities Act through Quantstamp's sale of unregistered securities.

919.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

920.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-THIRD CAUSE OF ACTION**
**(VERMONT STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Vt. Stat. Ann. tit. 9, § 5509**
**(Individual Defendants)**

921.    Plaintiffs reallege the allegations above.

922.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Vermont.

923.    Every person who directly or indirectly controls an entity liable under the Vermont Securities Act for unlawfully selling unregistered securities, as well as "an individual who is a

170

managing partner, executive officer, or director of a person liable under subsections (b) through (f) of this section, including an individual having a similar status or performing similar functions," is jointly and severally liable with the entity "unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Vt. Stat. Ann. tit. 9, § 5509(g).

924.    When issued, the QSP tokens were securities within the meaning of the Vermont Securities Act. *Id.* § 5102(28). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Vermont. The QSP tokens were neither registered under, nor subject to exemption from registration under the Vermont Securities Act.

925.    On information and belief, Quantstamp offered and sold the QSP tokens in Vermont, including without limitation through solicitations directed by Quantstamp to Vermont and received in Vermont.

926.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

927.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Vermont Securities Act through Quantstamp's offer or sale of unregistered securities.

928.   Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

929.   Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-FOURTH CAUSE OF ACTION**
**(VIRGINIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Va. Code Ann. § 13.1-522 A**
**(Quantstamp)**

930.   Plaintiffs reallege the allegations above.

931.   This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Virginia.

932.   The Virginia Securities Act forbids the offer or sale of unregistered securities. Va. Code Ann. § 13.1-507. Any person who sells a security in violation of Section 13.1-507 "shall be liable to the person purchasing such security from him who may sue either at law or in equity to recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security." *Id.* § 13.1-522 A.

933.   When issued, the QSP tokens were securities within the meaning of the Virginia Securities Act. *Id.* § 13.1-501 A. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Virginia. The QSP tokens were neither registered under, nor subject to exemption from registration under the Virginia Securities Act. *Id.* § 13.1-514 A.

934.   On information and belief, the QSP tokens were sold in Virginia, including without limitation through solicitations directed by Quantstamp to Virginia and received in Virginia.

935.    Accordingly, Quantstamp has violated the Virginia Securities Act through Quantstamp's sale of unregistered securities.

936.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

937.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-FIFTH CAUSE OF ACTION**
**<u>(VIRGINIA STATE LAW – ADDITIONAL LIABILITY)</u>**
**Control Person Liability**
**Va. Code Ann. § 13.1-522 C**
**(Individual Defendants)**

938.    Plaintiffs reallege the allegations above.

939.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Virginia.

940.    Every person who directly or indirectly controls an entity liable under the Virginia Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Va. Code Ann. § 13.1-522 C.

941.    When issued, the QSP tokens were securities within the meaning of the Virginia Securities Act. *Id.* § 13.1-501 A. On information and belief, Quantstamp sold the QSP tokens to members of the Class in Virginia. The QSP tokens were not registered under, nor subject to exemption from registration under the Virginia Securities Act.

942.   On information and belief, Quantstamp sold the QSP tokens in Virginia, including without limitation through solicitations directed by Quantstamp to Virginia and received in Virginia.

943.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

944.   Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Virginia Securities Act through Quantstamp's sale of unregistered securities.

945.   Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

946.   Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-SIXTH CAUSE OF ACTION**
**(WASHINGTON STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Wash. Rev. Code § 21.20.430(1)**
**(Quantstamp)**

947.   Plaintiffs reallege the allegations above.

948.   This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Washington.

949.    The Securities Act of Washington forbids the offer or sale of unregistered securities. Wash. Rev. Code § 21.20.140. Any person who offers or sells a security in violation of Section 21.20.140 is "liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security. " *Id.* § 21.20.430(1).

950.    When issued, the QSP tokens were securities within the meaning of the Securities Act of Washington. *Id.* § 21.20.005(17). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Washington. The QSP tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Washington. *Id.* § 21.20.310.

951.    On information and belief, the QSP tokens were offered or sold in Washington, including without limitation through solicitations directed by Quantstamp to Washington and received in Washington.

952.    Accordingly, Quantstamp has violated the Securities Act of Washington through Quantstamp's sale of unregistered securities.

953.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

954.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-SEVENTH CAUSE OF ACTION**
**(WASHINGTON STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Wash. Rev. Code Ann. § 21.20.430**
**(Individual Defendants)**

955.    Plaintiffs reallege the allegations above.

956.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Washington.

957.    Every person who directly or indirectly controls an entity liable under the Securities Act of Washington for unlawfully selling unregistered securities, as well as "every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions … are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 21.20.430(3).

958.    When issued, the QSP tokens were securities within the meaning of the Securities act of Washington. *Id.* § 21.20.005(17). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in Washington. The QSP tokens were not registered under, nor subject to exemption from registration under the Securities act of Washington.

959.    On information and belief, Quantstamp offered and sold the QSP tokens in Washington, including without limitation through solicitations directed by Quantstamp to Washington and received in Washington.

