**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATTHEW KUZMESKAS and BRETT
MESSIEH, individually and on behalf of all
others similarly situated,

               Plaintiffs,

          v.

QUANTSTAMP, INC., RICHARD MA, and
STEVEN STEWART,

               Defendants.

Case No.: 1:20-cv-02813-LAP

Honorable Loretta A. Preska

**JURY DEMANDED**


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**


**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
Corey Worcester
Jacob J. Waldman
Jesse Bernstein
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Michael Liftik (admitted *pro hac vice*)
1300 I St. NW #900
Washington, DC 200005
(202) 538-8000

*Attorneys for Defendants Quantstamp, Inc.,*
*Richard Ma, and Steven Stewart*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................3

PROCEDURAL HISTORY......................................................................................5

LEGAL STANDARD...............................................................................................6

ARGUMENT ...........................................................................................................7

I.      PLAINTIFFS' NON-REGISTRATION CLAIMS ARE UNTIMELY ..............................7

    A.      Plaintiffs' Section 12(a)(1) Claims Are Barred By The Relevant Statutes Of Limitations ...........................................................................................7

    B.      Plaintiffs Cannot Toll the Applicable Statutes of Limitations................................8

        1.      The April 2019 Framework Did Not Reveal Any New Information..........8

        2.      Plaintiffs Fail To Allege Fraudulent Concealment ....................................10

    C.      Plaintiff Kuzmeskas's Connecticut Blue Sky Claims Are Barred By The Relevant Statute Of Limitation ...............................................................13

    D.      Plaintiff Messieh's Florida Blue Sky Claims Are Barred By The Relevant Statute Of Limitations ...........................................................................14

II.     PLAINTIFFS' SECTION 12(A)(2) CLAIMS ARE UNTIMELY ....................................15

III.    DEFENDANTS WERE NOT "STATUTORY SELLERS" AND THEREFORE COULD NOT BE LIABLE UNDER PLAINTIFFS' SECTION 12 CLAIMS................16

    A.      Defendants Were Not "Statutory Sellers" Under The Securities Act....................16

    B.      Defendants Were Not "Statutory Sellers" Under The Relevant Blue Sky Laws .................................................................................................18

IV.     DEFENDANTS ARE NOT LIABLE FOR SECONDARY MARKET PURCHASES....18

V.      PLAINTIFFS DO NOT ALLEGE ANY MISREPRESENTATIONS OR OMISSIONS IN THE "WHITEPAPER" ..................................................................19

    A.      Alleged Misstatements Concerning QSP's Technology.......................................20

    B.      Alleged Misstatements Concerning Whether the Tokens were Securities ...........21

VI.     THE UNITED STATES' SECURITIES LAWS DO NOT APPLY TO PLAINTIFFS' TRANSACTIONS...................................................................................22

VII.    PLAINTIFFS CANNOT PURSUE THE REMAINING BLUE SKY CLAIMS .............24

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..................................................................................... 22

*Allen v. Credit Suisse Sec. (USA) LLC*,
   895 F.3d 214 (2d Cir. 2018)...................................................................................... 6

*Anderson et al., v. Binance et al.*,
   20-cv-2803-ALC (S.D.N.Y.) ................................................................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 6

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013)...................................................................... 20

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   916 F. Supp. 1343 (D.N.J. 1996) ............................................................................ 14

*Butala v. Agashiwala*,
   916 F. Supp. 314 (S.D.N.Y. 1996) .......................................................................... 10

*Carrington v. New York City Human Res. Admin.*,
   2020 WL 2410503 (S.D.N.Y. May 12, 2020) ........................................................... 6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)...................................................................................... 7

*In re Colonial Ltd. P'ship Litig.*,
   854 F. Supp. 64 (D. Conn. 1994) ............................................................................ 14

*Cornwell v. Credit Suisse Grp.*,
   729 F. Supp. 2d 620 (S.D.N.Y. 2010)................................................................ 23, 24

*In re Cosi, Inc. Sec. Litig.*,
   379 F. Supp. 2d 580 (S.D.N.Y. 2005)...................................................................... 19

*Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*,
   2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ........................................................... 16

*Danmar Associates v. Porter*,
   43 Bankr. 423 (D. Conn. 1984)................................................................................ 14

*DeMaria v. Andersen*,
   153 F. Supp. 2d 300 (S.D.N.Y. 2001)........................................................................ 7

*Demiraj v. Uljaj*,
   137 Conn. App. 800, 50 A.3d 333 (2012) ............................................................... 18

*In re Deutsche Telekom AG Secs. Litig.*,
   2002 WL 244597 (S.D.N.Y. Feb. 20, 2002).......................................................16, 17

*Dingee v. Wayfair Inc.*,
   2016 WL 3017401 (S.D.N.Y. May 24, 2016) ...................................................... 20

*In re Direxion Shares ETF Tr.*,
   279 F.R.D. 221 (S.D.N.Y. 2012) ............................................................................ 15

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .................................................................................. 20

*E.F. Hutton & Co. v. Rousseff*,
   537 So.2d 978 (Fla. 1989) ...................................................................................... 18

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017) .................................................................................... 24

*United States v. Georgiou*,
   777 F.3d 125 (3d Cir. 2015) .................................................................................. 23

*Gerstner v. Sebig, LLC*,
   2010 WL 11545762 (W.D. Mo. Sept. 30, 2010) .................................................. 14

*GLK, L.P. v. Four Seasons Hotel Ltd.*,
   22 So. 3d 635 (Fla. Dist. Ct. App. 2009) .............................................................. 14

*Griffin v. PaineWebber, Inc.*,
   No. 99 CIV. 2292(VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001) ................. 17

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ............................................................................................... 19

*Hilliard v. Black*,
   125 F. Supp. 2d 1071 (N.D. Fla. 2000) ................................................................ 18

*Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012) .................................................................. 15

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v.*
   *Royal Bank of Scotland Grp., PLC*,
   783 F.3d 383 (2d Cir. 2015) .................................................................................. 12

*Keith v. Lighthouse Sec., Ltd.*,
   1997 WL 380430 (D. Conn. June 17, 1997) ........................................................ 13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018) .................................................................................... 25

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
   902 F. Supp. 2d 329 (S.D.N.Y. 2012) .................................................................. 12

*In re Med. Capital Sec. Litig.*,
   2010 WL 11508331 (C.D. Cal. Aug. 11, 2010) ...................................................... 7

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   2012 WL 1994707 (S.D.N.Y. June 4, 2012) .......................................................... 8

*Milan v. Wertheimer*,
   808 F.3d 961 (2d Cir. 2015) .................................................................................... 6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010) ............................................................................. 16, 20

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)...................................................................................... 3, 22, 23

*Nolfi v. Ohio Kentucky Oil Corp.*,
   675 F.3d 538 (6th Cir. 2012) ..................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015).................................................................................................. 21

*Pinter v. Dahl*,
   486 U.S. 622 (1988)................................................................................... 16, 17, 18

*In re Poseidon Concepts Sec. Litig.*,
   2016 WL 3017395 (S.D.N.Y. May 24, 2016) ...................................................... 23