960.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage

in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

961.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Securities Act of Washington through Quantstamp's offer or sale of unregistered securities.

962.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

963.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-EIGHTH CAUSE OF ACTION**
**(WISCONSIN STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Wis. Stat. § 551.509**
**(Quantstamp)**

964.    Plaintiffs reallege the allegations above.

965.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in the State of Wisconsin.

966.    The Wisconsin Uniform Securities Law forbids the sale of unregistered securities. Wis. Stat. § 551.301. Any person who sells a security in violation of Section 301 is liable to the purchaser for the "consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate under s. 138.04 from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages as provided in par. (c)." *Id.* § 551.509(2)(a). Actual damages are defined as "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed

of it, and interest at the legal rate under s. 138.04 from the date of the purchase, costs, and reasonable attorney fees determined by the court." *Id.* § 551.509(2)(c).

967.    When issued, the QSP tokens were securities within the meaning of the Wisconsin Uniform Securities Law. *Id.* § 551.102(28). Quantstamp sold the QSP tokens to members of the Class in the State of Wisconsin. The QSP tokens were neither registered under, nor subject to exemption from registration under the Wisconsin Uniform Securities Law. *Id.* § 551.301.

968.    On information and belief, the QSP tokens were offered or sold in the State of Wisconsin, including without limitation through solicitations directed by Quantstamp to the State of Wisconsin and received in the State of Wisconsin.

969.    Accordingly, Quantstamp has violated the Wisconsin Uniform Securities Law through Quantstamp's sale of unregistered securities.

970.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

971.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-NINTH CAUSE OF ACTION**
**(WISCONSIN STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Wis. Stat. Ann. § 551.509**
**(Individual Defendants)**

972.    Plaintiffs reallege the allegations above.

973.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in the State of Wisconsin.

974.    Every person who directly or indirectly controls an entity liable under the Wisconsin Uniform Securities Law for unlawfully selling unregistered securities , as well as

"managing partner, executive officer, or director of a person liable under subs. (2) to (6), including an individual having a similar status or performing similar functions," is jointly and severally liable "unless the individual sustains the burden of proof that the individual did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Wis. Stat. Ann. § 551.509(7)(d).

975.    When issued, the QSP tokens were securities within the meaning of the Wisconsin Uniform Securities Law. *Id.* § 551.102(28). Quantstamp sold the QSP tokens to members of the Class in the State of Wisconsin. The QSP tokens were neither registered under, nor subject to exemption from registration under the Wisconsin Uniform Securities Law, and Quantstamp was not registered or exempt from registration under Wisconsin law. *Id.* §§ 551.301, 551.401(1), 551.402(1).

976.    Quantstamp sold the QSP tokens in the State of Wisconsin, including without limitation through solicitations directed by Quantstamp to the State of Wisconsin and received in the State of Wisconsin.

977.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered as described herein.

978.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Wisconsin Uniform Securities Law through Quantstamp's sale of unregistered securities.

979.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

980.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ONE HUNDREDTH CAUSE OF ACTION**
**(WEST VIRGINIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer or Sale of Securities**
**W. Va. Code Ann. § 32-4-410(a)**
**(Quantstamp)**

981.    Plaintiffs reallege the allegations above

982.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in West Virginia.

983.    The West Virginia Uniform Securities Act forbids the offer or sale of unregistered securities. W. Va. Code Ann. § 32-3-301. Any person who offers or sells a security in violation of Section 32-3-301 is "liable to the person buying the security from him, who may assert a claim in a civil action to recover the consideration paid for the security, together with interest at nine percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at nine percent per year from the date of disposition." *Id.* § 32-4-410(a).

984.    When issued, the QSP tokens were securities within the meaning of the West Virginia Uniform Securities Act. *Id.* § 32-4-401(n). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in West Virginia. The QSP tokens were neither

registered under, nor subject to exemption from registration under the West Virginia Uniform Securities Act. *Id.* § 32-4-402.

985.    On information and belief, the QSP tokens were offered or sold in West Virginia, including without limitation through solicitations directed by Quantstamp to West Virginia and received in West Virginia.

986.    Accordingly, Quantstamp has violated the West Virginia Uniform Securities Act through Quantstamp's sale of unregistered securities.

987.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

988.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ONE HUNDRED AND FIRST CAUSE OF ACTION**
**(WEST VIRGINIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**W. Va. Code Ann. § 32-4-410**
**(Individual Defendants)**

989.    Plaintiffs reallege the allegations above.

990.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in West Virginia.

991.    Every person who directly or indirectly controls an entity liable under the West Virginia Uniform Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions … are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in

exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 32-4-410(b).

992.    When issued, the QSP tokens were securities within the meaning of the West Virginia Uniform Securities Act. *Id.* § 32-4-401(n). On information and belief, Quantstamp offered and sold the QSP tokens to members of the Class in West Virginia. The QSP tokens were not registered under, nor subject to exemption from registration under the West Virginia Uniform Securities Act.