*Rayner v. E\*TRADE Fin. Corp.*,
   248 F. Supp. 3d 497 (S.D.N.Y. 2017).................................................................... 6

*Rensel v. Centra Tech, Inc.*,
   2019 WL 2085839 (S.D. Fla. May 13, 2019) ...................................................... 17

*Richards v. Direct Energy Servs., LLC*,
   915 F.3d 88 (2d Cir. 2019).............................................................................. 24, 25

*Rotkiske v. Klemm*,
   140 S. Ct. 355 (2019) ................................................................................................ 7

*Saslaw v. Askari*,
   1997 WL 221208 (S.D.N.Y. Apr. 25, 1997)....................................................... 19

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013).................................................................. 23

*SEC v. Plexcorps, et al.*,
   17-CV-07007 (E.D.N.Y. Dec, 1, 2017) ............................................................. 10

*SEC v. REcoin Group Found. LLC et al.*,
   17-cv-05725 (E.D.N.Y Sep. 29, 2017) ............................................................... 10

*Securities and Exchange Commission v. W. J. Howey Co.*,
   328 U.S. 293 (1946)........................................................ 1, 2, 4, 5, 8, 9, 10, 11, 12

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................ 22

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
   2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)................................................... 16

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
   2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) ..................................................... 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011)................................................................... 23

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)...................................................................23

*Zakinov v. Ripple Labs, Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ...........................................18

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020)......................................................10

## Statutory Authorities/Rules

15 U.S.C. § 77e ............................................................................................7

15 U.S.C. § 77m ......................................................................................7, 15

15 U.S.C.A. § 77l(a)(1)................................................................................7

Ala. Code § 8-6-19(f).................................................................................13

Cal. Corp. Code § 25507............................................................................13

Conn. Gen. Stat. Ann. § 36b-29(f)..............................................................13

Fla. Stat. § 517.211 ..............................................................................14, 18

Md. Code Ann. Corps. & Ass'ns § 11-703(f)(2)(i) .....................................13

Me. Rev. Stat. tit. 32 § 16509(10)..............................................................13

Mich. Comp. Laws Ann. § 451.2509..........................................................13

Minn. Stat § 80A.76(j)(2) ..........................................................................13

Miss. Code Ann. § 75-71-509(j)(1) ............................................................13

Mo. Rev. Stat. § 409.5-509(j)(1)................................................................13

Mont. Code Ann. §30-10-307(5) ................................................................13

N.C. Gen. Stat. Ann. § 78A-56(f) ..............................................................13

SDCL § 47-31B-509(j) ..............................................................................13

Vt. Sta. Ann. tit. 9 § 5509 ..........................................................................13

Wis. Stat. Ann. § 551.509(10) ...................................................................13

Wyo. Sta. Ann. § 17-4-122(e).....................................................................13

## Rules and Regulations

Fed. R. Civ. P. 9(b) ...................................................................................10

Fed. R. Civ. P. 12(b)(6)............................................................................1, 6

## <u>Additional Authorities</u>

Hester Pierce, *"How We Howey," Securities Enforcement Forum*, May 9, 2019 ........................ 9

SEC Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of
   1934: The DAO, Exchange Act Release No. 81207 (July 25, 2017) ............................ 8, 9, 10

SEC, *Statement on "Framework for 'Investment Contract' Analysis of Digital Assets*,
   Apr. 3, 2019. ...................................................................................................................... 9

Defendants Quantstamp, Inc. ("Quantstamp"), Richard Ma, and Steven Stewart (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This case arises from the sale of QSP tokens ("QSP"), a cryptocurrency sold by Quantstamp in an "initial coin offering" ("ICO") in November 2017.  More than three years after the QSP ICO, Plaintiffs allege that the sale of QSP constituted the unlawful sale of an unregistered security, and that a "whitepaper" describing Quantstamp and providing information about QSP constituted a misleading "prospectus" because it did not disclose that QSP was a security, which it is not.  Based on these allegations, Plaintiffs offer a scattershot collection of federal and state causes of action, none of which is viable:

*First*, Plaintiffs' claims that Defendants failed to register QSP as a security—asserted nearly three years after the ICO—are time-barred under federal and state law.  The applicable statutes require Plaintiffs to bring "non-registration" claims within either one or two years of their most recent QSP purchase, depending on the applicable statute.  Plaintiffs filed this action in April 2020 alleging they made their last QSP purchase well over two years ago, in December 2017.  Plaintiffs' claims are therefore time-barred regardless of which limitations period applies.

Plaintiffs attempt to avoid the dispositive impact of the plain limitations periods by asserting that they could not have known QSP was a security (which it is not) until April 2019, when the Staff at the Securities and Exchange Commission ("SEC") released a "Framework" that discussed factors to consider in assessing whether particular tokens might be securities under the Supreme Court's 1946 decision in *SEC v. W.J. Howey Co.*

This straw-grasping assertion fails to save their claims.  The applicable federal and Connecticut statutes reject any notion that the limitations periods are tolled until discovery of a cause

of action.  And the applicable Blue Sky statute in Florida—the only other potentially relevant jurisdiction—requires a plaintiff to plead that *facts* necessary to assert the applicable causes of action were concealed in order to toll the limitations period.  The Framework effected no change in the law nor claimed any change in the SEC's position, and plainly could not have revealed previously concealed *facts* about Plaintiffs' case.  It merely offered guidance on applying the well-known *Howey* standard, which was established during the Truman Administration.  And, regardless, the SEC definitively announced in July 2017— *before* Plaintiffs' purchases—that digital tokens may be securities.

Similarly, Plaintiffs plead nothing that supports equitable estoppel; far from alleging that Defendants concealed pertinent facts, Plaintiffs allege that it is Quantstamp's own contemporaneous public statements that "prove" Plaintiffs' claim that QSP tokens constitute securities.  Thus, Plaintiffs' own allegations doom any claim of "fraudulent concealment."

*Second*, Plaintiffs' Section 12(a)(2) "prospectus" liability claims are untimely because, although subject to a discovery rule, Plaintiffs' own allegations reveal that the purported "proof" of the false statements and omissions in the purported "prospectus" was available at the time of the ICO, well over a year before Plaintiffs filed this action.

*Third*, Plaintiffs' federal and state claims fail because they cannot establish that Defendants were "statutory sellers" under Section 12(a)(1) or 12(a)(2) of the Securities Act or their state counterparts.  Specifically, Plaintiffs concede that Defendants never sold QSP directly to them, and fail to allege that Defendants successfully solicited Plaintiffs' purchase of QSP.

*Fourth*, Plaintiffs' Section 12(a)(1) and 12(a)(2) claims fail because they do not apply to purchases in secondary markets, and Plaintiffs admit that all of their purchases were made only in the secondary markets.

*Fifth*, Plaintiffs' Section 12(a)(2) claims fail for the additional, independent reason that Plaintiffs fail to allege a single actionable misrepresentation or omission.

*Sixth*, Plaintiffs purchased QSP exclusively from foreign exchanges.  Pursuant to *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), United States securities laws do not apply to such transactions, and therefore Plaintiffs' causes of action under federal law may be dismissed for this independent reason.