993.    On information and belief, Quantstamp offered and sold the QSP tokens in West Virginia, including without limitation through solicitations directed by Quantstamp to West Virginia and received in West Virginia.

994.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

995.    Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the West Virginia Uniform Securities Act through Quantstamp's offer or sale of unregistered securities.

996.    Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

997.    Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ONE HUNDRED AND SECOND CAUSE OF ACTION**
**(WYOMING STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Wyo. Stat. Ann. § 17-4-509(b)**
**(Quantstamp)**

998.    Plaintiffs reallege the allegations above.

999.    This Cause of Action is brought on behalf of Class members to whom QSP tokens were sold in Wyoming.

1000.    The Wyoming Uniform Securities Act forbids the offer or sale of unregistered securities. Wyo. Stat. Ann. § 17-4-301. Any person who sells a security in violation of Section 17-4-301 is liable to the purchaser, who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at six percent (6%) per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security." *Id.* § 17-4-509(b)(i). If the purchaser no longer owns the security, then he may seek actual damages, which are "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at six percent (6%) per year from the date of the purchase, costs and reasonable attorneys' fees determined by the court." *Id.* § 17-4-509(b)(iii).

1001.    When issued, the QSP tokens were securities within the meaning of the Wyoming Uniform Securities Act. *Id.* § 17-4-102(a)(xxviii). On information and belief, Quantstamp offered or sold the QSP tokens to members of the Class in Wyoming. The QSP tokens were neither registered under, nor subject to exemption from registration under the Wyoming Uniform Securities Act. *Id.* § 17-4-201 - 204.

1002.   On information and belief, the QSP tokens were offered or sold in Wyoming, including without limitation through solicitations directed by Quantstamp to Wyoming and received in Wyoming.

1003.   Accordingly, Quantstamp has violated the Wyoming Uniform Securities Act through Quantstamp's sale of unregistered securities.

1004.   Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1005.   Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## ONE HUNDRED AND THIRD CAUSE OF ACTION
### (WYOMING STATE LAW – ADDITIONAL LIABILITY)
#### Control Person Liability
#### Wyo. Stat. Ann. § 17-4-509(g)
#### (Individual Defendants)

1006.   Plaintiffs reallege the allegations above.

1007.   This Cause of Action is brought on behalf of Class members to whom QSP tokens were offered or sold in Wyoming.

1008.   Every person who directly or indirectly controls a person liable under the Wyoming Uniform Securities Act for unlawfully selling unregistered securities, as well as every managing partner, executive officer, or director of such a seller, including every person having a similar status or performing similar functions … is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. *Id.* §§ 17-4-509(g)(i) – (iv).

1009.   When issued, the QSP tokens were securities within the meaning of the Wyoming Uniform Securities Act. *Id.* § 17-4-102(a)(xxviii). On information and belief, Quantstamp sold the QSP tokens to members of the Class in Wyoming. The QSP tokens were neither registered under, nor subject to exemption from registration under the Wyoming Uniform Securities Act.

1010.   On information and belief, Quantstamp sold the QSP tokens in Wyoming, including without limitation through solicitations directed by Quantstamp to Wyoming and received in Wyoming.

1011.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Quantstamp and its employees, and to cause Quantstamp to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

1012.   Accordingly, the Individual Defendants, who directly or indirectly controlled Quantstamp, have violated the Wyoming Uniform Securities Act through Quantstamp's sale of unregistered securities.

1013.   Class members who own the QSP tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1014.   Class members who no longer own the QSP tokens seek damages for any QSP tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## **PRAYER FOR RELIEF**

1015.   On behalf of themselves and the Class, Plaintiffs request relief as follows:

a.    That the Court determines that this action may be maintained as a class action, that Plaintiffs be named as Class Representatives of the Class, that the undersigned by named as Lead Class Counsel of the Class, and direct that notice of this action be given to Class members;

b.    That the Court enter an order declaring that Defendants' actions, as set forth in this Amended Complaint, violate the federal and state laws set forth above;

c.    That the Court award Plaintiffs and the Class damages in an amount to be determined at trial;

d.    That the Court issue appropriate equitable and any other relief against Defendants to which Plaintiffs and the Class are entitled;

e.    That the Court award Plaintiffs and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

f.    That the Court award Plaintiffs and the Class their reasonable attorneys' fees and costs of suit; and

g.    That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

## **JURY TRIAL**

1016.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury for all claims.

Dated:    September 11, 2020
New York, New York

Respectfully submitted,

/s/ Philippe Z. Selendy
Philippe Z. Selendy
Jordan A. Goldstein
Spencer Gottlieb
Michelle Foxman
SELENDY & GAY, PLLC
1290 Sixth Avenue, 17th Floor
New York, NY 10104
pselendy@selendygay.com
jgoldstein@selendygay.com
sgottlieb@selendygay.com
mfoxman@selendygay.com

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel (Devin) Freedman
Alex T. Potter
ROCHE CYRULNIK
   FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
apotter@rcfllp.com