*Finally*, Plaintiffs cannot pursue Blue Sky claims outside of Connecticut and Florida because Plaintiffs do not allege that they purchased QSP tokens in any other states, as necessary under the relevant laws and the Dormant Commerce Clause of the United States Constitution.

For all of these reasons, this Court should dismiss this action with prejudice.

## FACTUAL BACKGROUND

Quantstamp is a software development company that develops blockchain security solutions. ECF No. 27 ("Compl." or "Complaint") ¶ 20.  Between November 17-19, 2017, Quantstamp issued QSP tokens through an ICO.  ¶ 60.  Unlike many other blockchain-related companies that conducted ICOs, Quantstamp conducted its offering pursuant to Regulation S and Regulation D of the Securities Act.  As was publicly disclosed at the time, Quantstamp sold approximately 65 percent of the total QSP tokens in the ICO and retained 35 percent of the tokens, most of which were retained for the Quantstamp team and advisors.  Compl. ¶¶ 60, 95.

Prior to its ICO, as is customary, Quantstamp released a "whitepaper"[1] that described QSP's functionality and Quantstamp's technological goals.  ¶ 58.  Plaintiffs allege that this "whitepaper" as well as certain post-ICO actions, including posting and "re-tweeting" Twitter posts regarding Quantstamp, and attending blockchain conferences, constituted purported "solicitations" to purchase

---

[1] *See* Declaration of Corey Worcester dated Nov. 13, 2020, Ex. 1 ("whitepaper").

QSP tokens.  Compl. ¶¶ 58-66.  The two named Plaintiffs—Matthew Kuzmeskas and Brett Messieh—do not allege that they purchased QSP tokens in the ICO, nor that they read, heard, or were even aware of any of the alleged "solicitations" when they purchased QSP tokens between November 26, 2017 and December 31, 2017.  Plaintiffs plead they made these purchases on the Binance exchange, a foreign cryptocurrency exchange. *Id*. ¶¶18-19; ECF No. 27-1; ECF No. 27-2.

Plaintiffs allege that Quantstamp's whitepaper, as well as other public information from the time of Quantstamp's ICO, proves that QSP was actually a security under the Supreme Court's 1946 decision in *SEC v. W.J. Howey Co*.  Compl. ¶¶ 79-111.  For example, Plaintiffs allege that (i) "Quantstamp conveyed in its whitepaper that at the time of the ICO in November 2017, the underlying technological success of the project and the corresponding value of QSP tokens were in the hands of Quantstamp's development team;" (ii) Quantstamp "emphasized in its whitepaper that the future functionality of its protocol would exponentially increase demand for QSP tokens;" and (iii) "purchasers of pre-functional tokens . . . necessarily rely on the managerial efforts," and therefore Quantstamp's management's "biographies were featured in the QSP whitepaper and were held out to be integral parts of the success of QSP," all of which Plaintiffs claim proves that QSP tokens are securities.  Compl. ¶¶ 88, 100, 104, 108.  Because, according to Plaintiffs, QSP tokens are securities, Defendants supposedly wrongly sold unregistered securities in violation of federal and state law.  Compl. ¶ 4.

Notably, the very same Amended Complaint that relies upon statements in the whitepaper to prove QSP tokens are securities also alleges that the whitepaper simultaneously *concealed* the fact that QSP tokens are securities.  Compl. ¶¶ 116-122.  For example, Plaintiffs allege that Defendants concealed that token purchasers "were investing in Defendants' efforts" but also allege that the whitepaper "held out" management as "integral parts of the success of QSP."  *Compare* Compl.

¶ 117 *with* Compl. ¶ 108.  Plaintiffs allege Defendants concealed the extent to which Quantstamp could, at the time of the whitepaper, "perform[] decentralized security audits," even though the whitepaper itself disclosed that the foundation for such technology was "being developed" and would not be built until January 2018.  *Compare* Compl. ¶¶ 119-120 *with* Compl. ¶ 88; whitepaper at 10.  And Plaintiffs allege that Defendants fraudulently concealed that they personally held tokens and would profit from their sale, yet also allege that Quantstamp's ICO *disclosed* that "Quantstamp's Team & Advisors were personally allocated 20 percent of the QSP tokens, thus benefitting from holding the same digital asset as the purchasers."  *Compare* Compl. ¶ 95 *with* Compl. ¶¶ 148, 150.  Plaintiffs claim that these "misrepresentations" and "omissions" both excuse any delay in filing this action and support a claim under Section 12(a)(2) of the Securities Act for material misstatements and omissions in connection with the whitepaper, which Plaintiffs falsely contend was a "prospectus" under the federal securities laws.  *Id.* ¶¶ 121; 144-156.

Although not alleging when these purported misrepresentations and omissions in the whitepaper were revealed, Plaintiffs allege that they did not become aware that QSP tokens are securities until April 3, 2019, when the staff of the SEC released a non-binding "Framework" for analyzing cryptocurrencies.  *Id.* ¶¶ 13, 75.  Plaintiffs do not allege how the supposed fraudulent concealment has anything to do with the SEC Staff's Framework or with Plaintiffs' benchmark April 3, 2019 date.  Plaintiffs do not allege that the Framework revealed any of the alleged misrepresentations or omissions, nor do Plaintiffs allege that the Framework altered the governing test—the *Howey* test—for whether a cryptocurrency token constitutes a security.

## PROCEDURAL HISTORY

Chase Williams filed this case on April 3, 2020.  ECF No. 1.  On the same date, counsel for Plaintiff Williams filed ten other actions against cryptotoken issuers and exchanges, all of which

alleged unlawful sale of securities.[2]  Current lead Plaintiffs Brett Messieh and Matthew Kuzmeskas sought appointment as lead Plaintiffs on June 8, 2020, ECF No. 22, which the Court granted on September 14, 2020.  ECF No. 29.  Plaintiffs filed the Amended Complaint on September 11, 2020.  ECF No. 27.

## **LEGAL STANDARD**

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Carrington v. New York City Human Res. Admin.*, 2020 WL 2410503, at *2 (S.D.N.Y. May 12, 2020) (Preska, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss, a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted).  Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory."  *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) (internal citation and quotation marks omitted).

A court "may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken" in deciding a motion to dismiss.  *Rayner v. E*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 500 (S.D.N.Y. 2017) (citing

---

[2] The other ten actions are: *Lee, et al. v. Binance, et al.*, 1:20-cv-02803-ALC (S.D.N.Y.); *Clifford, et al. v. Tron Foundation, et al.*, No. 1:20-cv-02804-VSB (S.D.N.Y); *Williams, et al. v. HDR Global Trading Limited, et al.*, No. 1:20-cv-02805-ALC (S.D.N.Y.); *Williams v. KuCoin, et al.*, No. 1:20-cv-02806-GBD (S.D.N.Y.); *In re Bibox Grp. Holdings Ltd. Secs. Litig.*, No. 1-20-cv-2807-DLC (S.D.N.Y.); *Williams, et al. v. Block.One et al.*, No. 1-20-cv-02809-LAK (S.D.N.Y.); *Zhang v. BProtocol Foundation, et al.*, No. 1-20-cv-02810-AKH (S.D.N.Y.); *Zhang, v. Civic Technologies, Inc. et al.*, No. 1-20-cv-02811-AT (S.D.N.Y.); *Clifford v. KayDex Pte. Ltd., et al.*, No. 1:20-cv-02812-RA (S.D.N.Y.); and *Clifford v. Status Research & Development GmbH, et al.*, No. 1:20-cv-02815-NRB (S.D.N.Y.).

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd*, 899 F.3d 117 (2d Cir. 2018).

## ARGUMENT

### I.   PLAINTIFFS' NON-REGISTRATION CLAIMS ARE UNTIMELY

#### A.   Plaintiffs' Section 12(a)(1) Claims Are Barred By The Relevant Statutes Of Limitations

Section 5 of the Securities Act makes it unlawful to offer or sell securities that are not registered with the SEC barring an applicable exemption.  15 U.S.C. § 77e.  Section 12(a)(1) of the Securities Act provides that anyone who offers or sells a security in violation of Section 5 is liable to the person purchasing such security from him.  *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 306-307 (S.D.N.Y. 2001) (citing 15 U.S.C.A. § 77*l*(a)(1)), *aff'd,* 318 F.3d 170 (2d Cir. 2003).

The Securities Act provides that a claim under Section 12(a)(1) is untimely "unless brought within one year after the violation upon which it is based."  15 U.S.C. § 77m.  Section 12(a)(1)'s statute of limitations is not subject to a "discovery rule."  *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012); *see also*, *e.g.*, *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010) ("As the text demonstrates, § 12(a)(1) is not subject to a discovery rule.").  Indeed, "the fact that the statute plainly fails to include a discovery rule for § 12(a)(1)—when juxtaposed with a provision within the same sentence specifically allowing it for § 12(a)(2)—shows that Congress intended to negate equitable tolling in this context."  *Nolfi*, 675 F.3d at 553; *In re Med. Capital Sec. Litig.*, 2010 WL 11508331, at *3 (C.D. Cal. Aug. 11, 2010) ("[W]hile the statute of limitations for Section 12(a)(2) tolls from the date of the discovery, the statute of limitations for Section 12(a)(1) tolls from the date of the violation."); *see also Rotkiske v. Klemm,* 140 S. Ct. 355, 360 (2019) (holding no discovery rule applied to statute that "clearly states that an FDCPA action 'may be brought . . . within one year from the date on which the violation

occurs'" since "[t]hat language unambiguously sets the date of the violation as the event that starts the one-year limitations period"). Thus, regardless of when an investor "discovered" his or her claim, an action under Section 12(a)(1) is untimely if brought "more than one year after the purchase of the securities at issue." *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *4 (S.D.N.Y. June 4, 2012) (Preska, J.).

Here, Plaintiffs Kuzmeskas and Messieh allege that their last purchases were on December 31, 2017 and November 29, 2017, respectively. ECF No. 27-1; ECF No. 27-2. The initial complaint in this action was not filed until April 3, 2020, or more than two years after Plaintiffs' last purchases. Accordingly, Plaintiffs' Section 12(a)(1) claims are barred by the one-year statute of limitations.

### B. Plaintiffs Cannot Toll the Applicable Statutes of Limitations

Even if the statute of limitations for Section 12(a)(1) claims were subject to equitable tolling, (which it is not), Plaintiffs still would not be able to maintain their claim. Plaintiffs appear to argue their action is not untimely because (i) they did not "discover" their claims until the SEC staff issued "Framework" guidance in 2019, and (ii) Quantstamp "fraudulently concealed" information about QSP. As discussed below, both arguments fail.

#### 1. The April 2019 Framework Did Not Reveal Any New Information

The *Howey* test, which Plaintiffs misapply to make QSP a security, has been the operative standard for determining whether an instrument is an investment contract for *nearly 75 years*. *See Securities and Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293 (1946). The same test has been applied to cryptotokens, such as QSP, since mid-2017 *at the latest*. *See, e.g.*, SEC Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, Exchange Act Release No. 81207 (July 25, 2017) (the "DAO Report") (applying *Howey* to DAO Tokens).

Consequently, the SEC's "Framework" effected no change in the law and disclosed no concealed facts, and therefore could not toll any statute of limitations.

Plaintiffs' contention that it was not clear whether QSP could be a security until the publication of the Framework *staff* guidance in April 2019 fails. First, the Framework is merely staff guidance that is not approved by the Commission, and is not the legal standard for determining whether contracts involving digital tokens are securities. Nothing in the Framework alters *Howey* as the definitive test for investment contracts, which Plaintiffs contend QSP tokens are. In fact, the Framework explicitly disclosed that it "[i]s not a rule, regulation, or statement of the Commission, and the Commission has neither approved nor disapproved its content," and that it "does not replace or supersede existing case law, legal requirements, or statements or guidance from the Commission or Staff." SEC*, Statement on "Framework for 'Investment Contract' Analysis of Digital Assets*, Apr. 3, 2019, at n.1, *available at https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets*. Far from representing the view of the Commission, Commissioner Hester Peirce has referred to the Framework as a "Jackson Pollock approach to splashing lots of factors on the canvas without any clear message[.]" Hester Peirce, *"How We Howey," Securities Enforcement Forum*, May 9, 2019, *available at https://www.sec.gov/news/speech/peirce-how-we-howey-050919*.

Second, Plaintiffs' contention simply ignores the daylight-clear statements made by the Commission itself in July 2017 that digital tokens may be securities under the *Howey* standard. In the DAO Report, the Commission—not just staff—issued a report on an investigation into the distribution of a digital token. The Commission explained that "[t]he investigation raised questions regarding the application of the U.S. federal securities laws to the offer and sale of DAO Tokens, including the threshold question of whether DAO Tokens are securities." DAO Report at 1. Before applying the *Howey* test to the DAO tokens, the DAO Report explains, "the Commission considers

the particular facts and circumstances of the offer and sale of DAO Tokens to demonstrate the application of the existing U.S. federal securities laws to this new paradigm." DAO Report at 10. Therefore, Plaintiffs, and indeed the whole world, were on notice no later than July 2017 that the SEC may consider digital tokens to be securities and the *Howey* test as the applicable inquiry.

Finally, Plaintiffs can do nothing with the fact that since the DAO Report, the Commission has brought dozens of enforcement actions against ICO issuers on the grounds that the token constituted a security under *Howey*. In fact, before Plaintiffs even completed purchasing their QSP, the Commission had already filed three actions against digital tokens for at least in part failing to register the tokens as securities. *See SEC v. REcoin Group Found. LLC et al.* 17-cv-05725 (E.D.N.Y Sep. 29, 2017); *SEC v. Plexcorps*, *et al*. 17-CV-07007 (E.D.N.Y. Dec, 1, 2017); *In re Matter of Munchee Inc.*, File No. 3-18304 (December 11, 2017); *see also* https://www.sec.gov/ICO (listing ICO-related cases).

2.     Plaintiffs Fail To Allege Fraudulent Concealment

To satisfy the doctrine of fraudulent concealment, a plaintiff must plead, "with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996). These elements must meet the standards of FRCP 9(b). *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y. 2020). Plaintiffs fail to identify any *facts* that Defendants supposedly concealed, much less fraudulently.

Here, Plaintiffs do not allege that Quantstamp ever suggested that it would register QSP with the SEC. And although Plaintiffs, in conclusory fashion, claim that Defendants "fraudulently concealed" facts regarding the nature of QSP, Plaintiffs' own allegations reveal this is false. For

10

example, Plaintiffs claim that it was concealed from them that "they were investing in Defendants' efforts."  Compl. ¶ 117.  But Plaintiffs simultaneously allege, in the section of their complaint focused on alleging that QSP is a security, that "Stewart and Ma's biographies were featured in the QSP whitepaper and were *held out to be integral parts of the success of QSP*," and that "Quantstamp *represented that it would provide significant managerial efforts* to achieve [Quantstamp's] objectives and make QSP a success."  Compl. ¶¶ 108, 111.

Similarly, Plaintiffs allege that Defendants fraudulently concealed that, at the time of the whitepaper, Quantstamp purportedly could not "perform[] decentralized security audits."  Compl. ¶¶ 118-120.  Plaintiffs make no attempt to explain how this purported "concealment" impacts the *Howey* analysis.  Regardless, the whitepaper itself discloses that "[t]he foundation" for such decentralized security audits was a "Validator Node" that was "*being developed*," *i.e.*, not currently available.  Whitepaper at 10 (emphasis added).  Quantstamp further disclosed in the whitepaper that the "Validator Node" was not even planned to be built until January 2018.  Compl. ¶ 88.  Thus, Plaintiffs cannot plausibly allege, let alone allege with particularity, that there was fraudulent concealment with respect to Quantstamp's ability to perform decentralized security audits even if that did somehow impact the *Howey* analysis.[3]

Finally, Plaintiffs claim that Defendants "fraudulently concealed" the fact that QSP was a security by stating that QSP tokens "are not intended to constitute securities in any jurisdiction." Compl. ¶ 117.  Plaintiffs' allegations make clear, however, that the information supporting each of the allegations that Plaintiffs use to argue that QSP *is* a security were available to Plaintiffs at the time of purchase.  *See, e.g.*, Compl. ¶ 85 (alleging first *Howey* factor, investment of money, satisfied

---

[3]  Further, because Plaintiffs do not allege—and certainly not with particularity—when the "truth" regarding Quantstamp's capabilities purportedly came to light, they fail to plead how the

because "[i]nvestors invested traditional and other digital currencies . . . to purchase the QSP tokens"); *id.* ¶ 88 (alleging second *Howey* factor, participation in common enterprise, satisfied because "Quantstamp conveyed in its whitepaper that at the time of the ICO in November 2017, the underlying technological success of the project and the corresponding value of QSP tokens were in the hands of Quantstamp's development team"); *id.* ¶ 100 (alleging third *Howey* factor, reasonable expectation of profit, satisfied because "investors in the Quantstamp tokens made their investment with a reasonable expectation of profits" due to, among other things, Quantstamp's "emphasi[s] in its whitepaper that the future functionality of its protocol would exponentially increase demand for QSP tokens"); *id.* ¶¶ 104, 108 (alleging fourth *Howey* factor, reliance on managerial efforts, satisfied because "purchasers of pre-functional tokens ***necessarily rely*** on the managerial efforts," and Quantstamp's management's "biographies were featured in the QSP whitepaper and were ***held out to be integral parts of the success of QSP***) (emphases added).

Plaintiffs cannot have it both ways. They cannot rely on Defendants' public statements to allege that QSP tokens are securities and simultaneously allege that those very statements also "fraudulently concealed" the fact that QSP tokens are securities. Plaintiffs must either forfeit their allegations that QSP tokens are a security, which they are not, or admit that this action is untimely, which it is.[4]

---

purported fraudulent concealment prevented them from discovering their alleged claim, or what due diligence they undertook to discover it.

[4] Even if Plaintiffs had adequately alleged "fraudulent concealment"—they do not— Plaintiffs' failure to plead when the "truth" regarding QSP's structure came to light means they also fail to "affirmatively plead compliance with the [Securities Act's] statute of limitations," which they are required to do "because it is a substantive element of the cause of action." *See Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 346 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, PLC, 783 F.3d 383 (2d Cir. 2015).

**C.    Plaintiff Kuzmeskas's Connecticut Blue Sky Claims Are Barred By The Relevant Statute Of Limitation**

A claim under Conn. Gen. Stat. §36b-29 is untimely if brought "more than two years after the date of the contract of sale."  Conn. Gen. Stat. Ann. § 36b-29(f); *Keith v. Lighthouse Sec., Ltd.*, 1997 WL 380430, at *7 (D. Conn. June 17, 1997) ("With respect to plaintiffs' claims based on the sale of unregistered securities . . ., this claim is governed by the two year statute of limitation period . . . .").  The longest possible limitations period for Plaintiffs' claim is therefore two years from the date of their last purchase.  As noted above, Plaintiff Kuzmeskas last purchased QSP on December 31, 2017, but the initial complaint in this action was not filed until April 3, 2020—more than two years later.  Plaintiff Kuzmeskas's Connecticut Blue Sky claims are therefore time-barred.[5]

Any "fraudulent concealment" argument Plaintiffs might assert would fail under Connecticut's Blue Sky laws.  Under Connecticut law, Plaintiffs must allege that Defendants concealed Plaintiffs' causes of action with the "fraudulent intent of inducing a delay in suing until

---

[5]    Like Plaintiffs' Connecticut Blue Sky claims, numerous other Blue Sky claims have a non-discovery based statute of limitations of fewer than two years.  All of those claims should be dismissed for the same reason.  *See, e.g.*, Ala. Code § 8-6-19(f) (within two years from sale), A.R.S § 44-2004A (within one year after the violation); Cal. Corp. Code § 25507 (within two years after the violation); Colo. Rev. Stat. § 11-51-604(8) (within two years after the sale); D.C. Code Ann. § 31-5606.05 (f)(2)(A) (within one year after the violation); Ga. Code. Ann. § 10-5-58(j)(1) (within two years after the violation); HRS § 485A-509(j)(1) (within one year after the violation); I.C. § 30-14-509(j)(1) (within one year after the violation); I.C.A. § 502.509(10) (within one year after the violation); Kan. Sta. Ann. § 17-12a509(j)(1) (within one year after the violation); La. Stat. Ann. § 51:714(C)(1) (within two years after the sale); Me. Rev. Stat. tit. 32 § 16509(10) (within two years after the violation); Md. Code Ann. Corps. & Ass'ns § 11-703(f)(2)(i) (within one year after the violation, or within three years after sales, *whichever is earlier*); Mich. Comp. Laws Ann. § 451.2509 (within one year after the violation); Minn. Stat § 80A.76(j)(2) (within one year after the violation); Miss. Code Ann. § 75-71-509(j)(1) (within one year after the violation); Mo. Rev. Stat. § 409.5-509(j)(1) (within one year after the violation); Mont. Code Ann. §30-10-307(5) (within two years after the violation); N.C. Gen. Stat. Ann. § 78A-56(f) (within two years after the violation); Okla. Sta. Ann. tit. 71 § 1-509(J) (within one year after the violation); 10 L.P.R.A. § 890(e) (within two years after the sale); SDCL § 47-31B-509(j) (within one year after the violation); Vt. Stat. Ann. tit. 9 § 5509 (within one year after the violation); Wis. Stat. Ann. § 551.509(10) (within one year after the violation); Wyo. Sta. Ann. § 17-4-122(e) (within two years after the sale).

the limitations period had expired." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 89 (D. Conn. 1994) (quoting *Danmar Assocs. v. Porter*, 43 Bankr. 423, 429 (D. Conn. 1984)).  Plaintiffs do not even attempt to allege facts that might meet this standard, which is "more exacting . . . than the federal equitable tolling doctrine."  *Id.*

### D.    Plaintiff Messieh's Florida Blue Sky Claims Are Barred By The Relevant Statute Of Limitations

Although Florida's Blue Sky law provides for a discovery rule under certain circumstances, Florida courts have expressly rejected it for the non-registration claims Plaintiffs assert here. Specifically, the statute of limitations in Section 517.211 of Florida's Blue Sky law runs for two years from "discovery of the facts giving rise to the cause of action," Fla. Stat. § 517.211, but Florida courts recognize the basic logic that "a seller of securities cannot conceal the fact that the securities he sells are not registered."  *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 638 (Fla. Dist. Ct. App. 2009).  "[T]he discovery rule has little justification in the nonregistration setting," because the "discovery" of the cause of action and the "date of purchase" are the same.  *Id.*; *see also Gerstner v. Sebig, LLC*, 2010 WL 11545762, at *2 (W.D. Mo. Sept. 30, 2010), *aff'd*, 426 F. App'x 470 (8th Cir. 2011) ("[T]he policy behind tolling does not apply to nonregistration claims because a defendant cannot prevent a purchaser from discovering the registration status of a security"); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1353 (D.N.J. 1996) (similar).  Thus, even under Florida's "discovery" rule, the two-year statute of limitations runs, at the latest, from Plaintiff Messieh's November 29, 2017 QSP purchase, which took place more than two years before the filing of the initial complaint in this action.[6]

---

[6] Further, as noted above, *see* Argument § I.B, Plaintiffs fail to allege that the facts on which they rely to allege that QSP is a security were unavailable as of the dates of their purchases.

## II.    PLAINTIFFS' SECTION 12(A)(2) CLAIMS ARE UNTIMELY

Plaintiffs allege that the same allegations that purportedly "fraudulently concealed" Plaintiffs' non-registration claims, *i.e.*, allegations regarding the extent to which Quantstamp could perform certain "automated audits" and the nature of the QSP tokens, also give rise to "prospectus liability" under Section 12(a)(2) of the Securities Act.  As explained below, *see* Argument § V, Plaintiffs fail to adequately allege any misrepresentation, but even if they did, the Section 12(a)(2) claim is untimely.

Under Section 13 of the Securities Act, a claim under Section 12(a)(2) is untimely unless "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m. Because the statute of limitations is a substantive element of the Securities Act, Plaintiffs must affirmatively plead compliance.  *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012).  Thus, Plaintiffs must allege "(1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts which plaintiff undertook in making or seeking such discovery." *Id.* at 565; *see also In re Direxion Shares ETF Tr.*, 279 F.R.D. 221, 231 (S.D.N.Y. 2012) ("For Securities Act claims, a plaintiff must allege the time and circumstances of his discovery of the material misstatement or omission upon which his claim is based").

Here, Plaintiffs make no attempt to allege when the purportedly misleading representations and omissions were discovered.  Thus, Plaintiffs have failed to satisfy their obligation to plead compliance with the statute of limitations.  Plaintiffs' failure is not surprising.  As noted above, *see* Argument § I.B, all of the allegations Plaintiffs rely upon for their claim that QSP tokens are securities (and thus all of the allegations they rely upon for their claim that the whitepaper contained

actionable misstatements or omissions) were available at the time of the ICO.  Accordingly, Plaintiffs' Section 12(a)(2) claim is untimely.

## III.   DEFENDANTS WERE NOT "STATUTORY SELLERS" AND THEREFORE COULD NOT BE LIABLE UNDER PLAINTIFFS' SECTION 12 CLAIMS

### A.   Defendants Were Not "Statutory Sellers" Under The Securities Act

Liability under both Sections 12(a)(1) and 12(a)(2) of the Securities Act is limited to the narrow set of defendants who can be termed "statutory sellers."  *Pinter v. Dahl*, 486 U.S. 622, 643-47 & n. 21 (1988).  A defendant qualifies as a "statutory seller" "if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'"  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter*, 486 U.S. at 642, 647).

To satisfy the first requirement of the *Pinter* test, a plaintiff must allege that he was in privity with the defendant, and actually purchased his shares directly from the defendant.  *Pinter*, 486 U.S. at 644 n.21; *see also Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack standing under the first prong of *Pinter*."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) ("As plaintiff has alleged only that NACC was 'part of the chain of title' and not that NACC directly sold the Certificates to it, plaintiff cannot satisfy the first prong of *Pinter*.").  To plead the second requirement, a plaintiff must adequately allege "direct contact" with the defendant, *In re Deutsche Telekom AG Secs. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002), including that the defendant "actively solicited investors" and that plaintiff "purchased the securities as a result of [defendant's] solicitation."  *Steed Fin. LDC*, 2001 WL 1111508, at *7.

Plaintiffs here plead neither requirement under *Pinter*.  First, neither Plaintiff alleges, even in conclusory fashion, that any Defendant passed title to them.  In fact, the Amended Complaint alleges that Quantstamp sold QSP only on November 17-19, 2017, Compl. ¶ 60, and that Plaintiffs' first purchases of QSP did not occur until November 26, 2017.  And Plaintiffs allege those purchases took place through a foreign secondary market exchange, ECF No. 27-1 at 7, ECF No. 27-2, Compl. ¶¶ 18-19, not in privity with Defendants.

Second, Plaintiffs fail to plead that any Defendant solicited their purchases.  The 186-page Amended Complaint contains sparse and conclusory allegations regarding any purported "solicitation" at all, consisting largely of a "whitepaper" and certain posts on Twitter, Compl. ¶¶ 58-66.[7]  Plaintiffs must allege, however, that they were "direct[ly]" solicited by Defendants and that these solicitations resulted in their purchases.  *In re Deutsche Telekom*, 2002 WL 244597, at *5.  Plaintiffs make no such allegation at all.  Indeed, they do not even allege they were aware of the insufficient "solicitations" noted above at the time they purchased QSP, let alone that those solicitations were the reason for their purchases.  *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing Section 12 claim because although plaintiff "describes solicitation activities by [defendant] as they affected other putative plaintiffs, [] he does not allege that [defendant] was directly involved in the actual solicitation of ***his purchase***") (emphasis added); *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing Section 12(a)(1) claim for alleged unlawful sale of CRT Tokens where no allegations that purported solicitation of unregistered cryptocurrency on Twitter "was a successful solicitation . . . or that

---

[7] Plaintiffs also allege that Quantstamp's website served as a "continuous form of solicitation" because "[b]eginning in November 2018" it contained "blog posts focusing on QSP and otherwise touting the success of Quantstamp and QSP."  Compl. ¶ 65.  But November 2018 is *after* all of Plaintiffs' purchases, and therefore cannot, logically or legally, qualify as the solicitation of

Plaintiffs even saw the posts").[8]  Plaintiffs therefore fail to satisfy either prong of *Pinter*, and their claims under Sections 12(a)(1) and 12(a)(2) should be dismissed.

> **B.      Defendants Were Not "Statutory Sellers" Under The Relevant Blue Sky Laws**

Florida and Connecticut have applied the *Pinter* test to their Blue Sky laws.  *See, e.g., Hilliard v. Black*, 125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) (ruling *Pinter* test applicable to claims under Fla. Stat. § 517.211); *Demiraj v. Uljaj*, 50 A.3d 333, 339 n.6 (2012) ("[W]e consider and find instructive the Supreme Court's reasoning in *Pinter*."); *see also E.F. Hutton & Co. v. Rousseff*, 537 So.2d 978, 981 (Fla. 1989) *answer to certified question conformed to* 867 F.2d 1281 (11th Cir. 1989) (effect of § 517.211 is similar to that of Section 12 of the Securities Act).  Plaintiffs must therefore demonstrate that Quantstamp passed title to them, or successfully solicited their purchase, to state claims under either state's laws.  For the reasons described above, they fail to do so, and Plaintiffs' Florida and Connecticut Blue Sky law claims should be dismissed for this reason as well.

## IV.      DEFENDANTS ARE NOT LIABLE FOR SECONDARY MARKET PURCHASES

Plaintiffs allege that Defendants violated Section 12(a)(2) by making allegedly misleading misstatements in the QSP "whitepaper," which Plaintiffs allege constitutes a "prospectus."  As detailed in Section V, below, Plaintiffs fail to allege any actionable misstatements in the whitepaper.  The Court need not reach that issue, however, because Plaintiffs do not have standing to pursue their Section 12(a)(2) claim.

---

those purchases.  Further, the sole blog post referenced in the complaint does not mention QSP at all. It merely mentions the achievements of the company.

[8] Plaintiffs will be unable to rely on *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) for the proposition that general solicitations, such as Twitter messages, can be sufficient, because Plaintiffs have not alleged that they were actually solicited by any such tweet (or any other purported solicitation).

It is well-established that, following the Supreme Court's decision in *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), plaintiffs may not assert Section 12(a)(2) claims arising from "secondary market" transactions. *See, e.g.*, *Saslaw v. Askari*, 1997 WL 221208, at *6 (S.D.N.Y. Apr. 25, 1997) (Preska, J.) ("Courts within this circuit have consistently interpreted Gustafson to exclude purchasers in private or secondary market offerings from bringing actions under § 12(2)"); *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) ("Well reasoned opinions in this Circuit after *Gustafson* have . . . interpreted *Gustafson* to preclude purchasers in private or ***secondary transactions*** from bringing actions pursuant to § 12(a)(2) based on those purchases.") (emphasis added).  Instead, only purchasers who bought in the offering have standing.

The same is true with respect to Section 12(a)(1) claims which, like Section 12(a)(2) claims, may not be brought by aftermarket purchases.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 572 (1995) (claims under Section 12(a)(2) should be restricted to public offerings, as opposed to secondary market transactions, to bring Section 12(a)(2) in line with Section 12(a)(1) and Section 11); *id.* at 600 n.4 (Ginsburg, J., dissenting) ("There is no dispute that [Section 12(a)(1)] appl[ies] only to public offerings."); *see also Saslaw v. Askari*, 1997 WL 221208, at *5 (S.D.N.Y. Apr. 25, 1997) (Preska, J.) ("The primary concern of the 1933 Act was the protection of the public through the regulation of initial offerings.")

Here, Plaintiffs do not allege that they bought their shares in the ICO.  Rather, they allege that they made all of their purchases in secondary markets.  Compl. ¶¶18-19; ECF No. 27-1; ECF No. 27-2.  Plaintiffs therefore cannot pursue their Section 12(a)(2) or Section 12(a)(1) claims.

## V.   PLAINTIFFS DO NOT ALLEGE ANY MISREPRESENTATIONS OR OMISSIONS IN THE "WHITEPAPER"

Section 12(a)(2) creates liability for "material misstatements or omissions" made in prospectuses.  *In re Morgan Stanley*, 592 F.3d at 359.  A fundamental requirement for Section

12(a)(2) liability, of course, is a prospectus that "include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." *Id.* (quoting 15 U.S.C. § 77*l*(a)(2)). A misstatement or omission is "material" if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). Thus, "[w]here allegedly omitted information is in fact readily accessible in the public domain," its omission is immaterial as a matter of law and "a defendant may not be held liable for failing to disclose this information." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *Dingee v. Wayfair Inc.*, 2016 WL 3017401, at *4 (S.D.N.Y. May 24, 2016) (similar).

Here, Plaintiffs allege that there are two categories of alleged misstatements in the whitepaper. Even assuming the whitepaper constitutes a "prospectus"—which is a dubious proposition—neither category includes any statement that is alleged to be materially misleading. Further, the whitepaper itself discloses the allegedly omitted information.

### A.     Alleged Misstatements Concerning QSP's Technology

First, Plaintiffs make the wholly conclusory allegation that the whitepaper falsely stated the "Quantstamp protocol" contained "decentralized security audit functionality." Compl. ¶ 147. As noted above, however, *see* Argument § I.B.2, the whitepaper, which by definition in the cryptocurrency space is a statement of intention, clearly disclosed that the core technology necessary to support any "decentralized security audit functionality" was "being developed by Quantstamp" and that Quantstamp did not intend to build the relevant technology until January 2018. Whitepaper at 6, 10. Thus, there was no misleading statement concerning the QSP's existing functionality.

B.     **Alleged Misstatements Concerning Whether the Tokens were Securities**

Second, Plaintiffs claim that the whitepaper's disclaimer that QSP tokens "are not intended to constitute securities in any jurisdiction" is false and misleading because it purportedly did not disclose (i) "the value and utility of QSP[] was linked to the success of Quantstamp's efforts;" (ii) "Individual Defendants would individually profit from the proceeds of the QSP offerings;" and (iii) that "the Individual Defendants intended to (and did) hold substantial quantities of QSP even after the initial offerings."  Compl. ¶¶ 148-50.  This is wrong.

The whitepaper's statement that QSP tokens are not intended to constitute securities is a statement of opinion.  To plead that an opinion is "false," Plaintiffs must allege either that (i) the statements were both objectively false and subjectively false (*i.e.*, not genuinely believed at the time they were made), *see Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185-186 (2015), or (ii) that the defendant omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself.  *Id.* at 189.  Plaintiffs do not even attempt to allege subjective falsity.  Therefore, Plaintiffs must allege that the omitted information conflicts with what a reasonable investor would take from the statement itself.  But Plaintiffs do not allege any such facts.  For example, Plaintiffs do not allege that Defendants failed to make such an assessment "without having consulted a lawyer."  *Id.* at 188. Nor do Plaintiffs allege that Defendants received "contrary advice" from a lawyer regarding whether the QSP tokens should be classified as securities.  *Id.* at 188.  Thus, Plaintiffs cannot allege that the statement of opinion regarding the legal status of QSP tokens was misleading.

Even assuming the allegedly omitted information did rise to the level required to render an opinion misleading, the claim fails because Plaintiffs' own allegations reveal that the purportedly omitted information ***was disclosed and known***.  For example, Plaintiffs allege that Defendants failed to disclose that "the value and utility of QSP" "was linked to the success of Quantstamp's efforts."

21

Compl. ¶ 149.  But Plaintiffs simultaneously allege that "[i]nvestors" "made their investment with a reasonable expectation of profits" based on, among other things, 1) Quantstamp's "emphasi[s] *in its whitepaper* that the future functionality of its protocol would exponentially increase demand for QSP tokens;" 2) "[p]urchasers of pre-functional tokens, such as QSP, *necessarily rely on the managerial efforts of others to realize value from their investments*;" and 3) "Stewart and Ma's biographies were featured in the QSP whitepaper and were held out to be *integral parts of the success of QSP*."  *Compare* Compl. ¶ 149 *with* Compl. ¶¶ 91, 100, 104, 108 (emphases added).

Similarly, Plaintiffs allege that Quantstamp "failed to disclose that the Individual Defendants would individually profit from the proceeds of the QSP offerings" and that the "Individual Defendants intended to (and did) hold substantial quantities of QSP even after the initial offerings." But Plaintiffs simultaneously allege that Quantstamp's ICO disclosed that "Quantstamp's Team & Advisors were personally allocated 20 percent of the QSP tokens, thus benefitting from holding the same digital asset as the purchasers."  *Compare* Compl. ¶¶ 148, 150 *with* Compl. ¶ 95.  Thus, Plaintiffs have failed to allege any materially misleading omission in the whitepaper.

## VI.   THE UNITED STATES' SECURITIES LAWS DO NOT APPLY TO PLAINTIFFS' TRANSACTIONS.

The federal securities laws do not apply extraterritorially.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010).  Instead, the federal securities laws are limited to "transactions in securities listed on domestic exchanges and domestic transactions in other securities."  *Id.* at 267; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012) (same); *see also In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 56 (S.D.N.Y. 2013) (holding *Morrison* applies to Securities Act claims because, like 10(b), Securities Act creates liability "only where the plaintiff has 'acquir[ed]' or 'purchas[ed]' a security").

Plaintiffs appear to recognize *Morrison*'s domestic transaction requirement when they allege that the class they purport to represent will include only those individuals who purchased QSP "in a domestic U.S. transaction." Compl. ¶ 123. Plaintiffs err, however, in assuming that every transaction involving a U.S. resident is a domestic U.S. transaction. To the contrary, transactions that meet the *Morrison* test are carefully limited and exclude many transactions made by U.S. residents, including the transaction at issue here.

The first prong of *Morrison* for domestic exchanges covers only national securities exchanges registered with the SEC, not unregistered "over-the-counter" exchanges, even if they are located in the United States. *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *12 (S.D.N.Y. May 24, 2016); *see also United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015). And the second prong of *Morrison*, for "domestic transactions in other securities," is limited to transactions where "irrevocable liability is incurred or title passes within the United States." *Absolute Activist*, 677 F.3d at 67.

Courts have consistently held that the category "domestic transactions in other securities" *does not* include purchases made on foreign exchanges even when an order to purchase is placed from the United States. *See, e.g.*, *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 473 (S.D.N.Y. 2013) (rejecting argument that "purchases of foreign shares on foreign exchanges constitute domestic transactions within section 10(b)'s reach because the buy orders were placed from the United States"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 512, 532 (S.D.N.Y. 2011) ("[T]he Court joins other lower courts that have rejected the argument that a transaction qualifies as a 'domestic transaction' under *Morrison* whenever the purchaser or seller resides in the United States, even if the transaction itself takes place entirely over a foreign exchange"), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *Cornwell v.*

*Credit Suisse Grp.*, 729 F. Supp. 2d 620, 624 (S.D.N.Y. 2010) ("[T]o carve out of the new rule a purchase or sale of securities on a foreign exchange because some acts that ultimately result in the execution of the transaction abroad take place in the United States amounts to nothing more than the reinstatement of the conduct test.").

Plaintiffs' federal securities claims are not based on transactions in securities listed on domestic exchanges, or domestic transactions in other securities, and are therefore outside of the reach of the United States' securities law, including Section 12(a)(1) and 12(a)(2) of the Securities Act.  *First*, Plaintiffs allege that their QSP transactions all occurred on the Binance Exchange, ECF No. 27-1 ¶ 5; ECF No. 27-2 ¶ 5, which Plaintiffs nowhere allege is a national or domestic exchange. Notably, and by contrast, in *Anderson et al., v. Binance et al.*, 20-cv-2803-ALC (S.D.N.Y.), Plaintiff Messieh alleges that Binance was founded in China, moved to Japan, and is now headquartered in Malta.  *Id.* ECF No. 43 ¶ 24.  *Second*, Plaintiffs fail to allege that, while transacting on the Binance exchange for the cryptocurrencies at issue, title passed within the United States—a defect Plaintiffs cannot cure, given that Binance is based outside the United States.  *Id.*  Consequently, Plaintiffs' extraterritorial transactions cannot qualify as "domestic transactions in other securities," and their federal securities claims should be dismissed on this independent basis.

## VII.  PLAINTIFFS CANNOT PURSUE THE REMAINING BLUE SKY CLAIMS

In addition to Connecticut and Florida, Counts Four through One Hundred Three in the Amended Complaint assert causes of action under the Blue Sky laws of every other state, the District of Columbia, and Puerto Rico.  But "[B]lue-sky laws . . . only regulate[] transactions occurring within the regulating States."  *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) (citations omitted).  Indeed, the United States Constitution prevents one state's Blue Sky laws from regulating conduct in another state.  *See Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) ("[T]he United States

24

Constitution would also bar Massachusetts from regulating, via consumer protection law, the rates that Direct Energy charged consumers in Connecticut."). Accordingly, the remaining Blue Sky claims should be dismissed.[9]

## CONCLUSION

For the foregoing reasons, the Amended Class Action Complaint should be dismissed with prejudice.

Dated: November 13, 2020
      New York, New York

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Corey Worcester*
Corey Worcester
Jacob J. Waldman
Jesse Bernstein
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
coreyworcester@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jessebernstein@quinnemanuel.com

Michael Liftik (admitted *pro hac vice*)
1300 I St. NW #900
Washington, DC 200005
(202) 538-8000
michaelliftik@quinnemanuel.com

*Attorneys for Defendants Quantstamp, Inc., Richard Ma, and Steven Stewart*

---

[9] It is settled that Plaintiffs can allege "class standing" only where they personally have a viable cause of action as to a Defendant. *See, e.g.*, *Richards*, 915 F.3d at 106 (affirming that "class standing" was moot where "[plaintiff] no longer had any viable claims"); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 n.3 (2d Cir. 2018) ("class standing" viable only where "the [named] plaintiff was actually injured by each of the named defendants"). Here, as demonstrated above, Plaintiffs have no viable causes of action as to any Defendant, including any such causes of action under any other state's Blue Sky laws.